**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| SKYE MUSSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.: |
| vs. | ) | |
| | ) | 4:22-cv-00124-RSB-CLR |
| SHALENA COOK JONES, in her individual | ) | |
| and official capacities; CHATHAM | ) | |
| COUNTY, GEORGIA; and the | ) | **JURY TRIAL DEMANDED** |
| PROSECUTING ATTORNEYS' COUNCIL | ) | |
| OF GEORGIA, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**</u>

COMES NOW the Plaintiff, Skye Musson ("Plaintiff" or "Ms. Musson") and files this Amended Complaint for Damages and Injunctive Relief showing the Court as follows:

<u>**PARTIES, JURISDICTION, AND VENUE**</u>

1.      Plaintiff is a citizen of the State of Georgia and hereby submits herself to the jurisdiction of this Court.

2.      Defendant Shalena Cook Jones ("Jones") is and, at all relevant times, was the District Attorney of Chatham County, Georgia. She is sued in both her individual and official capacities. Defendant Jones may be served with summons and Complaint at 133 Montgomery Street, Suite 600, Savannah, Georgia 31401.

3.      Defendant Chatham County, Georgia is subject to this Court's jurisdiction. The county may be served by delivering a copy of the Complaint and summons to Chester A. Ellis,

Chairman of the Chatham County Board of Commissioners, at 124 Bull Street, Savannah, Georgia 31401.

4.     Defendant Prosecuting Attorney's Council of Georgia ("PAC") is a state governmental agency and is subject to civil rights actions of this kind. PAC lies within Clayton County and is subject to this Court's jurisdiction, with its principal place of business located at 1590 Adamson Parkway, Fourth Floor, Morrow, Georgia 30260. Defendant PAC may be served by delivering a copy of the Complaint and summons to Peter J. Skandalakis, its Executive Director.

5.     This action was initiated in the Superior Court of Chatham County, Georgia, and was removed to this Court by the Defendants, pursuant to 28 U.S.C. §§1441, 1443(2), 1446(a), 1446(b), and Fed. R. Civ. P. 81(c).

6.     Plaintiff's claims present federal questions of which this court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1343(a).

7.     This Court has supplemental jurisdiction over Plaintiff's claims asserted under Georgia law, pursuant to 28 U.S.C. §1367(a).

8.     Venue is proper in this Court, pursuant to 28 U.S.C. §1391, because multiple Defendants, including Defendant Jones and Defendant Chatham County, reside in Chatham County, Georgia, within this district and because the events giving rise to this action occurred in Chatham County, Georgia, within this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.     Ms. Musson has satisfied all administrative prerequisites to perfect her claims of discrimination and retaliation under Title VII and the ADA. Specifically, she timely filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and received

her Notice of Right to Sue for each of her claims under Title VII of the Civil Rights Act of 1964 and the ADA.

## FACTS

### Ms. Musson's Background

10.     Ms. Musson is a former Officer Trainee in the United States Coast Guard.  During her military service, Ms. Musson suffered a catastrophic training injury that crushed the right side of her body, required her to have three reconstructive surgeries, and forced her to medically retire. As a result of her military service, Ms. Musson suffers from and has been diagnosed with Post-Traumatic Stress Disorder ("PTSD").

11.     Following her honorable medical retirement from the Coast Guard, Ms. Musson attended law school and became a prosecuting attorney in the Office of the District Attorney of Chatham County Georgia, prosecuting felony cases in the Eastern Judicial Circuit.

12.     During law school, Ms. Musson worked as a legal intern at the Eastern Judicial Circuit District Attorney's office ("D.A.'s Office"), assisting in prosecutions pursuant to The Law School Public Prosecutor Act of 1970, O.C.G.A. §15-18-22.

13.     Ms. Musson attained her juris doctor degree from Florida State University Law School in May 2019, passed the Georgia Bar Exam on her first attempt, and became a member of the State Bar of Georgia on October 31, 2019.

14.     After graduating from law school and while awaiting the results of her Bar exam, Ms. Musson continued to work as a legal intern at the D.A.'s Office. Upon her admission to the State Bar of Georgia, Ms. Musson became employed as an Assistant District Attorney in the D.A.'s Office.

## The Joint Employment Relationship of Defendants

15.     Chatham County is the only county in the Eastern Judicial Circuit.

16.     As an Assistant District Attorney, Ms. Musson was a joint employee of Defendants Chatham County, PAC, and/or the then-sitting District Attorney of Chatham County, including at all material times Defendant Jones.

17.     As an Assistant District Attorney, Ms. Musson's salary was paid, in-part, by PAC and, in-part, by Chatham County.

