## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

SKYE MUSSON,

        Plaintiff,

    v.

SHALENA COOK JONES, in her individual
and official capacities; CHATHAM
COUNTY, GEORGIA; and the
PROSECUTING ATTORNEYS' COUNCIL
OF GEORGIA,

        Defendants.

CIVIL ACTION NO.: 4:22-cv-124

## O R D E R

This action is before the Court on separate Motions to Dismiss filed by Defendants Chatham County, (doc. 30), and the Prosecuting Attorneys' Council of Georgia ("PAC"), (doc. 32). Plaintiff Skye Musson commenced this action alleging various federal and state law claims concerning Defendants' allegedly discriminatory treatment of her on the basis of her sex and disability during her employment at the Chatham County District Attorney's Office. (Doc. 1-1.) Musson alleges, *inter alia*, discrimination and retaliation by all Defendants as her joint employers in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("Title VII"), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (the "ADA"). (Doc. 29, pp. 13–18.) Musson additionally alleges retaliation in violation of the First Amendment and discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, (id. at pp. 19–24), as well as a violation of the Georgia Whistleblower Protection Act, O.C.G.A. § 45-1-4 (the "GWPA"), (id. at pp. 24–25). The County and PAC filed the at-issue Motions to Dismiss

arguing, *inter alia*, that they were not Musson's employer as required for purposes of Title VII, the ADA, and the GWPA.  (<u>See generally</u> docs. 31, 32-1.)  The County additionally argues that Count Five, Musson's First Amendment retaliatory failure to hire claim, is due for dismissal because Musson cannot show that she was denied employment by the County.  (<u>See</u> doc. 31, pp. 10–12.)  PAC additionally argues that Musson's claims under the ADA and the First and Fourteenth Amendments are barred by the Eleventh Amendment.  (<u>See</u> doc. 32-1, pp. 10–14.)  Musson thereafter filed a Response to both Motions.  (Docs. 41, 42.)  The County filed a Reply, (doc. 49), as did PAC, (doc. 50).  For the reasons more fully explained below, the Court hereby **GRANTS in part and DENIES in part** the County's Motion, (docs. 30), and **GRANTS in part and DENIES in part** PAC's Motion, (doc. 32).

## BACKGROUND

### I.      Musson's Employment at the DA's Office

The following are all the relevant facts that are set forth in the Amended Complaint.  (Doc. 29.)  Skye Musson is a former Officer Trainee in the United States Coast Guard.  (<u>Id.</u> at p. 3)  As the result of an injury sustained during her military service, Musson was diagnosed with, and continues to suffer from, Post-Traumatic Stress Disorder ("PTSD").  (<u>Id.</u>)  Following her honorable discharge from the Coast Guard, Musson attended law school, became a member of the State Bar of Georgia, and began practicing law in Georgia.  (<u>Id.</u>)  After graduating from law school, Musson began working at the Chatham County District Attorney's Office (the "DA's office") as an Assistant District Attorney.  (<u>Id.</u>)  At that time, the DA's office was managed by Defendant Shalena Cook Jones, as the District Attorney ("DA Cook Jones" or "Jones").  (<u>Id.</u> at p. 1.)

Chatham County is the only county in Georgia's Eastern Judicial Circuit.  (<u>Id.</u> at p. 4.)  The salary for Musson's position at the DA's office was paid, in part, by PAC and, in part, by the

County.  (Id. at p. 4.)  PAC paid Musson's base salary, while the County and DA Cook Jones determined a stipend amount that the County paid to Musson.  (Id.)  PAC provided Musson with training on how to carry out her duties as a prosecutor, paid her base compensation, and provided her with employment benefits.  (Id.)  The Amended Complaint further states that PAC established norms—policies, rules, or regulations—pertaining to Musson's qualifications, hiring, rank, promotions, salary increases, possible salary range, holidays, leave, and creation and maintenance of her personnel file and payroll records.  (Id.)  DA Cook Jones did not establish her own workplace policies regarding employment discrimination or retaliation, nor did she clearly inform employees of any such policies.  (Id.)  However, DA Cook Jones placed copies of the County's employment manual in common work areas, which contained policies and procedures that applied to Musson. (Id. at p. 5.)

The County contracted with the DA's office to perform a variety of prosecutorial functions in Chatham County, including representing the County in Recorder's Court, Magistrate Court, and in cases involving Children in Need of Services ("CNIS").  (Id.)  According to the Amended Complaint, this added to the job duties of employees in the DA's office, including duties assigned to Musson.  (Id.)  PAC does not oversee or supervise attorneys in the Eastern Judicial Circuit DA's office performing separate job duties in Recorder's Court, Magistrate Court, or CINS cases.  (Id.)

Musson alleges that she was denied a promotion based on a culture perpetuated at the DA's office that favored men over women.  (See generally id. at pp. 6–8.)  She alleges that she complained of this disparate treatment of women in the office to DA Cook Jones, which led to her being threatened with disciplinary action or termination, and further harassment from another assistant district attorney.  (Id. at pp. 9, 10.)  She also alleges that her PTSD was triggered in

conversations regarding her future employment at the DA's office.  (Id. at p. 11.)  Musson was thereafter involuntarily terminated from employment.  (Id.)

## II      EEOC Complaint and the County's Failure to Hire Musson as Conflicts Counsel

On June 23, 2021, Musson filed a Charge of Discrimination with the EEOC against the County, the DA's office, and PAC, regarding her failure to be promoted and her termination of employment at the DA's Office.  (Id. at p. 12.)  After filing the charge, she applied to work for the County to provide indigent criminal defense services as Conflicts Counsel.  (Id.)  According to the Amended Complaint, there is a shortage of such counsel in the County, and Musson is one of a few attorneys qualified and willing to take this position.  (Id.)  After submitting her application, Musson was initially deemed qualified, and her name was added to a list of candidates for final approval at a County Commission meeting.  (Id.)  Following the meeting, however, the manager of indigent criminal defense services for the County called Musson and told her that her name was removed from the list because she "filed an EEOC Charge and the County deemed that a 'conflict of interest.'"  (Id. at pp. 12–13.)