18.     Defendant Jones assigned and managed Ms. Musson's day-to-day case load and activities.

19.     PAC paid Plaintiff's base salary, while Chatham County and DA Cook Jones determined Plaintiff's stipend amount.

20.     PAC provided Ms. Musson with training on how to carry out her duties as a prosecutor, paid her base compensation, provided her with employment benefits, and established norms that applied to Ms. Musson's job and performance, including, without limitation, policies, rules, or regulations pertaining to Ms. Musson's qualifications, hiring, rank, promotions, salary increases, possible salary range, holidays, leave, and creation and maintenance of her personnel file and payroll records.

21.     When Plaintiff worked as an Assistant District Attorney, the DA's office managed by DA Cook Jones did not have a consistent Human Resources department or independent grievance procedure for employment discrimination or retaliation claims.

22.     DA Cook Jones did not appear to adopt any of her own workplace policies prohibiting employment discrimination or retaliation and did not clearly inform employees of such policies or procedures.

23.     DA Cook Jones placed copies of the Chatham County employment manual in common work areas.

24.     At all relevant times, during Defendant Jones' time as District Attorney, the policies and procedures contained within the Chatham County employment manual were applicable to Plaintiff.

25.     Chatham County contracted with the DA's office to perform certain prosecutorial functions that are traditionally performed by county employees in surrounding counties, including representing the County in Recorder's Court, Magistrate's Court, and in cases involving Children in Need of Services ("CINS").

26.     In this way, the County added to the job duties of employees in the DA's office, including duties assigned to Ms. Musson.

27.     PAC does not oversee or supervise attorneys in the Eastern Judicial Circuit DA's office performing separate job duties in Recorder's Court, Magistrate's Court, or for CINS cases.

**Ms. Musson's Work Record in the DA's Office**

28.     During the summer of 2020, Ms. Musson was tasked with assisting in a complex prosecution of eighteen co-defendants in a high-profile gang and drugs case. During and after Ms. Musson's involvement in this case, the "Guns and Gangs" prosecutor, Timothy Ruffini, began grooming Ms. Musson to take over this role following his anticipated transition to a new role within the office.

29.     In November 2020, Defendant Jones was elected to become the next District Attorney of Chatham County. She formally assumed office as District Attorney on or about January 1, 2021.

30.     Shortly after Defendant Jones became District Attorney, Mr. Ruffini was transitioned to another role within the office, leaving the "Guns and Gangs" unit prosecutor position vacant.

### Despite being the most qualified candidate, Ms. Musson  is not selected for a promotion because of entrenched stereotypes about women

31.     In January 2021, Ms. Musson expressed interest in taking over the Guns and Gangs unit. The specialized Guns and Gangs position involved more prestige and responsibilities than her then-existing assignment because of the high stakes and complex nature of the cases.

32.     Defendants selected a significantly less qualified male, Christian Stolfe, for the Guns and Gangs position, rather than Ms. Musson.

33.     Mr. Stolfe attained his juris doctor degree from Savannah Law School in May 2018. Upon information and belief, he failed to pass multiple bar examinations in both Georgia and South Carolina for more than a year after graduating from law school. Eventually, Mr. Stolfe passed the Georgia bar examination and was admitted to practice on May 24, 2019. In addition, unlike Ms. Musson, Mr. Stolfe did not have experience handling either complex felony cases or gang cases.

34.     On or about January 23, 2021, after learning that Mr. Stolfe had been selected for the "Guns and Gangs" position over her, Ms. Musson asked her immediate supervisor, Jenny Parker, what qualifications she lacked that Mr. Stolfe possessed. Ms. Musson told Ms.  Parker that she believed Defendants were perpetuating a "bro culture" within the office, meaning that men obtained preferential treatment in training and upward opportunities at the office. Ms. Musson also complained that she and others, including her trial partner, a gay male, did not benefit from the office's "bro culture" because they did not conform to the preferred gender and gender stereotypes of the office.

35.     Ms.  Parker agreed that Ms. Musson's concerns about the office's "bro culture" were shared by other women in the office.  Ms. Parker told Ms. Musson that she and Mr. Stolfe had "the same resume," but they "were going a different way."

36.     On January 27, 2021, Ms. Musson gave Parker a letter, her resume, and a writing packet, to attempt to plead her point that she was more qualified for the "Guns and Gangs" position than was Mr. Stolfe. Ms. Musson submitted the packet to Defendant Jones, asking that she reconsider Ms. Musson for the position.

37.     On January 30, 2021, Ms. Musson met with Defendant Jones in Jones' office, so she could make her case to lead the "Guns and Gangs" unit.

38.     During the January 30, 2021 meeting, Defendant Jones told Ms. Musson that they needed someone "who could handle [male] officers, their demeanor and behavior," to fill the position.