## III.     Procedural History

Musson filed this suit on April 7, 2022, against PAC, the County, and Cook Jones in her individual and official capacities as the DA in Chatham County Superior Court.  (See doc. 1-1.)  Defendants then removed the case to this Court, (doc. 1), and Musson thereafter filed the Amended Complaint on August 3, 2022, (doc. 29).  In the Amended Complaint, Musson alleges sex discrimination and retaliation in violation of Title VII (Counts I and III) and disability discrimination and retaliation in violation of the ADA (Counts II and IV) against all Defendants as her joint employers at the DA's office.  (Id. at pp. 13–18.)  Musson also brings various constitutional claims by and through 42 U.S.C. § 1983.  (Id. at pp. 19–24.)  Specifically, Musson

asserts First Amendment retaliation claims against the County (Count V) and collectively against PAC and Jones in her individual and official capacities (Count VI) for the adverse action she faced as a result of her EEOC charge and her remarks about gender discrimination at the DA's office, respectively.  (Id. at pp. 19–23.)  Additionally, Musson alleges that all Defendants, as her joint employers, engaged in sex discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment (Count VII).  (Id. at pp. 23–24.)  Furthermore, Musson alleges that Defendants violated the GWPA by terminating her for disclosing their waste and abuse and for complaining that they had perpetuated a culture of unlawful sex discrimination (Count VIII).  (Id. at pp. 24–25.)  Finally, Musson asserts a claim for punitive damages solely against Defendant Cook Jones in her individual capacity under 42 U.S.C. § 1983 (Count IX).  (Id. at p. 26.)

The County and PAC filed the at-issue Motions to Dismiss on August 17, 2022.[1]  (Docs. 30, 32.)  In the Motions, each of those two Defendants argue primarily that they cannot be considered Musson's "employer" within the joint employer definition.  (See generally docs. 31, 32-1.)  The County additionally argues that Count V (the First Amendment retaliation claim against it) is due to be dismissed because of the contractual relationship that existed between Musson and the County Board of Commissioners at the time of the alleged First Amendment Violation.  (Doc. 31, pp. 10–12.)  PAC also contends that Musson's claims under the ADA and the First and Fourteenth Amendments are barred by the Eleventh Amendment.  (See doc. 32-1, pp. 10–14.).  Musson filed a Response to both Motions, arguing, inter alia, that she has pled sufficient facts to show that both Defendants acted as her "joint employers."  (See docs. 41, 42.)  The moving Defendants have both filed Replies.  (Docs. 49, 50.)

---

[1]  Only PAC and the County have filed motions to dismiss.  Defendant Jones filed an Answer to the Complaint on May, 20, 2022, before the at-issue Motions were filed.  (Doc. 11.)  Jones did not join PAC's or the County's Motions and has not filed a separate motion to dismiss.  Accordingly, the Court's ruling on the Motions does not affect the status of Musson's claims against Jones.

**STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678. Rather, "[a] complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215 (11th Cir. 2012) (quoting Ashcroft, 556 U.S. at 678).

The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Ashcroft, 556 U.S. at 678 (internal quotation marks and citation omitted). Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993); see also Neitzke v. Williams, 490 U.S. 319, 326–27 (1989) (explaining that Rule 12 allows a court "to dismiss a claim on the basis of a dispositive issue of law").

**DISCUSSION**

**I.      Whether Musson Has Plausibly Alleged that Defendants Were Her Joint Employers**

Both the County and PAC argue in their respective Motions that they cannot be held liable under Title VII, the ADA, or the GWPA because they did not act as Musson's "employer." (See doc. 31, pp. 4–10; doc. 32-1, pp. 3–10.) According to the County and PAC, under Georgia law, Musson was an employee of DA Cook Jones, and not of the County or PAC. (Doc. 31, p. 4; doc. 32-1, p. 7.) Furthermore, they argue that they are separate entities from the DA's office, and Musson failed to plausibly allege that they were her employer under a "joint employer" theory. (See doc. 31, pp. 7–10; doc. 32-1, pp. 5–10.)

Title VII prohibits employers from discriminating against an individual because of the individual's sex, and, accordingly, a Title VII workplace discrimination claim can only be brought by an employee against her employer.[2] See 42 U.S.C. § 2000e-2(a)(1); Llampallas v. Mini-Circuits, Inc. 163 F.3d 1236, 1242 (11th Cir. 1998). The Eleventh Circuit Court of Appeals has found that, to determine who is an employer within the meaning of Title VII, courts must ask "who (or which entity) is in control of the *fundamental aspects of the employment relationship that gave rise to the claim*." Lyes v. City of Riviera Beach, 166 F.3d 1332, 1345 (11th Cir. 1999) (en banc) (emphasis added). To answer this question, courts look to "the totality of the employment relationship" and consider "(1) how much control the alleged employer exerted on the employee,

---

[2] The ADA and the GWPA have the same "employer" requirement as Title VII. See 42 U.S.C. § 12112(a) (prohibiting a "covered entity"—which is defined in 42 U.S.C. § 12111(2) to include an "employer"—from discriminating on the basis of a disability); O.C.G.A. §45-1-4(d) (prohibiting a "public employer" from retaliating against a "public employee" for disclosing a violation of the law or objecting to an unlawful policy). In their briefing, the parties address the issue of "employer" status using supporting caselaw within the Title VII context, and they appear to agree that the caselaw defining "employer" under Title VII applies with equal force in the ADA and GWPA contexts. (See generally docs. 31, 32-1, 41, 42, 49, 50.) Accordingly, the Court will limit its analysis to those cases and rationales briefed by the parties that define employer within the Title VII context.

and (2) whether the alleged employer had the power to hire, fire, or modify the terms and conditions of the employee's employment." Peppers v. Cobb Cnty., 835 F.3d 1289, 1297 (11th Cir. 2016). The Eleventh Circuit has explained that "the focal point of the inquiry is not which entity controlled the specific aspect of the relationship giving rise to a discrimination claim, but rather which entity or entities controlled the fundamental and essential aspects of the employment relationship when taken as a whole." Id. at 1301. Additionally, because Title VII is meant to serve remedial purposes, courts should interpret the term "employer" liberally. Id. at 1297.

The County and PAC argue that because their offices and the DA's office are specifically created and defined as separate entities under Georgia law, neither the County nor PAC can be found to be Musson's employers. (See doc. 31, pp. 4–5; doc. 32-1, p. 5.) To this point, the DA's office is indisputably a legally distinct government entity from both Defendants under Georgia law. District attorneys are democratically elected, judicial officers whose position and general duties are created by the Georgia Constitution. See Ga. Const. art. VI, § 8, ¶ I(a). Counties are likewise created by the Constitution. See id. art. IX, § 1, ¶ I. Indeed, counties in Georgia hold no power to supervise, hire, or fire employees working for district attorneys. Peppers, 835 F.3d at 1297; see Ga. Const. art. IX, § 2, ¶ I(c). Likewise, the district attorneys exclusively possess the power to set their employees' compensation, and counties only possess the power to approve the "manner and amount of compensation." O.C.G.A. § 15-18-20(b). Furthermore, the Supreme Court of Georgia has clarified that, as a general rule, "employees of constitutionally elected officers of a county are considered employees of the elected officer and not employees of the county." Boswell v. Bramlett, 549 S.E.2d 100, 102 (Ga. 2001). While the law defining PAC is not as extensive, PAC was clearly created by the state legislature and codified in the Georgia Code as a separate legal entity. See O.C.G.A. § 15-18-40. Moreover, this Court is bound by Eleventh

Circuit precedent stating that, "where a state legislative body creates a public entity and declares it to be separate and distinct, that declaration should be entitled to a significant degree of deference, amounting to a presumption that the public entity is indeed separate and distinct for purposes of Title VII." Lyes, 166 F.3d at 1344.