39.     Ms. Musson reminded Ms.  Jones that she was formerly in the military, so working with men in a paramilitary environment was nothing new to her.

40.     Ms.  Jones then told Ms. Musson that the person selected for the position would need to be on call, which would take her away from family. Ms. Jones also claimed that the "Guns and Gangs" position was a long-term position that would require someone who would not take extended leaves.

41.     The statements made by Defendant Jones during the January 30, 2021 meeting, explaining why Ms. Musson was not selected for the position, were laden with the gender-stereotypical implication that because she was a woman, Ms. Musson would place family obligations and maternity leave above her job.

7

42.     During the January 30, 2021 meeting, after explaining her qualifications for the "Guns and Gangs" position, Ms. Musson again objected to the office's ongoing practice of perpetuating a "bro culture," (i.e. unlawful sex discrimination in violation of Title VII), where men receive training opportunities and special, more prestigious assignments without any objective hiring or selection process, because of their gender, while she and other women and non-gender-conforming men do not receive such opportunities because of negative stereotypes about their gender. Ms. Musson specifically complained to Defendant Jones that she felt she was a victim of the sexist, "bro group" practice.

43.     After Ms. Musson complained about this sexist practice, Defendant Jones maintained that Ms. Musson was not under consideration for the "Guns and Gangs" position, without providing any rationale for that decision, other than her gender-based assumptions discussed above.

44.     After he took over the Guns and Gangs position, Mr. Stolfe had to seek out and obtain Ms. Musson's assistance with his cases, and Ms. Musson had to take over at least one of his cases altogether.

**Defendants Intimidate Ms. Musson After She Engages in Legally Protected Activity, and Subsequently Force Her Out**

45.     On Thursday, April 8, 2021, Defendant Jones and another executive-team member, Chief Assistant District Attorney Michael L. Edwards, called Ms. Musson into Jones' office to discuss one of Ms. Musson's cases.

46.     At the time, Defendant Jones and Mr. Edwards were aware that Ms. Musson had been diagnosed with PTSD because Ms. Musson discussed it with them on a prior occasion.

47.     The victim in the case discussed by the parties on April 8, 2021, was a personal friend of Defendant Jones and someone who had worked on her election campaign.

48.     He had come to the DA's office and ranted because he was not pleased with exculpatory evidence in the case.

49.     During the April 8, 2021 meeting, Defendant Jones chastised Ms. Musson for not proceeding with prosecution notwithstanding the exculpatory evidence and suggested that the problem with the case was Ms. Musson, rather than the evidence, which was false.

50.     Ms. Musson stated to Defendant Jones that she believed that it would be unethical for DA Jones to allow her personal relationship with the victim to dictate the appropriate course of action in the case.

51.     Ms. Musson also pointed out that the victim's medical bills were flagged for possible fraud because of discrepancies.

52.     Based on the hostility of the conversation, Ms. Musson expressed that the office felt like a "boys club," where men received better treatment than women, leading to disparate training and opportunities for women attorneys.

53.     After Ms. Musson made statements that DA Jones' personal bias in favor of the victim was clouding her prosecutorial judgment, and also that the DA's office had a culture of sex discrimination, Defendant Jones informed Ms. Musson that she was facing possible disciplinary action, including termination.

54.     Based on the hostility in this conversation, Ms. Musson then expressed to Defendant Jones that she felt ambushed and like she was going to be fired, even though she handled this case like she would handle any other case.

55.     Several other staff members and attorneys in the office observed Ms. Musson being called into Jones' office and later observed her leaving Jones' office after the meeting upset.

56.     The next day, Friday, April 9, 2021, Mr. Edwards entered Ms. Musson's office, closed the door, and sat in a chair in a manner that obstructed the exit.

57.     Edwards told Ms. Musson in an intimidating manner, "We need to talk." Edwards said that other attorneys and staff were aware of Jones and Edwards questioning Ms. Musson's work and were upset, and he said that he needed Ms. Musson to help him "diffuse the situation and control the narrative."

58.     Ms. Musson was perplexed and intimidated by Mr. Edwards' behavior on April 9, 2021 and felt threatened by Mr. Edward's admonishment of her on the heels of her complaint of gender discrimination.

59.     The pressure exerted on Ms. Musson by Defendant Jones and Mr. Edwards during the April 8 and 9, 2021 meetings was so intolerable that Ms. Musson felt forced to resign.

60.     On Monday, April 12, 2021, Ms. Musson submitted a notice of her resignation, effective on April 30, 2021.

61.     Soon thereafter, on April 12, 2021, Defendant Jones and Mr. Edwards summoned Ms. Musson to Jones' office for another closed-door meeting.