Because both PAC and the County are public entities distinct from the DA's office, the Court should "begin with the presumption that . . . [they] should not be aggregated for purposes of Title VII." Lyes, 166 F.3d at 1345. However, this does not automatically bar Musson's claims, as a plaintiff may still rebut this presumption. See Peppers, 835 F.3d at 1298. The Eleventh Circuit has found that even distinct entities can be held to both qualify as employers if they can properly be "aggregated," and it has laid out three ways to "aggregate" employers for purposes of Title VII:

> First, where two ostensibly separate entities are highly integrated with respect to ownership and operations, we may count them together under Title VII. This is the "single employer" or "integrated enterprise" test. Second, where two entities contract with each other for the performance of some task, and one company retains sufficient control over the terms and conditions of employment of the other company's employees, we may treat the entities as "joint employers" and aggregate them. This is the "joint employer" test. Third, where an employer delegates sufficient control of some traditional rights over employees to a third party, we may treat the third party as an agent of the employer and aggregate the two when counting employees.

Lyes, 166 F.3d at 1341 (internal quotation marks and citations omitted).

Musson does not dispute that Georgia law defines the parties as separate entities, but instead argues that she has sufficiently pled that the County and PAC, while legally distinct entities, can be aggregated with the DA in this context because they, along with DA Cook Jones, were her "joint employers."[3]  (Doc. 42, pp 5–6.)

The Eleventh Circuit has further explained the "joint employer" test:

---

[3] To the extent that Musson discusses PAC's "direct employment relationship" with the DA's Office, (doc. 42, pp. 8–9), the Court, at this time, declines to address the merits of such arguments, see n.6, infra.

The basis of the finding is simply that one employer[,] while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.  Thus the joint employer concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment.

Peppers, 835 F.3d at 1300 (quoting Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1360 (11th Cir. 1994).  Unlike the "single employer" test,[4] the joint employer test as set out by the Eleventh Circuit recognizes the separation of entities which the state has explicitly recognized.  See Peppers, 835 F.3d at 1299 (noting that a "joint employer" finding recognizes the state-created separation of the entities, "only to conclude that the two separate entities collaborated to jointly employ an individual").  However, even when applying the joint employer test, courts "must remain mindful of the state's expressed determination that the agencies and subdivisions of government are divided and separated."  Id.  Therefore, the Court must "act with care and circumspection before aggregating separate state actors as joint employers."  Id. at 1300.  Moreover, the joint employment relationship is employee specific or, in other words, "is determined by focusing on the entities' relationships to a given employee" rather than the relationship between the entities as a whole.  Id. (quoting Sandoval v. City of Boulder, 388 F.3d 1312, 1324 (10th Cir. 2004)).  In summation, Musson must have adequately alleged that, while Defendants are separate entities from the DA's office, they jointly collaborated with the DA's office with respect to her employment.

Determining whether a defendant is a joint employer is a factual inquiry and thus courts usually make this determination at the summary judgment stage.  Key v. Hyundai Motor Mfg. Ala., LLC, No. 2:19-cv-767-ECM, 2021 WL 3909663, at *8 (M.D. Ala. Aug. 31, 2021); see, e.g.,

---

[4]  Under the single employer test, the presumption that entities are defined separately by law gives rise to a much stronger presumption against aggregation.  See Peppers, 835 F.3d at 1298.  Here, Musson has only sought liability under a "joint employer" theory; thus, the Court will only examine Musson's claims under this test.

Peppers, 835 F.3d at 1297–1301 (deciding character of employment relationship between a district attorney and a county based on joint employer theory after discovery, on a motion for summary judgment).  Indeed, a plaintiff need not conclusively establish the existence of a joint employer relationship to survive a motion to dismiss, but "a plaintiff must at least provide sufficient factual allegations to raise a reasonable expectation that evidence will reveal employer aggregation is appropriate." Alvarez v. Bechtel Corp., No. 4:21-cv-087, 2022 WL 660177, at *6 (S.D. Ga. Mar. 4, 2022) (internal quotations omitted); see Smith v. CH2M HILL, Inc., No. 1:10-cv-02936-CC-RGV, 2011 WL 13128411, at *7 (N.D. Ga. Mar. 3, 2011) ("While plaintiff is not required to conclusively establish that defendants were [his] joint employers at the pleading stage, plaintiff must at least allege *some* facts in support of this legal conclusion.").  Therefore, at the motion to dismiss stage, the Court is limited to considering whether a plaintiff has alleged sufficient facts that the alleged joint employers were "in control of the fundamental aspects of the employment relationship." Lyes, 166 F.3d at 1345.

**A.    Whether Musson Has Plausibly Alleged that the County Was Her Employer Under a Joint Employer Theory**

The County argues that because it is a separate legal entity, and because Musson has not alleged that it possessed any control over her employment at the DA's office, it cannot be found to be Musson's employer.  (Doc. 31, pp. 4–10.)  Conversely, Musson contends that the facts in the Amended Complaint are sufficient to "show that [the] County 'retained for itself sufficient control of the terms and conditions of [her] employment' to be rendered a joint-employer," and that "discovery is needed to evaluate the facts surrounding the County's relationship" with her employment at the DA's office.  (Doc. 41, pp. 9–10 (quoting Peppers, 835 F.3d at 1300).)

To determine whether the County's should prevail on its Motion, the Court must look to the allegations in the Amended Complaint.  Musson first alleges specifically that she was a "joint

11

employee" of all Defendants.  (Doc. 29, p. 4.)  This allegation, however, bears no weight on the Court's analysis here as this is a legal conclusion which cannot, on its own, survive a Motion to Dismiss.  See Smith, 2011 WL 13128411, at *7 ("[M]erely alleging that defendants are 'joint employers' is insufficient to satisfy Rule 8's pleading requirements as that is a legal conclusion, not a factual allegation."); see also Ashcroft, 556 U.S. at 678.  Musson next points to her allegation that Chatham County is the only county represented by the DA's office, and that her salary was paid in part by the County.  (Doc. 29, p. 4.)  While there is no definitive rule for determining what is necessary to establish a joint employer relationship, the Eleventh Circuit has held that a role of "paymaster"—i.e., simply being the source of an employee's income—is, as a matter of law, insufficient on its own to prove a joint employer relationship.  See Peppers, 835 F.3d at 1300; Chames v. Calhoun Cnty. Comm'n, No. 21-11651, 2022 WL 1217652, at *3 (11th Cir. Apr. 26, 2022) (finding that pleading the defendant-county paid the plaintiff's wages and had authority to approve their salary was insufficient to establish an employer relationship).  Indeed, while "[g]overnmental subdivisions . . . may share sources of ultimate political control or funding," they may still be "wholly distinct with respect to their day-to-day operations or their control over relationships with employees."  Lyes, 166 F.3d at 1343.  Thus, Musson's repeated allegations that the County paid part of her salary, taken alone, are insufficient.