62.     During this meeting, Jones and Edwards interrogated Ms. Musson about why she was resigning. Ms. Musson referenced the April 8 and 9 meetings and further explained that she felt harassed by Mr. Edwards and the manner in which he came into her office and cornered her with the door closed.

63.     Defendant Jones and Mr. Edwards then began making circular arguments to Ms. Musson about the circumstances of her separation that were dissonant with Ms. Musson's experience and understanding of what occurred.

64.     According to Ms. Musson, these dissonant explanations triggered her PTSD because of her experience in the military where military authorities provided her dissonant information about the nature and extent of her injuries in a manner designed to minimize her experience.

65.     Ms. Musson told Defendant Jones and Mr. Edwards that they were giving her "trauma brain" by attempting to re-write the situation in an inaccurate manner and then pressuring Ms. Musson to retract or change her understanding of the facts.

66.     After Ms. Musson made this statement, Defendant Jones stated that Ms. Musson was "released from" her employment effective immediately, stating to Ms. Musson that she was not someone they wanted in the office, that they did not think she was an asset, and that they did not want her around the cases and other attorneys.

67.     The termination of Ms. Musson's employment on April 12, 2021 was involuntary.

68.     Upon information and belief, following the April 12, 2021 meeting, Defendant Jones or a member of the District Attorney's Office staff contacted Defendants PAC and Chatham County, notified them of the termination of Plaintiff's employment, effective April 12, 2021.

69.     After the April 12, 2021 meeting, Defendant Jones sent out an office-wide email falsely claiming that Ms. Musson resigned effective immediately of her own volition.

70.     The next day, on April 13, 2021, Ms. Jones convened an office-wide Zoom call, excluding Ms. Musson. During the Zoom call, Defendant Jones made slanderous, false statements to her colleagues that Ms. Musson was incompetent and insubordinate.

11

71.     After the April 13, 2021 Zoom call, Defendant Jones also attempted to slander Ms. Musson to Chatham County Superior Court Judge Louisa Abbot.

72.     In addition, soon after Defendants' termination of her employment, when Ms. Musson attempted to enter the Chatham County courthouse, she was stopped and questioned about her mental health by one of the court security officers, Tony Caldwell.

73.     On April 16, 2021, Defendant Chatham County issued a Separation Notice stating that its employment of Ms. Musson ended on April 12, 2021.

74.     On May 12, 2021, Defendant PAC issued a Separation Notice stating that its employment of Ms. Musson ended on April 12, 2021.

75.     On June 23, 2021, Ms. Musson filed a Charge of Discrimination with the EEOC, against the Chatham County District Attorney's Office and Chatham County, concerning the failure to promote her to the "Guns and Gangs" position and the termination of her employment. Ms. Musson also filed a similar Charge of Discrimination with the EEOC against PAC.

76.     After filing her EEOC charges, Ms. Musson applied to Defendant Chatham County to provide indigent criminal defense services as Conflicts Counsel.

77.     There is a shortage of such counsel in Chatham County, and Ms. Musson is one of a few attorneys qualified and willing to take this position.

78.     After submitting her application to serve as Conflicts Counsel, Ms. Musson was initially deemed qualified, and her name was added to a list of candidates for final approval at a County Commission meeting on or about March 1, 2022.

79.     Following the March 1, 2022 County Commission meeting, however, the manager of indigent criminal defense services for Chatham County, Kenneth Cail, called Ms. Musson and

told her that her name was removed from the list because she "filed an EEOC Charge and the County deemed that a 'conflict of interest.'"

## COUNT ONE
### Sex Discrimination – Title VII of the Civil Rights Act of 1964
### *Against Defendants PAC, Chatham County, and Defendant Jones in her official capacity*

80.     Plaintiff incorporates paragraphs 1 through 79 as if fully restated herein.

81.     At all times material to this Complaint, Defendants PAC, Chatham County, and Jones were in a joint employer relationship with Plaintiff, as those terms are used under Title VII and interpretive case law

82.     Defendants violated Plaintiff's rights under Title VII by failing to promote Plaintiff to the "Guns and Gangs" position because of her sex.

83.     Defendants violated Plaintiff's rights under Title VII by terminating her employment because of her sex.

84.     Plaintiff's sex was a "motivating factor" in Defendants' decision not to promote Plaintiff and to terminate Plaintiff.

85.     Defendants' above-pled discriminatory conduct toward Plaintiff constitutes sex discrimination in violation of Title VII.

86.     Defendants acted with malice or with reckless indifference to the federally protected rights of Plaintiff.

87.     As a result of Defendants' unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

88.     Plaintiff is entitled to an award of back pay and benefits, compensatory damages, attorney's fees, and all other appropriate damages, remedies, and other relief under Title VII and all federal statutes providing remedies for violations of Title VII.