However, Musson also alleges that the County contracted with the DA's office to delegate certain tasks typically performed by the County to the DA's office, "including representing the County in Recorder's Court, Magistrate[] Court, and in cases involving Children in Need of Services."  (Doc. 29, p. 5.)  She further alleges that the County's delegation of these prosecutorial functions added to her job duties at the DA's office.  (Id.)  However, this vague allegation that the County contracted for certain tasks to be performed by the DA's office as a whole also gives the

Court little basis to find that the County somehow *controlled* any aspect of Musson's employment. Indeed, under the joint employer test, not only does a plaintiff need to show that one entity contracted with another to perform some task, but also the entity "*retains* sufficient control over the terms and conditions of employment of the other [entity's] employees." Lyes, 166 F.3d at 1341 (emphasis added).  Nothing is alleged about the extent to which, if any, the County retained control over Musson with regard to these delegated duties.  See Smith, 2011 WL 13128411, at *6–7 (finding the fact that the plaintiff performed certain duties for the city due to a contractual relationship with his employer insufficient to create a joint employer relationship with the city, even where the city exerted "pressure" on him to perform such tasks), *report and recommendation adopted*, 2020 WL 13129749 (N.D. Ga. Sept. 1, 2011); see also Isaacs v. Felder Servs., LLC, No. 2:13-cv-693-MEF, 2014 WL 2806128, at *3 (M.D. Ala. 2014) (finding that pleading that the defendant supervised the plaintiff "without providing any supporting allegations as to the manner or extent of that supervision, or the amount of control the defendant exerted over [the plaintiff], falls short of demonstrating that an employment relationship existed").

It appears the only allegation contained in the Amended Complaint that reflects any control exerted by the County is the allegation that the DA's office maintained and made available copies of the Chatham County employment manual which applied to Musson in her position at the DA's office.  (Doc. 29, pp. 4–5.)  However, after a thorough review of the caselaw, the Court finds that this allegation is likewise insufficient to show that the County maintained the requisite level of control over Musson's employment.  See, e.g., Williams v. Augusta, No. 1:21-cv-145, 2022 WL 3367520, at *4–5 (S.D. Ga. Aug. 15, 2022) (finding the fact that the plaintiff was required to attend and complete the defendant's yearly training program and that the defendant's policies applied to plaintiff did not establish the level of control over employment sufficient to establish the defendant

acted as the plaintiff's employer).  Even assuming that the Chatham County employee handbook was made available and applied to Musson, this in no way shows that it was *the County*—and not the DA's office—who actually enforced the policies or in any way controlled Musson in her employment at the DA's office.  See id. at *2, 4 (finding that, while defendant GPDC's policy regarding termination and terms of employment applied to the plaintiff, it was defendant-employer Mason who implemented it).  Indeed, the Amended Complaint appears to make clear that DA Cook Jones supervised Musson, controlled her job assignments and "day-to-day case load and activities," held the authority to discipline her, and ultimately retained the power to terminate her employment.  (Doc. 29, p. 4; see generally doc. 29); Williams, 2022 WL 3367520, at *5 (dismissing claims against defendant GPDC where the complaint could not show the defendant had "any control over the day-to-day operations" of the plaintiff's employment); cf. Linzy v. Ala. Dep't of Pub. Health, No. 2:19-cv-153-MHT, 2020 WL 6205848, at *2 (M.D. Ala. Oct. 22, 2020) (finding joint employer relationship existed where alleged employer provided feedback, oversaw day-to-day employment and work hours, and could discipline and remove employees).  Nothing as alleged in the Amended Complaint reflects any sort of control over Musson's day-to-day employment on the part of the County.

Moreover, the Court must be mindful of the inference that counties are typically not responsible for the acts of elected county officials.  See Wheale v. Polk Cnty., No. 21-13676, 2022 WL 4953350, at *3 (11th Cir. Oct. 4, 2022) ("The Counties also had no authority over and were not responsible for discriminatory acts by individuals in any elective county office, such as the district attorney, or by any court . . . personnel, like the supervisor who prepared special advocate reports.") (internal quotations omitted).  Even viewing the Amended Complaint's allegations in the light most favorable to Musson, the Court fails to see how any of Plaintiff's allegations indicate

that the County exerted a level of control over Musson sufficient to overcome this presumption and to find that the County *employed* her as required under Title VII. Simply pleading that the County delegated certain tasks to the DA's office, paid portions of employees' salaries, and had policies that were applicable to the DA's employees, even when taken together, does not lead to the conclusion that the County possessed the requisite level of control over Musson's employment. Accordingly, the Court finds that Musson has failed to plausibly allege that the County was her employer as required under Title VII, the ADA, or the GWPA and, consequently, the Court must grant the County's Motion to Dismiss Plaintiff's Title VII, ADA, and GWPA claims with respect to claims based on actions taken against Musson as an assistant district attorney.[5] Thus, the Court dismisses the entirety of Count I, Count II, and Count VIII against the County. Additionally, the Court dismisses the portions of Counts III and IV (the retaliation counts) against the County through which Plaintiff claims that the County terminated her from her position as an assistant district attorney in retaliation for engaging in statutorily protected activity. (See doc. 29, p. 16 ("Defendants retaliated against Plaintiff by subjecting Plaintiff to termination on the basis of her exercise of federally protected rights as compared with employees who did not engage in similar statutorily protected activity."); id. at p. 17 ("In the same conversation, Defendant Jones told [Plaintiff] that her employment was terminated immediately.").)

> **B.    Whether Musson Has Plausibly Alleged that PAC Was Her Employer Under a Joint Employer Theory**

---

[5]  The County appears to contend that Counts V and VII also require the existence of—and therefore sufficient pleading of—an employment relationship between Plaintiff and the County. (See doc. 31, pp. 7–8.) While the County does not make clear whether it seeks dismissal of those counts on this basis, the Court notes that such a request would be futile. Claims brought under § 1983 do not have the same employer requirement as claims brought under Title VII, the ADA, or the GWPA. See generally U.S. Const. amend. I; U.S. Const. amend. XIV. Accordingly, to the extent that the County requests dismissal on this ground, the Court denies the Motion as to Counts V and VII with respect to the County.

PAC also argues that it cannot be found to be Musson's employer because it is a legally distinct entity under Georgia law and because it functioned only to assist the DA's office in "budgetary efforts."[6]  (Doc. 32-1, p. 4; see id. at pp. 3–10.)  This argument, however, fails because it ignores facts pled in the Amended Complaint that plausibly allege an employment relationship between PAC and Musson.