**COUNT TWO**
**Discrimination in Violation of the Americans with**
**Disabilities Act, as Amended, 42 U.S.C. §12112**
*Against Defendants PAC, Chatham County, and Defendant Jones in her official capacity*

89.     Plaintiff incorporates paragraphs 1 through 79 as if fully restated herein.

90.     At all times material to this Complaint, Defendants were in a joint employer relationship with Plaintiff, as those terms are used under ADA, and interpreting case law.

91.     Following her military service and continuing through the date of her termination by Defendants, Plaintiff was at all times a "qualified person with a disability," within the meaning of the ADA, as amended.

92.     The PTSD from which plaintiff suffers as a result of her military service substantially limited one or more of her major life activities, including but not limited to her emotional processing of adverse personal events.

93.     In their meetings on April 8, 9, and 12, Defendant Jones and Mr. Edwards engaged in conduct which triggered and aggravated Plaintiff's PTSD symptoms, including but not limited to mischaracterizing their recent discussions about her employment and professionalism with dissonant information in a manner designed to confuse Ms. Musson and pressure her to change the narrative of what occurred.

94.     Further, during their meeting on April 12, 2021, when Plaintiff complained that Defendant Jones and Mr. Edwards, who knew that she had PTSD, were giving her "trauma brain," Defendant Jones responded by immediately and involuntarily terminating Plaintiff's employment.

14

95.     Defendants terminated Plaintiff's employment because of her disabilities, in violation of the Americans with Disabilities Act, as amended.

96.     Plaintiff's disabilities were a "motivating factor" in Defendants' decision to terminate her employment.

97.     The actions of Defendants in subjecting Plaintiff to the adverse actions complained of above were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff and were in derogation of her federally protected rights.

98.     As a direct and proximate result of Defendants' violations of the ADA, as amended, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

99.     As a result of the above-pled violations of the ADA, as amended, Plaintiff is entitled to recover lost wages and economic benefits of her employment, compensatory damages for emotional distress, and punitive damages, as well as front pay and other equitable relief, and all other legal and equitable relief provided for by the ADA, as amended, and all statutes providing for relief for violations of the ADA.

### COUNT THREE
### Title VII Retaliation
### *Against Defendants PAC, Chatham County, and Defendant Jones in her official capacity*

100.    Plaintiff incorporates paragraphs 1 through 79 as if fully restated herein.

101.    At all times material to this Complaint, Defendants PAC, Chatham County, and Jones were in a joint employer relationship with Plaintiff, as those terms are used under Title VII, and interpreting case law.

102.     During her employment with Defendants, and afterward when she filed an EEOC charge complaining of sex discrimination, Plaintiff engaged in statutorily protected activity by, among other things, complaining of sex discrimination in violation of Title VII, including but not limited to, in her complaints of discrimination to her immediate supervisor, Ms. Parker and Defendant Jones, as well as her charge of discrimination filed with the U.S. EEOC.

103.     Defendants subjected Plaintiff to retaliation because she opposed, objected to, and complained against illegal sex discrimination. Defendants retaliated against Plaintiff by subjecting Plaintiff to termination on the basis of her exercise of federally protected rights as compared with employees who did not engage in similar statutorily protected activity.

104.     After Ms. Musson filed her EEOC charge, which constituted legally protected activity under Title VII, Defendant Chatham County engaged in post-employment retaliation by denying Ms. Musson an opportunity to serve as an independent contractor because she filed an EEOC charge complaining of sex discrimination during her employment as an assistant district attorney.

105.     Defendants lack any legitimate justification for subjecting Plaintiff to the adverse employment actions complained of above, and/or any such purported legitimate justifications are a mere pretext for retaliation.

106.     The above-pled actions of Defendants constitute retaliation in violation of Title VII of the Civil Rights Act of 1964.

107.     The actions of Defendants in subjecting Plaintiff to the adverse actions complained of above were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff and were in derogation of her federally protected rights.

108.    As a direct and proximate result of Defendants' violations of the Title VII, as amended, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

109.    As a result of the above-pled violations of Title VII, as amended, Plaintiff is entitled to recover lost wages and economic benefits of her employment, compensatory damages for emotional distress, and punitive damages, as well as front pay and other equitable relief, and all other legal and equitable relief provided for by Title VII, as amended, and all statutes providing for relief for violations of Title VII.

<u>**COUNT FOUR**</u>
**ADA Retaliation**
*Against Defendants PAC, Chatham County, and Defendant Jones in her official capacity*

110.    Plaintiff incorporates paragraphs 1 through 79 as if fully restated herein.

111.    At all times material to this Amended Complaint, Defendants PAC, Chatham County, and Jones were in a joint employer relationship with Plaintiff, as those terms are used under the ADA, and interpreting case law.