In support of her position that she was a "joint employee" of PAC, Musson alleges that PAC paid her base salary.  (Doc. 29, p. 4.)  PAC, however, argues that these allegations are insufficient and only show that PAC "merely act[ed] as a paymaster, who did not control the fundamental aspects of Plaintiff's employment."  (Doc. 32-1, p. 7.)  While PAC is correct that these allegations alone are inadequate to support a finding that PAC was Musson's joint employer, see Discussion Section I.A, supra, the Amended Complaint contains additional allegations which suffice, at this stage, to support such a finding.  Specifically, Musson additionally alleges that, beyond paying her base salary, "PAC provided [her] with training on how to carry out her duties as a prosecutor," provided her employment benefits, and "established norms that applied to [her] job and performance, including, without limitation, policies, rules, or regulations pertaining to . . . Musson's qualifications, hiring, rank, promotions, salary increases, possible salary range, holidays, leave, and creation and maintenance of her personnel file and payroll records."  (Id.)  As Musson points out in her Response, this is in line with the duties specifically tasked to PAC under the Georgia Code.  (Doc. 42, p. 8 (citing O.C.G.A. § 15-18-19(a) & (c)).)

---

[6]  Musson, on the other hand, argues that PAC's legal distinction from the DA's office is not analogous to the County's because PAC essentially acts as an agent of the DA's office.  (See doc. 42, p. 8.)  To this point, Musson states that "PAC has a direct employment relationship with assistant district attorneys as a state governmental entity," and notes that, under O.C.G.A. § 15-18-19(a) & (c), PAC "sets the policies and procedures governing employment actions involving assistant district attorneys."  (Id.)  Because the Court finds that the Amended Complaint, on its face, sufficiently alleges the existence of an employment relationship to overcome any presumption concerning the separate nature of these entities, the Court need not, at this time, determine to what degree, if any, PAC acted as an agent of the DA's office.

Accepting the allegations against PAC as true and construing them in the light most favorable to Musson, as the Court must at this stage, Musson has alleged sufficient facts to support a finding that PAC was her employer. The Amended Complaint plausibly alleges that PAC had some level of control over whether Musson was hired or fired, received a raise or promotion, or was granted leave, which supports a finding that PAC "had the power to hire, fire, or modify the terms and conditions of [Musson's] employment." Peppers, 835 F.3d at 1297. These are all fundamental aspects of employment. See, e.g., Crawford v. Place Prop., LP, No. 4:16-cv-146, 2017 WL 380928, at *4 (S.D. Ga. Jan. 26, 2017) (finding that plaintiff had sufficiently alleged that defendant was a joint employer where the complaint alleged that defendant provided accounting, training, and payroll services, made hiring and firing decisions on behalf of the other employer, and paid the plaintiff's salary); Thomas v. Rockdale Cnty., No. 1:19-CV-2430-MLB-JSA, 2020 WL 10227322, at *9–10 (N.D. Ga. Apr. 23, 2020) (finding plaintiff had sufficiently alleged that Rockdale County was one of her employers where she alleged that the county had interviewed and hired her, maintained the authority to fire her, issued her paychecks, assigned her position within the County, established her job responsibilities, and otherwise controlled her employment— including assignments, hours, pay, and promotional opportunities). While discovery is yet to be concluded and, thus, PAC may be able to show that imposition of such "norms" did not amount to control sufficient to establish an employer relationship, the Court finds it prudent at this stage to wait for further fact development to determine whether PAC in fact controlled the fundamental aspects of Musson's employment. See Crawford, 2017 WL 380928, at *4 ("While these allegations may prove to be untrue, the Court is unconvinced that [p]laintiff's claims against [defendant] should fail at this stage of the litigation."). Accordingly, PAC's Motion to Dismiss

Musson's claims under Title VII, the ADA, and the GWPA (Counts I, II, III, IV, and VIII) must be denied.

## II.   Whether Musson Has Plausibly Alleged Retaliatory Failure to Hire Claims Against the County

### A.   Retaliatory Failure to Hire Under 42 U.S.C. § 1983 (Count V)

In Count V, Musson alleges that the County retaliated against her for engaging in speech protected by the First Amendment—i.e., filing her EEOC charge—by refusing to hire her for the conflicts counsel position.  (Doc. 29, pp. 19–21.)  The County argues that this claim necessarily fails because it was "not hiring the Plaintiff but merely decid[ing] whether to ratify the agreement for her to work for Conflicts Counsel."  (Doc. 31, p. 11.)  According to the County, Musson's work, therefore, would have been that of an independent contractor and not a county employee; thus, she cannot maintain her retaliatory failure to hire claim.  (Id. at pp. 10–12.)  Furthermore, the County argues that Count V is moot because Musson "has received a contract which was approved before the County's Board of Commissioners."  (Id. at p. 10.)

None of these arguments are persuasive.  The Court's analysis at the motion to dismiss stage is "limited to the four corners of the complaint."  St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002).  The Court can consider only the complaint itself and any documents referred to in the complaint which are central to the claims.  See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368–69 (11th Cir. 1997) (per curiam) ("[A]nalysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto.").  In the Amended Complaint, Musson alleges that she "applied to Defendant Chatham County to provide indigent criminal defense services as Conflicts Counsel."  (Doc. 29, p. 12; see id. (alleging that she submitted an "application to serve as Conflicts Counsel").)  While the Court concludes that the Amended Complaint alleges sufficient facts to support a retaliatory failure to hire claim, the

Court notes that the Amended Complaint does not go into great detail about the "Conflicts Counsel" application and selection process, and thus makes no mention of the purported "agreement for [Musson] to work for Conflicts Counsel" as an independent contractor, or the idea that the County was merely "ratifying" an agreement made by others, or the supposed "contract" approved by the Board of Commissioners upon which Defendant's arguments are based.[7]  (See generally doc. 29.)  Thus, the Court lacks any basis to consider the County's arguments and denies the County's Motion to Dismiss Musson's First Amendment retaliation claims against it.

**B.  Retaliatory Failure to Hire Under Title VII and the ADA (Counts III and IV)**

As explained above, Musson has not plausibly alleged that the County was her joint employer while she served as an assistant district attorney.  However, this finding is not necessarily fatal to her claims that the County subsequently violated Title VII and the ADA by refusing to hire her as a Conflicts Counsel in retaliation for her filing an EEOC charge.  To establish a prima facie case of retaliation under Title VII, a "plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events."  Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).  Filing an EEOC charge is a protected activity, and a refusal to hire is a materially adverse employment action.  See Baines v. Walgreen Co., 863 F.3d 656, 661 (7th Cir. 2016).  A potential employer's refusal to hire a job applicant because of the applicant's statutorily protected expression can amount to a prima facie case of retaliation under Title VII and the ADA. See Wrenn v. Ledbetter, 697 F. Supp. 483, 486 (N.D. Ga. 1988) ("The framework for analyzing claims of retaliatory failure to hire is similar to the framework for discriminatory failure to hire claims."); Harrison v. Macy's Inc., No. 1:17-cv-03257-TCB-AJB, 2022 WL 1298595, at *18 (N.D.