112.    During her employment with Defendants as an assistant district attorney, and afterward when she filed an EEOC charge complaining of sex discrimination, Plaintiff engaged in statutorily protected activity by, among other things, complaining of disability discrimination in violation of the ADA, including but not limited to, in her complaint during the April 12, 2021 conversation with Defendant Jones and Michael Edwards that their dissonant and intimidating treatment was giving her "trauma brain."  In the same conversation, Defendant Jones told her that her employment was terminated immediately.

113.    After she complained of disability discrimination while employed as an assistant district attorney, and after she filed an EEOC charge of disability discrimination, Defendant

Chatham County engaged in post-employment retaliation by denying Ms. Musson an opportunity to serve as an independent contractor, citing the filing of her EEOC charge as the reason for rejecting her application.

114.    Defendants subjected Plaintiff to retaliation because she opposed, objected to, and complained against illegal disability discrimination.

115.    Defendants lack any legitimate justification for subjecting Plaintiff to the adverse employment actions complained of above, and/or any such purported legitimate justifications are a mere pretext for retaliation.

116.    The above-pled actions of Defendants constitute retaliation in violation of the ADA.

117.    The actions of Defendants in subjecting Plaintiff to the adverse actions complained of above were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff and were in derogation of her federally protected rights.

118.    As a direct and proximate result of Defendants' violations of the ADA, as amended, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

119.    As a result of the above-pled violations of the ADA, as amended, Plaintiff is entitled to recover lost wages and economic benefits of her employment, compensatory damages for emotional distress, and punitive damages, as well as front pay and other equitable relief, and all other legal and equitable relief provided for by the ADA, as amended, and all statutes providing for relief for violations of the ADA.

**COUNT FIVE**
**First Amendment Retaliation**
**Asserted Through 42 U.S.C. §1983**
*Against Defendant Chatham County*

120.    Plaintiff incorporates paragraphs 1 through 79 as if fully restated herein.

121.    The First Amendment to the Constitution of the United States of America prohibits governmental entities from retaliating against persons for engaging in speech protected by the First Amendment.

122.    Plaintiff engaged in speech protected by the First Amendment on or about June 23, 2021, when she filed Charges of Discrimination with the EEOC, asserting that Defendants maintained an office culture of discriminating against women, as well as gender non-conforming men such as her trial partner (a gay male), as a class, in promotions and career advancement opportunities.

123.    Plaintiff's statements in the Charges of Discrimination that she filed with the EEOC constituted speech as a citizen on matters of public concern, including discrimination and civil rights violations by governmental entities and an elected official against not only Plaintiff but other women and non-gender-conforming men working as Assistant District Attorneys in Chatham County, which are protected by the First Amendment.

124.    Plaintiff applied for and was qualified for a position for which Defendant Chatham County was accepting applications, namely a position providing indigent criminal defense services as Conflicts Counsel for Chatham County.

125.    Despite Plaintiff's qualifications, she was not hired for the Conflicts Counsel position because she had filed the Charges of Discrimination with the EEOC.

126.    Defendant Chatham County subjected Plaintiff to retaliation because she opposed, objected to, and complained against illegal sex discrimination and retaliation by the County against women and non-gender conforming men as a class. Defendant Chatham County retaliated against Plaintiff by refusing to approve her as Conflicts Counsel on the basis of her exercise of federally protected rights by filing an EEOC Charge.

127.    Plaintiff's above-pled constitutionally protected speech was the precise reason Chatham County did not approve Plaintiff as Conflicts Counsel.

128.    Defendant Chatham County lacks any legitimate justification for refusing to approve Plaintiff as Conflicts Counsel and/or any such purported legitimate justifications are a mere pretext for retaliation.

129.    The above-pled actions of Defendant Chatham County constitute unlawful retaliation in violation of Plaintiff's rights under the First Amendment to the Constitution of the United States.

130.    The above-pled actions of Defendant Chatham County were taken under color of state and local law.

131.    All the retaliation complained of herein violated Plaintiff's clearly established constitutional and statutory rights, rights of which any reasonable person would have known.

132.    The actions of Defendant Chatham County in subjecting Plaintiff to the retaliatory actions complained of above were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff and were in derogation of her federally protected rights.

133.    As a direct and proximate result of Defendant Chatham County's violations of Plaintiff's First Amendment rights, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

134.    As a result of the above-pled violations of Plaintiff's First Amendment rights, Plaintiff is entitled to recover lost wages and economic benefits of her employment, compensatory damages for emotional distress, and punitive damages, as well as front pay and other equitable relief, and all other legal and equitable relief provided for by Title VII, as amended, and all statutes providing for relief for violations of Title VII.