---

[7]  Furthermore, the County has not provided these documents to the Court, described their contents, or explained the specific circumstances in which they were entered.

Ga. Jan. 22, 2022), *report and recommendation adopted*, No. 1:17-CV-3257-TCB, 2022 WL 1297992 (N.D. Ga. Mar. 21, 2022) ("[I]n a retaliatory failure-to-hire case, in addition to the three elements of an ordinary retaliation claim, a plaintiff must show that he applied for the available job and was qualified for the position.").

Musson directly alleges that she applied for "a position providing indigent criminal defense services as Conflicts Counsel for Chatham County," that she was "qualified and willing to take this position," that she "was initially deemed qualified," but that "she was not hired for the Conflicts Counsel position *because* she had filed the Charges of Discrimination with the EEOC." (Id. at pp. 12, 19 (emphasis added).)  These allegations plausibly allege a separate act of retaliation against the County in violation of Title VII.  (Id. at pp. 16, 17.) To be sure, at some points in her Amended Complaint, Musson refers to the Conflicts Counsel position as an "independent contractor."  (See id. at pp. 16, 17–18.)  However, at other points, she refers to potentially being "hired" and "applying" for the "position."  If the Conflicts Counsel position contemplated by the parties was indeed an independent contractor position, it could be that the position does not fall within the protections of Title VII and the ADA. [8]  See Tolar v. Bradley Arant Boult Cummings, No. 2:13-CV-00132-JEO, 2014 WL 12836011, at *6 (N.D. Ala. Nov. 18, 2014), *report and recommendation adopted*, 2016 WL 611921 (N.D. Ala. Feb. 16, 2016) (explaining that "Title VII targets discrimination and retaliation by employers against its employees and its applicants for employment" and collecting cases regarding the same).  However, courts often find that "evaluating whether an individual is an employee or independent contractor is a fact intensive inquiry, one better suited to resolution following discovery."  Peppers v. Fulton Cnty. Bd. of Educ.,

---

[8] The Court makes no ruling on this point in this Order.  Indeed, the parties have not addressed, much less fully briefed this issue. This supports the Court's decision to not dispositively rule on this claim in this Order.

No. 1:17-CV-3128-TCB-JKL, 2018 WL 1283675, at *3 (N.D. Ga. Jan. 18, 2018), *report and recommendation adopted*, 2018 WL 1283674 (N.D. Ga. Feb. 8, 2018).  Moreover, in the case at hand, in seeking dismissal of Plaintiff's Title VII and ADA claims, the County has not addressed how the Conflicts Counsel position should be construed.  Indeed, the County has not separately explained why the Court should dismiss Plaintiff's retaliatory failure to hire claims.  Accordingly, Musson's claims in Counts III and IV that the County violated Title VII and the ADA by refusing to engage Musson for the Conflicts Counsel position in retaliation for her filing an EEOC charge survive this early stage of litigation.

### C.  Whether Sovereign Immunity Shields PAC from Liability Against Musson's ADA and Section 1983 Claims

PAC additionally argues that Musson's ADA and Section 1983 claims are barred by the Eleventh Amendment.  (Doc. 32-1, pp. 10–14.)  The Eleventh Amendment shields states from being sued in federal court without their consent.  U.S. Const. amend. XI; Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003).  "Under the traditional Eleventh Amendment paradigm, states are extended immunity, counties and similar municipal corporations are not, and entities that share characteristics of both require a case-by-case analysis."  United States *ex rel.* Lesinski v. S. Fla. Water Mgmt. Dist., 739 F.3d 598, 601 (11th Cir. 2014).  This immunity "includes agents and instrumentalities of the [s]tate," or those officers or entities acting as an "arm of the state." Manders, 338 F.3d at 1308.

PAC contends that it is entitled to Eleventh Amendment immunity as an arm of the state. (Doc. 32-1, pp. 11–14.)  PAC was created under the Georgia code to function on behalf of prosecuting attorneys "throughout the state in their efforts against criminal activity in the state." O.C.G.A. § 15-18-40(b).  Further, by the plain terms of the statute, it is the "Prosecuting Attorneys' Council *of the State of Georgia*."  O.C.G.A. § 15-18-40(a) (emphasis added).  Indeed, Musson

herself "does not dispute that PAC is a state agency which is, generally, protected by Eleventh Amendment sovereign immunity." (Doc. 42, pp. 11–12.) Accordingly, the Court accepts that PAC is an arm of the state and enjoys the same sovereign immunity protection as the state of Georgia.

However, simply because PAC is an arm of the state does not automatically entitle it to sovereign immunity in all situations. The Eleventh Amendment does not immunize a state from suit if Congress has statutorily abrogated a state's immunity or if a state itself has waived immunity. Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 54–56 (1996). Thus, the Court turns to whether Congress has abrogated, or the state of Georgia has waived, the state's immunity in suits brought pursuant to Section 1983 or the ADA.

### A.    Sovereign Immunity as to Musson's Section 1983 Claims against PAC

PAC first argues that, as an arm of the state, it is entitled to a dismissal of both of Musson's claims against it under Section 1983. (Doc. 32-1, p. 11.) PAC is correct. The law is clear that Georgia has not waived its sovereign immunity in cases arising under Section 1983, nor has Congress abrogated it. See O.C.G.A § 50-21-23(b); Thompson v. Albany Area Cmty. Serv. Bd., No. 1:19-CV-45 (LAG), 2022 WL 4596618, at *3 (M.D. Ga. Aug. 8, 2022). Indeed, Musson even concedes this point. (Doc. 42, p. 2 ("Upon review, [Musson] does not challenge PAC's argument that her §1983 claims against PAC for violations of her First and Fourteenth Amendment rights are barred by Eleventh Amendment immunity.").) Accordingly, PAC's Motion to Dismiss Musson's First and Fourteenth Amendment claims under § 1983 (Counts VI and VII) is granted.