**COUNT SIX**
**First Amendment Retaliation**
**Asserted Through 42 U.S.C. §1983**
***Against Defendant PAC and Defendant Jones in her individual and official capacities***

135.    Plaintiff incorporates paragraphs 1 through 79 as if fully restated herein.

136.    The First Amendment to the Constitution of the United State of America prohibits governmental entities from retaliating against employees who speak as citizens on matters of public concern.

137.    Plaintiff engaged in speech protected by the First Amendment by speaking as a citizen on matters of public concern, including but not limited to, when she complained to Ms. Parker, Defendant Jones and Mr. Edwards regarding an office-wide culture of sex discrimination as alleged herein.

138.    In response to Plaintiff's above-pled constitutionally protected speech, Defendants PAC and Jones subjected Plaintiff to adverse employment actions, including but not limited to terminating her employment and disseminating false allegations about her to damage her reputation within the District Attorney's office and the legal community.

139.    Plaintiff's above-pled constitutionally protected speech was a motivating factor in one or more of the decisions by Defendants to subject Plaintiff to the above-pled retaliatory adverse employment actions.

140.    The above-pled retaliatory acts of Defendants PAC and Jones constitute unlawful retaliation in violation of the First Amendment to the Constitution of the United States.

141.    The actions of Defendants were taken under color of state and local law.

142.    All the retaliation complained of herein violated Plaintiff's clearly established constitutional and statutory rights, rights of which any reasonable person would have known.

143.    The actions of Defendants PAC and Jones complained of herein were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Plaintiff's federally protected rights.

144.    As a direct and proximate result of the above-pled retaliation in violation of Plaintiff's First Amendment rights, she has suffered out of pocket losses and has been deprived of economic benefits, including income and other benefits of her employment, all in an amount to be established at the trial of this case.

145.    The actions of Defendant Jones caused and will continue to cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

146.    Plaintiff is entitled to be reinstated to her position as an assistant district attorney by Defendants, with retroactive pay. If reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

147.    As a result of the above-pled violations of Plaintiff's First Amendment rights, Plaintiff is entitled to recover lost wages and economic benefits of her employment, compensatory

damages for emotional distress, and punitive damages, as well as front pay and other equitable relief, and all other legal and equitable relief provided for by Title VII, as amended, and all statutes providing for relief for violations of Title VII.

**COUNT SEVEN**
**Violation of the Equal Protection Clause of the Fourteenth Amendment, Pursuant to 42 U.S.C §1983 – Discrimination on the Basis of Sex**
***Against all entity Defendants and Defendant Jones in her individual and official capacities***

148.    Plaintiff incorporates paragraphs 1 through 79 as if fully restated herein.

149.    At all times material to this Complaint, Defendants were in a joint employer relationship with Plaintiff.

150.    Defendants engaged in unconstitutionally disparate treatment of Plaintiff by failing to promote Plaintiff to the "Guns and Gangs" position on the basis of her sex.

151.    Defendants violated Plaintiff's Equal Protection rights by terminating her employment because of her sex.

152.    Plaintiff's sex was a "motivating factor" in Defendants' decision not to promote Plaintiff and to terminate Plaintiff, even if there were legitimate, non-discriminatory reasons that also motivated these actions.

153.    Defendants' above-pled discriminatory conduct toward Plaintiff constitutes sex discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

154.    Defendants, acting under color of state law, violated Ms. Musson's constitutional right to be free from sex discrimination in employment by failing to promote Plaintiff to the "Guns and Gangs" position and by terminating her employment because of sex.

155.     Defendants Jones and Chatham County acted with malice or with reckless indifference to the federally protected rights of Plaintiff.

156.     Defendant Jones undertook her conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, or additionally, and in the alternative, undertook her conduct recklessly with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover compensatory and punitive damages against Defendant Jones in her individual capacity.

157.     As a result of Defendants' unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

158.     Plaintiff is entitled to an award of back pay and benefits, compensatory damages, punitive damages, attorney's fees, and all other appropriate damages, remedies, and other relief under 42 U.S.C. §§1983 and 1988 and all federal statutes providing remedies for violations of Title VII.

159.     Plaintiff is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT EIGHT
### Violation of the Georgia Whistleblower Protection Act, O.C.G.A. § 45-1-4
### *Against All Entity Defendants*

160.     Plaintiff incorporates paragraphs 1 through 79 as if fully restated herein.

161.     Plaintiff is and was, at all relevant times, a public employee as that term is defined by O.C.G.A. §45-1-4(a)(3).

162.     Defendant Chatham County is a public employer as that term is defined by O.C.G.A. §45-1-4(a)(4).

163.    Defendant Jones, in her official capacity, is a public employer as that term is defined by O.C.G.A. §45-1-4(a)(4).