### B.    Sovereign Immunity as to Musson's ADA Claims against PAC

PAC additionally argues that sovereign immunity applies to Musson's ADA claims against it. (Doc. 32-1, pp. 13–14.) In support of this assertion, PAC cites to Board of Trustees of the

University of Alabama. v. Garrett, in which the Supreme Court of the United States held that Congress did not abrogate the states' immunity when it enacted the ADA.  531 U.S. 356, 274 (2001).  PAC mistakenly claims that this should end the Court's inquiry.  In Garrett, however, the Supreme Court only determined that *Congress* did not statutorily abrogate the states' immunity from ADA suits *brought in federal court*; it said nothing about sovereign immunity when the *state* itself has waived immunity.  See id.  Indeed, Musson does not contend that the ADA has been statutorily abrogated by Congress, but rather that the state of Georgia has specifically waived its sovereign immunity with respect to claims brought under the ADA in state court.  (Doc. 42, pp. 12–15.)  She argues that because this suit was originally filed in state court, and Georgia "has waived sovereign immunity as to ADA claims" brought in state court, PAC is not necessarily entitled to sovereign immunity from liability for the alleged ADA violations.  (Id.)  Furthermore, Musson argues, because PAC would not have immunity from liability in state court, and because "PAC waived immunity from [this] suit in a federal forum by removing this case to this Court," it is not entitled to sovereign immunity.  (Id. at p. 15.)  Musson is correct.

The Eleventh Amendment affords two potential immunity defenses to claims brought against a state: (1) immunity from suit in a federal forum—i.e., the state's immunity from suits brought in federal court—and (2) immunity from liability generally.  See Stroud v. McIntosh, 722 F.3d 1294, 1300–01 (11th Cir. 2013).  Generally, forum immunity shields states from suits brought against them in a federal court absent their consent.  See, e.g., Gary v. Ga. Dep't of Human Res., 323 F. Supp. 2d 1368, 1372 (M.D. Ga. 2004) (observing that a state must consent to suit in federal court to waive immunity).  However, the Supreme Court of the United States has held that when a case is filed in state court, and a state removes to federal court, the state thereby waives federal forum immunity by voluntarily invoking the jurisdiction of the federal courts.  See Lapides v. Bd.

of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 619 (2002) ("[R]emoval is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to . . . a federal forum."). To find otherwise would allow a state to voluntarily invoke federal jurisdiction through removal and then turn around and claim sovereign immunity from claims which would otherwise have been permissible in state court, which "could generate seriously unfair results." Id. It is undisputed that PAC removed this action. Musson originally brought her ADA claims in the Superior Court of Chatham County. (See doc. 1-1, pp. 12–13, 15–16, 18–19.) Thereafter, Defendants—including PAC—removed the action to this Court, (doc. 1), thereby invoking federal jurisdiction and waiving their right to object to litigation of the action in the federal forum. See Lapides 535 U.S. at 619. Consequently, PAC undoubtedly waived any federal *forum* defense. However, this does not end the Court's inquiry.

Simply because PAC waived its potential federal forum immunity does not mean that it waived the *liability* immunity defense that would otherwise be available to it in state court. See Stroud, 722 F.3d at 1302. Indeed, the Eleventh Circuit has noted that "nothing in Lapides suggests that[, by removing a case,] a state waives any defense it would have enjoyed in state court—including immunity from liability for particular claims." Id. In other words, where a state, or state entity, removes a case to federal court, it waives its immunity-based objection to a federal forum, but may retain its immunity from liability for certain claims. See id. at 1303 (finding that "Alabama retains a 'nearly impregnable' immunity from suit," and had not waived its immunity defense from ADEA claims which it likewise would have enjoyed in state court); see, e.g., Crawford v. Ga. Dep't of Trans., 1:16-cv-3810-WSD, 2017 WL 1405326, at *4 (N.D. Ga. Apr. 19, 2017) (finding that while the DOT waived federal forum immunity by removing the action, it still could invoke immunity from liability to FMLA claims which the state of Georgia had not

waived).  Thus, for Musson's claim to withstand PAC's Motion to Dismiss, the state must also have waived any liability immunity defense that would have been available in state court.  See id. ("Whether the state retains its separate immunity from liability as to a particular claim . . . is a separate issue . . . determined according to the state's law.").  The Court finds that it has.

Under Georgia law, sovereign immunity enjoys constitutional status, and such immunity may only be waived by an act of the General Assembly or by the Constitution itself.  See Ga. Dep't of Nat. Res. v. Ctr. for a Sustainable Coast, Inc., 755 S.E.2d 184, 188–89 (Ga. 2014).  The Georgia Constitution provides that sovereign immunity "can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver."  Dep't of Trans. v. Mixon, 864 S.E.2d 67, 70 (Ga. 2021) (citing Ga. Const., Art. I, Sec. II, Par. IX (e)).  However, this does not require that a legislative act "use specific 'magic words' such as 'sovereign immunity is hereby waived' in order to create a specific statutory waiver of sovereign immunity."  Ga. Dep't of Corr. v. Couch, 759 S.E.2d 804, 809 (Ga. 2014).

> Indeed, where … the [l]egislature has specifically created a right of action against the government that would otherwise be barred by sovereign immunity, and has further expressly stated that an aggrieved party is entitled to collect money damages from the government in connection with a successful claim under the statute, there can be no doubt that the [l]egislature intended for sovereign immunity to be waived with respect to the specific claim authorized under the statute.

Colon v. Fulton Cnty., 751 S.E.2d 307, 310 (Ga. 2013), *overruled on other grounds by* Rivera v. Wash., 784 S.E.2d 775, 780 (Ga. 2016).

The State of Georgia has enacted the Fair Employment Practices Act, O.C.G.A. § 45-19-20, *et. seq*. ("FEPA"), which specifically creates a right of action for employees of the state to bring disability discrimination claims, among others, against their employers—i.e., the state. O.C.G.A. § 45-19-21(a).  A FEPA action can result in a judgment for back pay and other actual damages, including litigation expenses.  O.C.G.A. § 45-19-38(b), (d).  Accordingly, because a

specific Georgia statute created a right of action against the state, as an employer, which could result in a judgment for back pay and other actual damages, the state has "specifically waived its sovereign immunity for actions authorized by FEPA." Anstadt v. Bd. of Regents of the Univ. Sys. of Ga., 693 S.E.2d 868, 872 (Ga. Ct. App. 2010). Additionally, the Georgia Court of Appeals, in Williamson v. Dep't of Hum. Res., 572 S.E.2d 678 (Ga. Ct. App. 2002), found that this waiver of comparable actions brought under state law necessarily extended to ADA claims brought in state court. See id. at 681 ("Because, in . . . FEPA, the state by legislative act waived its sovereign immunity as to *state* disability discrimination claims by its employees, the state may not selectively cloak itself in sovereign immunity as to federal disability discrimination claims by its employees."); see also Sanford v. Ga. Dep't of Pub. Safety, No. 1:20-CV-4532-AT-JSA, 2021 WL 3073696, at *10 (N.D. Ga. June 7, 2021) (analyzing ADA claims and broadly noting that "FEPA is clear in its waiver of sovereign immunity against state employee disability discrimination claims in Georgia courts").[9]