164.    Defendant PAC is a public employer as that term is defined by O.C.G.A. §45-1-4(a)(4).

165.    At all times material to this Complaint, Defendants PAC, Chatham County, and Jones were in a joint employer relationship with Plaintiff.

166.    In conversations with Ms. Parker, Defendant Jones and Mr. Edwards, between January and April 2021, Plaintiff repeatedly complained that Defendants were violating laws, rules, or regulations by perpetuating a culture of unlawful sex discrimination in employment within the DA's Office, which violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

167.    Plaintiff also complained to DA Jones on April 8, 2021, that DA Jones was allowing her personal bias in favor of a victim to cloud her prosecutorial judgment in a criminal case where there were evidentiary problems with prosecuting the defendant and continuing to press forward with the prosecution would waste taxpayer funds and abuse power.

168.    Plaintiff's complaints to Ms. Parker, Defendant Jones and Mr. Edwards regarding Defendants' waste and abuse constituted protected disclosures under the Georgia Whistleblower Protection Act, O.C.G.A. §45-1-4.

169.    Defendants retaliated against Plaintiff for disclosing waste and abuse by terminating her employment.

170.    As a result of Defendants' actions, Plaintiff suffered substantial harm, including economic harm, emotional distress, and other indignities, and is therefore entitled to actual and compensatory damages, attorneys fees, and all other monetary relief permitted by law.

## COUNT NINE
### Punitive Damages Under 42 U.S.C. §1983
### *Against Defendant Jones in her Individual Capacity*

171.    Plaintiff incorporates paragraphs 1 through 79 as if fully restated herein.

172.    The aforementioned actions of Defendant Jones were taken in her individual capacity under color of state or local law.

173.    In taking these actions, Defendant Jones did so in clear violation of statutory and Constitutional law.

174.    Defendant Jones acted in reckless disregard for Plaintiff's constitutional rights.

175.    Because of Defendant Jones' conduct, Plaintiff is entitled to punitive damages against her in her individual capacity.

176.    Defendant Jones' discriminatory actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care, which would raise the presumption of conscious indifference to the consequences. Accordingly, Plaintiff is entitled to punitive damages against her in her individual capacity.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Musson demands a TRIAL BY JURY and the following relief:

(a) declare that Defendants have violated Plaintiff's rights under the federal statutes listed above;

(b) permanently enjoin Defendants from violating, in the future, Plaintiff's rights under any of the statutes listed above;

(c) award Plaintiff full back pay, including all lost pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(d) award Plaintiff liquidated damages;

(e) award Plaintiff prejudgment interest as required by law;

(f) award Plaintiff compensatory damages for emotional pain and suffering in an amount to be determined by the enlightened conscience of a jury;

(g) award Plaintiff front pay, including all lost future pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(h) award Plaintiff punitive damages against Defendant Jones, in her individual capacity, sufficient to punish her for her unlawful conduct and deter her from repeating such conduct in the future, as determined by the enlightened conscience of a jury;

(i) award Plaintiff reasonable attorneys' fees and expenses, pursuant to Title VII, the ADA, and 42 U.S.C. §1988; and

(j) grant such additional relief as may be just.

Respectfully submitted this 3rd day of August, 2022.

BUCKLEY BEAL LLP

*/s/ Anita K. Balasubramanian*
Anita K. Balasubmaranian
Georgia Bar No. 372029
abala@buckleybeal.com
J. Kyle Brooks
Georgia Bar No. 773561
kbrooks@buckleybeal.com

600 Peachtree Street NE
Suite 3900
Atlanta, GA 30308
Telephone: (404) 781-1100
Facsimile: (404) 781-1101

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

|  |  |  |
|---|---|---|
| SKYE MUSSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.: |
| vs. | ) | |
| | ) | 4:22-cv-00124-RSB-CLR |
| SHALENA COOK JONES, in her individual | ) | |
| and official capacities; CHATHAM | ) | |
| COUNTY, GEORGIA; and the | ) | **JURY TRIAL DEMANDED** |
| PROSECUTING ATTORNEYS' COUNCIL | ) | |
| OF GEORGIA, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 3, 2022, I electronically filed the foregoing **AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record, including the following:

G. Todd Carter (tcarter@brbcsw.com)
Sean Keenan (skeenana@cmlawfirm.com)
Reginald Martin (rmartin@chathamcounty.org)
R. Jonathan Hart (jhart@chathhamcounty.org)

**BUCKLEY BEAL LLP**

<u>*/s/ Anita K. Balasubramanian*</u>
Anita K. Balasubmaranian
Georgia Bar No. 372029
abala@buckleybeal.com

28