Federal courts analyzing sovereign immunity as applied to ADA claims have repeatedly recognized and applied the Williamson holding and have additionally held that the state remains subject to suit on ADA claims even after it opts to remove the case from state court to federal court. See, e.g., Jones v. Ga. Dep't of Corr., No. 1:07-CV-1228-RLV, 2008 WL 779326, at *4–5 (N.D. Ga. Mar. 18, 2008) (explaining that "it is clear that after Williamson the State of Georgia may be sued in a Georgia state court for disability discrimination claims based on federal law" and rejecting state agency's claim that it nonetheless enjoyed immunity from plaintiff's ADA claim

---

[9]   The Sanford case repeatedly states that Williamson only recognizes Georgia's waiver of sovereign immunity in its own courts and does not apply to claims "*brought in federal court.*" 2021 WL 3073696, at *9. For sake of clarity, the Court notes that the Sanford court did not explicitly discuss the applicability of the immunity waiver in cases *brought* in state court and *removed to* federal court.

because it had removed the case to federal court); Williams v. Hill, No. 1:20-CV-0186-JPB-JSA, 2022 WL 907789, at *19 (N.D. Ga. Jan. 31, 2022) (recognizing that, under Williamson, the defendant could not claim sovereign immunity against ADA claims brought in state court which he then removed to federal court), *report and recommendation adopted*, 2022 WL 1715212 (N.D. Ga. Mar. 31, 2022); Gary, 323 F. Supp. 2d at 1372 (citing Williamson and stating that the plaintiff's ADA claims would not have been barred by immunity if they were brought in state court); Williams ex rel. Williams v. Fulton Cnty. Sch. Dist., No. 1:14-CV-0296-AT, 2015 WL 13264434, at *13 (N.D. Ga. Jan. 9, 2015) (recognizing the Williamson holding).[10]   Neither of PAC's supporting briefs provides *any* case law to dispute that Georgia has waived sovereign immunity with respect to ADA claims filed in state court.  (See generally docs. 32-1, 50.)  The only district court case cited by PAC is Battle v. Ga. Dep't of Corr., No. 5:20-cv-63 (MTT), 2021 WL 3824804 (M.D. Ga. Aug. 26, 2021).  (See generally docs. 32-1, 50.)  However, that case is inapposite here.  Battle merely deals with applying the United States Supreme Court's holding in Garrett to cases *brought in federal court*.[11]  Id. at *2.

The caselaw is clear that "[t]he issue of waiver is resolved differently depending on whether an action was *brought in* federal or state court."  Jones, 2008 WL 779326, at *4 (emphasis added).  Had Musson chosen to file her suit in federal court, PAC would have a valid immunity argument.  See Gary, 323 F. Supp. 2d at 1372 (finding that Georgia has not waived its Eleventh Amendment

---

[10]   Indeed, the only case located by the Court that disagreed with the Williamson holding is a report and recommendation which was not ultimately adopted by the district court.  See Echols v. Ga. Piedmont Tech. Coll., No. 1:20-cv-02794-TWT-AJB, 2021 WL 1521987, at *6–7 (N.D. Ga. Jan. 22, 2021), *report and recommendation adopted in part, rejected in part*, 2021 WL 870717 (N.D. Ga. Mar. 9, 2021).

[11]   Battle is a narrow ruling concerning the applicability of Garrett's holding regarding congressional abrogation of Title I ADA claims versus those brought under Title V.  See Battle, 2021 WL 3824804, at *2–3.  The ruling only concerns cases brought in federal court, and thus the case bears no weight in the current analysis about whether Georgia has waived immunity for ADA claims asserted against the state in state court and then removed to federal court.

immunity from federal disability discrimination claims in suits *brought in federal court*). However, Musson filed her suit in *state* court, where she clearly would have been able to litigate her ADA claims, as—under <u>Williamson</u>—PAC would not have been able to assert sovereign immunity.  The fact that PAC thereafter made the voluntary decision to remove the case to federal court does not re-cloak it in immunity.  Indeed, as a sister court has explained, "such a litigation tactic to get around an otherwise valid waiver of immunity is foreclosed by <u>Lapides</u>," and is "just the sort of conduct frowned upon in <u>Williamson</u>." <u>Jones</u>, 2008 WL 779326, at *4 & 5 n.2.

In summation, because Georgia has waived its sovereign immunity with respect to Plaintiff's ADA claims in state court, Plaintiff brought her claims in state court, and federal jurisdiction was only invoked by PAC's decision to remove the case to this Court, PAC cannot now claim that sovereign immunity shields it from liability.  Therefore, PAC is not entitled to Eleventh Amendment immunity on the claims brought under the ADA (Counts II and IV), and its Motion to Dismiss on those grounds is denied.

## CONCLUSION

As set forth above, the Court **GRANTS IN PART and DENIES IN PART** Chatham County's Motion to Dismiss.  (Doc. 30.)  The Court finds that the Amended Complaint fails to plausibly allege that the County was Musson's employer as required under Title VII, the ADA, and the GWPA and therefore **GRANTS** the County's Motion to Dismiss the entirety of Count I, Count II, and Count VIII against the County.  Additionally, the Court dismisses the portions of Counts III and IV (the retaliation counts) against the County through which Plaintiff claims that the County terminated from her position as an assistant district attorney in retaliation for engaging in statutorily protected activity.  (<u>Id.</u>)  However, the County has not explained why the Court should dismiss the portions of Counts III and IV through which Plaintiff claims that the County

violated Title VII and the ADA by refusing to engage her for the Conflicts Counsel position due to her statutorily protected speech survive. Additionally, to the extent that the County contends that its lack of employment argument extends to Musson's claims brought under Section 1983 (Counts V and VII), that portion of the Motion is **DENIED**. (Id.) Additionally, the Court finds that the County has failed to provide a basis for dismissal of Musson's First Amendment retaliation claim (Count V), and accordingly, the Motion is **DENIED** with respect to Count V. (Id.) Accordingly, the remaining claims against the County are Counts V and VII and the portions of Counts III and IV through which Plaintiff claims that the County retaliated against her by refusing to engage her for the Conflicts Counsel position.

As for PAC, the Court **GRANTS IN PART and DENIES IN PART** its Motion to Dismiss. (Doc. 32.) The Court finds that the Amended Complaint plausibly alleges that PAC was Musson's employer as required for purposes of Title VII, the ADA, and GWPA and therefore **DENIES** PAC's Motion to Dismiss those counts (Counts I, II, III, IV, and VIII). (Id.) The Court additionally **DENIES** PAC's Motion to dismiss on sovereign immunity grounds as to Musson's ADA claims (Counts II and IV). However, the Court **GRANTS** PAC's Motion based on sovereign immunity as applied to Musson's First and Fourteenth Amendment claims (Counts VI and VII). (Id.) Accordingly, the remaining claims against PAC are Counts I, II, II, and IV.

**SO ORDERED**, this 21st day of March, 2023.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA