# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

SKYE MUSSON,

        Plaintiff,

    v.

SHALENA COOK JONES; CHATHAM
COUNTY, GEORGIA; and PROSECUTING
ATTORNEY'S COUNCIL OF GEORGIA ,

        Defendants.

CIVIL ACTION NO.: 4:22-cv-124

## O R D E R

This Court does not relish sanctioning attorneys or parties.  Nor does it do so lightly.  Unfortunately, Defendant Shalena Cook Jones leaves the Court no choice.  Cook Jones repeatedly and willfully disregarded her discovery obligations and the Court's Orders even after the Court modified its deadlines to accommodate her.  To make matters worse, Cook Jones now provides false information to the Court in her attempt to excuse her misconduct.  The only measures sufficient to remedy Cook Jones' pattern of contemptuous disregard are striking her Answers and ordering her to pay Plaintiff's costs, fees, and expenses.

While the Court details the underlying facts below, it summarizes Cook Jones' misconduct at the outset.  The Court twice extended its discovery deadlines to afford Cook Jones time to remedy her insufficient responses to basic discovery requests.  Despite those extensions, Cook Jones refused to provide a single date during which she could be deposed.  Nonetheless, the Court once again accommodated Cook Jones and ordered her deposition to take place after the deposition deadline on a date she selected.  Cook Jones then assigned herself as the lead attorney in a trial

before the Superior Court of Chatham County that would likely conflict with her deposition.  As the conflict between that trial and Cook Jones' deposition became inevitable, Cook Jones remained as lead trial counsel even though two other experienced prosecutors represented the State throughout the trial.  Moreover, Cook Jones failed to apprise this Court or the Superior Court of her self-created conflict until the literal eve of her deposition.  Cook Jones' last-minute notices were not only tardy but also included false and incomplete information.  Ultimately, Cook Jones shunned multiple orders from this Court and refused to attend her deposition on the date she previously proposed due to a conflict she created.  To add further insult to injury, in her attempt to explain away her contemptuous conduct, Cook Jones now makes materially false statements.

Cook Jones depicts her failure to appear for her deposition as the result of an "unavoidable conflict" between her responsibilities as Chatham County District Attorney and her obligations as a litigant in this case.  This is simply not true.  Cook Jones' repeated failures were not caused by tension between her obligations to this Court and the Superior Court, but rather by her disregard of her duties to both courts.  Moreover, public officials frequently appear as parties before this Court, and they, like all litigants, must comply with the Court's rules and orders.  Indeed, it is specifically incumbent upon those who hold the public's trust, particularly those of us who hold others legally accountable, to maintain fealty to the rule of law in our own affairs.  Unfortunately, Cook Jones repeatedly and willfully failed that imperative.

Thus, for reasons stated more fully below, the Court **OVERRULES** Cook Jones' Motion to Set Aside and Objections to Orders Denying Defendant Shalena Cook Jones' Emergency Motions to Reschedule her Deposition and for Reconsideration.  (Doc. 89.)  Additionally, the Court **GRANTS IN PART** Plaintiff Skye Musson's Motion for Sanctions Striking Defendant Shalena Cook Jones' Answer and Entering Default Judgment.  (Doc. 88.)  The Court **GRANTS**

Plaintiff's Motion for Sanctions to the extent that she requests the Court to strike Cook Jones'
Answer and enter default against Cook Jones.  The Court hereby **DIRECTS** the Clerk of Court to
enter default against Cook Jones on the docket.  Additionally, the Court **GRANTS** Plaintiff's
request to the extent that she requests that Cook Jones reimburse Plaintiff for all reasonable costs,
attorneys fees, and expenses incurred due to Cook Jones' disregard of her discovery obligations
and failure to comply with this Court's Orders.  However, the Court **RESERVES RULING** on
Plaintiff's request for default judgment.

## BACKGROUND[1]

### I.    Initial Pleadings

On June 23, 2021, Plaintiff Skye Musson, a former Assistant District Attorney at the
Chatham County District Attorney's Office, filed a Charge of Discrimination with the Equal
Employment Opportunity Commission against Chatham County, the District Attorney's office,
and the Prosecuting Attorney's Council of Georgia ("PAC"), regarding her failure to be promoted
and her termination of employment at the District Attorney's Office.  (Doc. 29, p. 12.)  Plaintiff
then filed this lawsuit in Chatham County Superior Court on April 7, 2022, against PAC, the
County, and Cook Jones in her individual and official capacities.  (Doc. 1-1.)  Defendants then
removed the case to this Court, (doc. 1), and Plaintiff thereafter filed her Amended Complaint on
August 3, 2022, (doc. 29).

---

[1]  The Court finds all facts in this Order by clear and convincing evidence.  The parties have submitted
multiple pleadings on the issues herein including email correspondence, declarations from Cook Jones and
her assistant, and an affidavit from defense counsel in the Superior Court matter.  The parties do not dispute
the material facts surrounding Plaintiff's Motion for Sanctions, and the Court can readily determine from
the voluminous record before it that Cook Jones willfully violated the Court's Orders and disregarded her
discovery obligations.  Thus, the Court need not hold a hearing.  See Martinez-Garcia v. Perez, No. 6:13-
cv-015, 2013 WL 5606366, at *1 (S.D. Ga. Oct. 11, 2013) ("[N]o hearing prior to a finding of civil contempt
is needed 'when there are no disputed factual matters that require an evidentiary hearing.'") (quoting Mercer
v. Mitchell, 908 F.2d 763, 769 n.11 (11th Cir. 1990)).  Moreover, despite filing numerous pleadings on the
issues discussed herein, no party has requested a hearing.

Plaintiff asserts various federal and state law claims based upon Defendants' allegedly discriminatory treatment of her because of her sex and disability during her employment.  She alleges all Defendants discriminated and retaliated against her as joint employers in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.  (Doc. 29, pp. 13–18.)  She also contends Defendants violated the First and Fourteenth Amendments, (id. at pp. 19–24), and the Georgia Whistleblower Protection Act, O.C.G.A. § 45-1-4, (id. at pp. 24–25).  Plaintiff sues Cook Jones in her individual and official capacities and claims Cook Jones managed the Chatham District Attorney's Office, including Plaintiff's "day-to-day case load and activities."  (Id. at pp. 1, 4.)  Plaintiff claims Cook Jones was integrally involved in the discrimination and retaliation against her.  (Id. at pp. 4–13.)

## II.     Original Discovery Period

In their Rule 26(f) Report, filed on June 15, 2022, the parties requested an extended fact discovery period "based on the number of parties and claims, as well as the need to align multiple attorney schedules for the scheduling of depositions."  (Doc. 18, p. 7.)  The Report proposed a deadline of December 1, 2022, to conduct discovery depositions of witnesses who had not been designated as experts.  (Id. at pp. 4, 9.)  On July 6, 2022, the Court held a scheduling conference, (doc. 22), and then entered a Scheduling Order, (doc. 24), establishing multiple deadlines for phased discovery in line with the parties' proposal.  The Court set a deadline of December 15, 2022, for the parties to conduct non-expert discovery depositions.  (Id. at p. 4.)  The Court explained,

> These deadlines shall not be extended except upon a specific showing of good cause and order of the Court.  Fed. R. Civ. P. 16(b)(4).  **It is the Court's expectation that the parties will not need an extension of these deadlines**, which afford them significantly more time to conduct discovery than the Local Rules generally allow.  The showing of good cause necessary to obtain an extension of any of these deadlines requires a specific showing of what the parties have accomplished to date

in discovery, what remains to be accomplished, and why the parties have not been able to meet the Court's deadlines.

(Id. at p. 3 (emphasis in original).)

### III.   Joint Motions to Extend Discovery

On December 2, 2022, the Court granted the parties' Motion for Extension of Deadlines in Scheduling Order and extended the deadline for depositions of non-expert witnesses to February 15, 2023.  (Doc. 55, p. 2.)  The Court restated its expectation that the parties would not need an extension of the deadlines and that the deadlines would not be changed without a showing of good cause and Court order.  (Id. at p. 1.)  On February 8, 2023, the parties filed yet another Motion for Extension of Deadlines in Scheduling Order.  (Doc. 62.)  The parties explained that the need for an extension was caused, in large part, by Cook Jones' deficient responses to Plaintiff's discovery requests.  (Id. at pp. 3–4.)  On February 10, 2023, the Court granted the parties' Motion and extended the deadline for non-expert depositions to March 31, 2023.  (Doc. 63, p. 2.)  Once again, the Court restated that the deadlines would not be extended absent good cause and Court order.  (Id. at p. 1.)

### IV.   Defendants' Motion to Extend Deadline for Non-Expert Depositions

On March 17, 2023, Defendants requested yet another amendment of the discovery schedule extending the deadline for non-expert depositions forty-five days to May 15, 2023.  (Doc. 69.)  Defendants stated that they were "contemplating taking the depositions of several other non-expert witnesses" and contended that "the delay in completion of non-expert witness depositions is attributed to the fact that most non-expert witnesses are practicing attorneys who do not have availability to appear for depositions."  (Id. at pp. 2, 3.)  Plaintiff opposed that Motion and suggested that the Defendants other than Cook Jones "simply do not oppose the extension," emphasizing that those other Defendants "have not articulated a desire to depose any other

witnesses to Plaintiff." (Doc. 75, p. 6.) Additionally, Plaintiff disputed the contention that Cook Jones had diligently been pursuing discovery and explained that Plaintiff's counsel had repeatedly sought dates to depose Cook Jones to no avail. (Id. at pp. 5–6.) Plaintiff attached to her Response a series of email communications that substantiated her contentions that her counsel had repeatedly asked Cook Jones' counsel for dates for Cook Jones' deposition, that Cook Jones' counsel had relayed those requests to Cook Jones, and that Cook Jones had not provided dates for her deposition. (Docs. 75-4, 75-5, 75-7.) Given the lack of dates from Cook Jones, on March 6, 2023, Plaintiff unilaterally noticed Cook Jones' deposition to be taken by video on March 29, 2023. (Doc. 75-6.)

Cook Jones requested an informal discovery dispute conference regarding her request to amend the discovery schedule, (doc. 72), and the Court held that hearing via video conference on March 28, 2023, (doc. 76). During the conference, Cook Jones' counsel committed that Cook Jones would appear to be deposed on April 11, 2023. Thus, the Court held that "[Plaintiff] may take [Cook Jones'] deposition on April 11, 2023, and Cook Jones shall appear for the deposition." (Id.)[2]  On April 5, 2023, the Court denied Defendants' Motion to Amend the Scheduling Order because their vague assertions regarding additional depositions of unspecified fact witnesses fell far short of the good cause required to amend the discovery schedule. (Doc. 81, p. 3.) The Court reiterated that Cook Jones "shall appear" for her deposition on April 11. (Id. at p. 2 n. 1.) On April 5, Plaintiff served Cook Jones' counsel with her Amended Notice of Deposition making

---

[2] There is no dispute that the Magistrate Judge Ordered Cook Jones to appear to be deposed on April 11, 2023. Cook Jones' Emergency Motion to Reschedule her Deposition stated, "[t]he Court scheduled Defendant Cook-Jones's [sic] deposition for April 11, 2023, and ordered Defendant Cook-Jones to appear." (Doc. 83, p. 2.)

clear that the deposition was to be taken by videoconference at 10:00 a.m. on April 11, 2023. (Doc. 88-4.)

## V.   Cook Jones' Representation in <u>State v. Glover</u>

Cook Jones served as the counsel of record in a trial before the Superior Court of Chatham County wherein the defendant had been indicted on charges of rape, <u>State of Georgia v. Tyrone Glover</u>, Case No. SPCR21-00383-J6 ("<u>Glover</u>").  (<u>See</u> doc. 82, p. 2; doc. 88-1, p. 1; doc. 90-2, p. 2.)[3]  In an April 10, 2023, email, Cook Jones stated that, "[a]t the time [my] deposition was scheduled, I thought there would be someone else in place to try [<u>Glover</u>], but our incoming sexual assault prosecutor (who was scheduled to start in early April) will not arrive until April 17th.  So, I had to step in."  (Doc. 82-2, p. 2.)[4]  In other words, Cook Jones "step[ped] in" to serve as trial counsel in the <u>Glover</u> case after "the time [her] deposition was scheduled."  (<u>Id.</u>)  Cook Jones enlisted two "very seasoned prosecutors" to serve as her co-counsel in <u>Glover</u>, Assistant Chief District Attorney Michele Harris and Assistant District Attorney Louis Annunziata.  (Doc. 88-1, p. 2.; <u>see also</u> doc. 90-2, p. 2.)  Harris and Annunziata were "actively involved throughout the case and present throughout the trial."  (Doc. 88-1, p. 2.)

On March 29, 2023, the Superior Court held a specially set pretrial conference in <u>Glover</u> and discussed trial matters including scheduling.  (<u>Id.</u>)  Cook Jones and Glover's defense counsel

_____

[3]  The Court gleans some of the facts regarding <u>Glover</u> from the affidavit of Kelly Turner, defense counsel in <u>Glover</u>, (doc. 88-1), while some are gleaned from Cook Jones' Declaration, (doc. 90-2), and others are gleaned from Cook Jones' emails to the Superior Court and her counsel, (docs. 82-2, 88-2).  In her multiple pleadings, Cook Jones never contests any of the facts set forth by Turner, and those facts are consistent with the other evidence of record.  On the other hand, as explained below in the Court's discussion of Plaintiff's Motion for Sanctions, Cook Jones' declaration contains material misstatements that are belied by her own prior statements.  In this section, the Court simply sets forth the material facts.

[4]  This email is from an account that appears to belong to Cook Jones' assistant, Emma Washington.  (<u>See</u> doc. 82-2.)  However, the content and signature line indicate it was drafted by and from Cook Jones.  Additionally, Cook Jones attached it to her Motion to Reschedule her Deposition and referred to it as her own communication.  (Doc. 82, p. 2.)

anticipated that the case could involve "up to ten witnesses (possibly more)" and subpoenas for the trial were effective through April 14, 2023, in anticipation that delays could cause the trial to last "beyond the expected amount of time." (Id.)  During the March 29 pretrial conference, Cook Jones did not mention to the Superior Court, or anyone involved in the trial, that she had committed to being deposed in this case on April 11 and this Court had ordered her to appear for her deposition on that day. (Id.)

On April 4, 2023, jury selection commenced in Glover and concluded the following day. (Doc. 90-2, p. 2.)  The Superior Court held a second pretrial conference on Thursday, April 6, 2023, prior to the commencement of the States's case. (Doc. 88-1, p. 2.)  At that conference, Cook Jones requested that the Glover trial be continued to April 10, 2023, due to issues of witness availability. (Id.)  The Superior Court denied Cook Jones' request for a continuance, and the evidentiary portion of the Glover trial commenced on April 6, 2023. (Id.)  Cook Jones still did not mention to the Superior Court, or anyone involved in Glover, that this Court had ordered her to appear for a deposition three business days later. (Id.)  By Friday, April 7, 2023, Cook Jones still had not rested the State's case, and it was clear that the trial would last into the following week. (Id.)  Cook Jones still did not apprise the Superior Court or Glover's defense counsel of her Court-ordered deposition. (Id.)

Cook Jones did not make the Superior Court aware of her April 11 deposition when the Superior Court opened on April 10, nor did she do so as she continued presenting the State's case that day. (Doc. 88-1, p. 2.)  According to Cook Jones' email, on April 10, 2023, at 3:38 pm, the State was still questioning its "final witness" in Glover and though Cook Jones had "hoped to rest [that] afternoon" the Superior Court had taken a recess "until 4:30 due to an unexpected evidentiary matter." (Doc. 82-2, p. 2.)  Cook Jones predicted that the defense "won't open its case until 10am

[on April 11] after the charging conference.  With [the defendant's] four witnesses, cross examination, jury charging and closing arguments, I doubt we will be done by 1pm [on April 11]." (Id.)

For the first time, at 3:55 p.m. on Monday, April 10, 2023, Cook Jones made the Superior Court and defense counsel in <u>Glover</u> aware of her April 11 deposition.  (Doc. 88-1, p. 2; doc. 88-2, p. 2.)  Cook Jones emailed the Superior Court Judge that her "deposition has been noticed for several weeks and scheduling has been a point of great contention between the parties."  (Doc. 88-2, p. 2.)  She incorrectly told the Superior Court that her deposition was scheduled for 1:30 p.m. to 3:30 p.m. (as opposed to 10:00 a.m. as had been noticed) and requested a recess for that time. (Id.)  Cook Jones now avers that she mistakenly believed that her deposition was scheduled at 1:30 because her assistant placed the deposition on Cook Jones' calendar for that time.  (See doc. 90-1; doc. 90-2, p. 5.)  At 4:53 p.m. on April 10, the Superior Court emailed Cook Jones that it would grant a recess in the <u>Glover</u> trial from 1:30 p.m. to 3:30 p.m. on April 11.  (Doc. 88-2, p. 2.)

Additionally, after opposing counsel in <u>Glover</u> objected to the recess, Cook Jones, at 9:12 p.m. on April 10, 2023, forwarded the Superior Court Judge an email from her counsel in this case which included this Court's Text Order denying an Emergency Motion to Reschedule her deposition, which her counsel had filed hours before.  (Doc. 88-3.)  Regarding this Court's Order, Cook Jones' counsel stated, "see below. This is total garbage. My concern [sic] if you don't appear are sanctions and him striking your answer."  (Id. at p. 2.)  Cook Jones told the Superior Court, "[m]y attorney filed an emergency motion to reschedule the depo given that I am first chair in the Glover trial.  Judge Ray denied it and is demanding that my deposition go forward tomorrow at the scheduled time."  (Id. at p. 1.)  Cook Jones also stated "[w]hile I believe that Chief Harris and ADA Annunziata are professionally capable of handling the [<u>Glover</u>] matter, as lead counsel for

the State I feel I need to be present for tomorrow's proceedings.  I am very concerned about being absent for all or part of the Defendant's case in chief."  (Id. at pp. 1–2.)  Cook Jones continued to incorrectly refer to the deposition time as 1:30 p.m. to 3:30 p.m.  (Id.)  Then, at 9:31 p.m., Cook Jones emailed the Superior Court "CORRECTION: The deposition is tomorrow at 10am." (Doc. 90-2, p. 1.)  The Superior Court Judge responded, "No. Appear at 8:30 a.m.  We are proceeding.  File what you need to file."  (Id.)

The Superior Court recessed the proceedings in Glover at 12:35 p.m. on April 11, 2023, and Cook Jones apparently advised the Superior Court that the United States Magistrate Judge had issued a citation for contempt and ordered her to immediately appear in his courtroom, which was not true.[5]  (Doc. 88-1, p. 3.)

## VI.  Cook Jones' Emergency Motion to Reschedule her Deposition and Emergency Motion for Reconsideration

Just as Cook Jones kept everyone involved in Glover in the dark about her obligations in this case, she kept everyone involved in this case in the dark about her involvement in Glover.  The first instance that Cook Jones notified anyone involved in this case of her involvement in Glover appears to be an email sent from her assistant to her counsel on April 10, 2023, at 1:05 p.m., stating, "DA Jones['] jury trial is still going on; therefore, she is not available to meet today. Unfortunately, the case is not expected to conclude until Thursday, April 13th.  If it shall conclude sooner DA Jones will notify you."  (Doc. 88-2, p. 3.)  Shortly thereafter, Cook Jones' counsel communicated with Plaintiff's counsel regarding the conflict and stated that the Glover trial "is expected to go through tomorrow" and proposed rescheduling to April 17 or 18.  (Doc. 82-3, p. 3.)  Plaintiff's

---

[5]  The Magistrate Judge did not issue a contempt order or otherwise order Cook Jones to appear in this Court.  While this issue does not affect the Court's analysis, it represents a troubling pattern of Cook Jones falsely recounting court proceedings.

counsel responded, "[i]n light of the facts that tomorrow's deposition was scheduled by the Court, based on the parties' representations that the date would work, and that the Court has ordered DA Jones to attend the deposition, we are not willing to reschedule the deposition to a different date." (Id. at p. 2.)

On April 10 at 5:07 p.m.,[6] Cook Jones filed an Emergency Motion to Reschedule Defendant Shalena Cook Jones' Deposition.  (Doc. 82.)[7]  That scant motion acknowledged that the Court had ordered Cook Jones to appear to be deposed on April 11 and stated that, "[o]n April 10, 2023, Defendant Cook-Jones informed [her counsel] that she had a conflict and would be unable to appear for her deposition.  Defendant Cook-Jones is currently serving as the primary attorney on behalf of the State of Georgia in the case of [Glover]."  (Id. at p. 2.)  The Motion stated that "Cook-Jones anticipated that she would finish the trial on April 7, 2023, before her scheduled deposition, but the trial experienced delays" and represented that, "[a]s of the filing of this motion, the defendant in Glover trial had not yet started his case in chief."  (Id.)  Cook Jones requested that the Court reschedule her deposition for April 17 or 18, 2023.  (Id. at p. 3.)  Cook Jones did not cite any legal authority in support of her Emergency Motion to Reschedule.  (See generally id.)  The Magistrate Judge denied Cook Jones' Motion by Text Order at 8:23 p.m. on April 10, 2023. (Doc. 84.)

On April 11, 2023, at 9:10 a.m., Cook Jones filed an Emergency Motion for Reconsideration of Order Denying Emergency Motion to Reschedule Defendant Shalena Cook

---

[6]  The Court takes notice of the time of pleadings reflected by the Court's electronic case management system.

[7]  Cook Jones filed an Amended Motion at 5:23 p.m.  (Doc. 83.)  The only difference in these pleadings is that the Amended Motion includes a proposed order, (doc. 83-4).  The Court cites to the original Motion, (doc. 82), in this Order.

Jones' Deposition.  (Doc. 85.)  Therein, Cook Jones represented that the Superior Court "will only agree to temporarily recess the criminal trial from 1:30 to 3:30 this afternoon."  (Id. at p. 2.)  Cook Jones stated that she "can continue her deposition after criminal proceedings conclude today, 04/11, or at any time on April 17 or April 18."  (Id.)  Additionally, she contended that, "as set forth by the GA Uniform Superior Court of Rules, and in particular, Rule 17.1, which applies to conflicts between state and federal courts, criminal (felony) actions shall prevail over civil actions, jury trials shall prevail over non-jury matters, and the action which was filed first shall take precedence."  (Id.)  Cook Jones attached to her Motion for Reconsideration a conflict letter dated April 10, 2023, sent to this Court and the Superior Court.  (Doc. 85-1.)  The conflict letter stated, among other things, that the Glover prosecution "cannot be adequately handled, and the State's interest adequately protected, by other attorneys at this late point in the trial."  (Id. at p. 1.)  Cook Jones also represented that she "informed both courts of the conflict at the earliest possible moment."  (Id.)  The Magistrate Judge denied Cook Jones' Motion for Reconsideration via Text Order at 9:34 a.m. on April 11, 2023.  (Doc. 87.)

**VII.   Cook Jones' Nonappearance at her Deposition**

At the date and time set in the Notice of Deposition, April 11, 2023, at 10:00 a.m., all counsel of record appeared by video for Cook Jones' deposition along with a videographer and exhibit technician.  (See doc. 88-5.)  Cook Jones did not appear.  (Id.)  Cook Jones' counsel stated that Cook Jones was not planning to attend because "[s]he's in court.  She hasn't been excused from the criminal trial."  (Id. at p. 4.)

**DISCUSSION**

I.   **Cook Jones' Objections to the Magistrate Judge's Orders Denying her Emergency Motions**

In her "Motion to Set Aside and Objections to Orders Denying [Cook Jones'] Emergency Motions to Reschedule Her Deposition and for Reconsideration," Cook Jones argues that the Magistrate Judge's Orders denying her Emergency Motions were clearly erroneous and contrary to law.  (Doc. 89.)  Plaintiff filed a lengthy Response to Cook Jones' pleading.  (Doc. 92.)  Cook Jones filed a Reply in which she concedes "that she [should] have taken earlier action to avoid the scheduling conflict that caused her to not appear for her deposition."  (Doc. 96, p. 2.)  However, she denies "that she intentionally took those actions to avoid her deposition and that she made false representations to this Court and the Superior Court of Chatham County."  (Id.)  However, the Magistrate Judge committed no error, much less clear error, in holding Cook Jones to a deposition date that she proposed in the face of a conflict that she created.

A.   **Standard of Review**

As an initial matter, the Court construes Cook Jones' pleading as Objections to the Magistrate Judge's Orders.  Though the title of Cook Jones' pleading includes a hodgepodge of pleading styles, she cites to Federal Rule of Civil Procedure 72(a) as the basis for this pleading.  (Doc. 89, p. 1.)  This is the correct avenue for challenging the Orders as Rule 72(a) provides that a "party may serve and file objections to [a Magistrate Judge's non-dispositive pretrial] order within 14 days after being served with a copy."  Fed. R. Civ. P. 72(a).[8]

---

[8] Cook Jones' counsel should be more careful when styling pleadings.  Additionally, regardless of the form of pleading, the Court would not disturb the Magistrate Judge's rulings because the Court finds no errors in those Orders even under a *de novo* review.

When considering a party's objections to a magistrate judge's ruling on a non-dispositive matter, the district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Id. Otherwise, the magistrate judge's ruling stands. "A ruling is clearly erroneous where either the magistrate judge abused his discretion or the district court, after reviewing the entirety of the record, 'is left with a definite and firm conviction that a mistake has been made.'" Jackson v. Deen, No. 4:12-CV-139, 2013 WL 3991793, at *2 (S.D. Ga. Aug. 2, 2013) (quoting Pigott v. Sanibel Dev., LLC, No. CIVA 07-0083, 2008 WL 2937804, at *5 (S.D. Ala. July 23, 2008)). A decision by the magistrate judge is contrary to law when it "fails to follow or misapplies the applicable law." Id. (citations omitted). The "'clearly erroneous' review is very different from the *de novo* review and adoption of a Report and Recommendation on a dispositive Order, and more closely resembles an appellate function." Combs v. Town of Davie, No. 06-60946-CIV-COHN/SNOW, 2007 WL 676102, at *2 (S.D. Fla. Feb. 28, 2007). "[B]ecause a magistrate [judge] is afforded broad discretion as to discovery matters, reversal as to a magistrate's discovery-related order is appropriate only where that discretion is abused." Ellis v. U.S., No. 3:15-cv-1078-J-34JBT, 2016 WL 1658706, at *2 n.3 (M.D. Fla. Apr. 27, 2016) (citing Johnson v. Bd. of Regents of the Univ. of Ga., 263 F.3d 1234, 1269 (11th Cir. 2001) ("[W]e accord district courts broad discretion over the management of pretrial activities, including discovery and scheduling.")).

**B.  The Magistrate Judge was not Required to Support or Explain his Denials of Cook Jones' Emergency Motions.**

Cook Jones first objects on the basis that the Magistrate Judge's Orders "failed to . . . include any support in either law or fact or provide any explanation whatsoever." (Doc. 89, p. 2.) Ironically, Cook Jones fails to adequately support or explain this argument. Moreover, the dearth

of explanation in the Magistrate Judge's Orders falls squarely on the shoulders of Cook Jones, not the Magistrate Judge.

The negligible authority Cook Jones provides for her argument that the Magistrate Judge was required to support and explain his rulings is entirely unavailing.  She cites to Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 941 F. Supp. 2d 513, 519 (D.N.J. 2005), wherein the court found that because the magistrate judge's decision regarding the location of depositions "was not accompanied by explanation and reasons, such direction was arbitrary, and perforce, clearly erroneous and contrary to law."  However, Cook Jones only cursorily cites to Exxon Mobil, and she provides no analysis as to how the holding in that case is applicable to the issues before the Court.

As Plaintiff aptly points out in her Response, Exxon Mobil is not binding precedent, and the facts and circumstances of that case are drastically different than those presented here.  (See doc. 92, pp. 13–14.)  The Magistrate Judge in Exxon Mobil ordered a defendant's employees who were based in Saudi Arabia to attend depositions in the United States.  941 F. Supp. 2d at 518–19.  On review, the District Judge noted that this was against the "general presumption that the 'deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business.'"  Id. at 519 (quoting 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2112 (2d ed. 1994)).  The district judge also noted that the decision was "against the teaching of several cases" and potentially subjected the Saudi Arabian deponents to harm.  Id.  Thus, the District Judge in Exxon Mobil only faulted the Magistrate Judge for not including an explanation when contradicting generally accepted discovery practices and unique facts presented by that case.  Id.  In this case, the Magistrate Judge's Orders rejecting Cook Jones' Emergency Motions did not contradict any presumptions or

disregard unique facts. The Magistrate Judge was upholding the "general presumption" that deponents appear for their properly noticed depositions particularly when they have been ordered by the Court to appear on a date they propose. Moreover, as explained below, unlike the scheduling order in Exxon Mobil, the timing of Cook Jones' motions required the Magistrate Judge to issue orders in a compressed timeframe.[9]

To be sure, there are situations, not presented here, where the Court must provide a sufficient explanation for its discovery rulings to afford a meaningful review. See, e.g., Serra Chevrolet, Inc. v. Gen. Motors Corp., 446 F.3d 1137, 1151 (11th Cir. 2006) ("In cases invoking the sanction power of Rule 37, the district court must clearly state its reasons so that meaningful review may be had on appeal.'") (internal alterations and quotations omitted)); Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1370 (11th Cir. 1997) ("While [a court] has discretion to grant or deny [a motion to compel], it should not grant the motion in the face of well-developed, bona fide objections without a meaningful explanation of its decision."). In this case, given the protracted litigation over discovery and the parties' voluminous pleadings, the Court has a sufficient record to meaningfully review the Magistrate Judge's Orders. Thus, there was no need for the Magistrate Judge to issue a detailed ruling. Further, given the complete record, even if the depth of the Magistrate Judge's Orders had been deficient, Cook Jones suffered no prejudice.

Additionally, Cook Jones cannot complain about the cursory nature of the Magistrate Judge's Orders when her own delay required expedited rulings. As evidenced by the record, including the instant Order, this Court strives to issue thorough orders that carefully consider the

---

[9] While the Court finds the District of New Jersey's decision in Exxon Mobil irrelevant to the facts presented here, more applicable and persuasive is that court's holding in a separate case that "[p]articular deference is accorded to magistrate judges on discovery issues." Costa v. Cnty. of Burlington, 584 F. Supp. 2d 681, 684 n.2 (D.N.J. 2008).

facts and law.  Nonetheless, the Court can only operate in the time afforded by the parties.  Though Cook Jones should have alerted the Court to the conflict between her duties in <u>Glover</u> and her deposition at least as early as March 29, 2023, she did not do so until fifteen days later.  Even Cook Jones concedes, as she must, "that she [should] have taken earlier action to avoid the scheduling conflict that caused her to not appear for her deposition."  (Doc. 96, p. 2.)  Moreover, she filed her Motion to Reschedule after business hours, at 5:07 p.m. on April 10, when her deposition was set to begin the following morning at 10:00 am.  The Magistrate Judge diligently ruled on the Motion via Text Order at 8:23 p.m. on April 10.  (Doc. 84.)  Given Cook Jones' timing, it is galling for her to argue that the Magistrate Judge should have included a thorough analysis in that Order.  Cook Jones' argument is even more wrongheaded as to the Order denying her Emergency Motion for Reconsideration, (doc. 85).  She filed that Motion at 9:10 a.m. on April 11, 2023, a mere fifty minutes before her deposition was set to commence.  Minutes later, at 9:34 a.m., the Magistrate Judge issued the Text Order, (doc. 87), denying the Motion.  Additionally, Cook Jones' Proposed Order that she filed with her Amended Emergency Motion to Reschedule her Deposition reveals her hypocrisy.  (<u>See</u> doc. 83-4.)  That proposal stated in its entirety, "Before the Court is an Emergency Motion to Reschedule Defendant Shalena Cook-Jones's Deposition. For good cause shown, Defendant Cook-Jones's motion is _____.  Defendant Cook-Jones is ordered to appear on _____ for her deposition."  (<u>Id.</u>)  Cook Jones cannot credibly complain that the Magistrate Judge failed to explain or support his ruling when she proposed an order that was bereft of any explanation or support.

Put bluntly, given that Cook Jones' own misfeasance required the Court to rule on her Emergency Motions in an incredibly compressed timeframe, it is insulting for her to now argue that the Magistrate Judge should have fully explained and supported his rulings.  Indeed, the

Magistrate Judge should be commended, not faulted, for his prompt attention to Cook Jones' last-minute efforts to dodge her court-ordered obligations.  For these reasons, the Court **OVERRULES** Cook Jones' Objection that the Magistrate Judge "failed to [] include any support in either law or fact or provide any explanation whatsoever" in his Orders denying Cook Jones' Emergency Motions.  (Doc. 89, p. 2.)

    **C. The Magistrate Judge was not Required to Apply Georgia's Uniform Superior Court Rules**.

Cook Jones objects that the Magistrate Judge "failed to [] properly take into account that Defendant Cook Jones's pending and ongoing criminal trial took precedence over her deposition in this civil matter."  (Id.)  In support, Cook Jones maintains, "[g]iven that Judge Ray's docket entry Orders denying both Defendant Cook Jones's Motions to Reschedule her Deposition and for Reconsideration failed to consider or apply [Rule 17.1 of Georgia's Uniform Superior Court Rules ("Rule 17.1")], both Orders were contrary to law and clearly erroneous."  (Id. at p. 7.)  Cook Jones reliance upon Superior Court Rule 17.1 contains multiple flaws.

First, Cook Jones cannot fault the Magistrate Judge for not applying Rule 17.1 when she did not properly raise Rule 17.1.  Cook Jones' Emergency Motion to Reschedule her Deposition did not even refer to the Rule 17.1.  (See doc. 82.)  While she did cite Rule 17.1 in her Emergency Motion for Reconsideration, as explained above, she filed that Motion minutes before her deposition was set to commence.  Moreover, "[a] motion for reconsideration should not be used to . . . offer new legal theories or evidence that could have been presented in the previously-filed motion."  S.E.C. v. Mannion, No. 1:10-cv-3374-WSD, 2013 WL 5999657, at *2 (N.D. Ga. Nov. 12, 2013); see also Corley v. Long-Lewis, Inc., 965 F.3d 1222, 1235 (11th Cir. 2020) ("We have long held that district courts act well within their discretion when they refuse to consider arguments that a party made for the first time in a motion for reconsideration.").

Because Cook Jones failed to properly invoke Rule 17.1 before the Magistrate Judge, the Court will not give her a "second bite at the apple" through her Objections. While it appears the Eleventh Circuit has not decided the issue, other courts have held that "it is inappropriate for a District Court to consider materials not before the Magistrate Judge in reaching the conclusion that the Magistrate Judge's decision was clearly erroneous." Combs, 2007 WL 676102, at *2 (citing Haines v. Liggett Grp., Inc., 975 F.2d 81 (3d Cir.1992)); see also id. (explaining that persuasive authority and policy considerations "support the conclusion that a District Court should not consider arguments in this context that were not presented to the Magistrate Judge"); McPartland v. Gov't Emps. Ins. Co., No. 609CV00268ORL35GJK, 2010 WL 11507701, at *2 (M.D. Fla. Mar. 29, 2010) (collecting cases holding same). Moreover, "even if a District Court has the discretion to consider arguments not presented to the Magistrate Judge when considering Objections [to a non-dispositive order], it likely is not obligated to do so." Combs, 2007 WL 676102, at *2. The Court exercises that discretion and declines to consider Cook Jones' Objection based on Rule 17.1 because she failed to properly raise that argument before the Magistrate Judge.

Nonetheless, even if Cook Jones had properly raised Rule 17.1, she has not cited, and the Court is not aware of, any authority that would have required a Magistrate Judge of the United States District Court to adhere to the Rules of the Georgia Superior Courts. The Georgia Uniform Superior Court Rules are promulgated by the Council of Superior Court Judges, pursuant to the inherent powers of the Superior Courts and Article VI, Section IX, Paragraph I of the Georgia Constitution of 1983. Ga. Unif. Super. Ct. R. 1. Unsurprisingly, the text of the Uniform Superior Court Rules reveals that they apply to actions pending in the Superior Court. See, e.g., Ga. Unif. Super. Ct. R. 2.2 ("The word 'judge' as used in these rules refers to any of the several active judges of the superior courts of Georgia, and to any senior or other judge authorized to serve as a judge

of a superior court of this state.").  Cook Jones provides no explanation whatsoever as to why rules drafted for the superior courts of Georgia would have any applicability in this Federal Court.[10]

Additionally, even if Cook Jones had properly raised the Superior Court Rules before the Magistrate Judge, and even if those Rules somehow applied in this Court, Cook Jones could not seek shelter under Rule 17.1 because she failed to comply with the basic requirements of that Rule. An examination of Rule 17.1 only highlights Cook Jones' disregard of her obligations.  Under the Rule,

> [w]hen an attorney is scheduled for a day certain by trial calendar, special setting, or court order (including a subpoena compelling his or her appearance to testify) to appear in two or more courts (trial or appellate; state or federal), the attorney shall give **prompt** written notice as specified in (A) above of the conflict to opposing counsel, to the clerk of each court and to the judge before whom each action is set for hearing . . .  Attorneys confronted by such conflicts are expected to give written notice **such that it will be received at least seven days prior to the date of conflict**.

Ga. Sup. Ct. R 17.1(B) (emphases supplied).

In her Motion to Set Aside, Cook Jones acknowledges that Rule 17.1 generally requires an attorney to provide notice seven days prior to the date of the conflict but argues she "reasonably did not anticipate that the trial beginning on April 4, 2023, would not have concluded by April 11, 2023."  (Doc. 89, pp. 7–8.)  There was nothing reasonable about Cook Jones' approach to this situation.  On March 28, 2023, this Court ordered Cook Jones to appear for her deposition on

---

[10]  In the event of a conflict between this Court's Order and the Uniform Superior Court Rules, it appears this Court's Order would control under the Supremacy Clause of the United States Constitution.  U.S. Const. art. VI, cl.2; see Baylson v. Disciplinary Bd. of Supreme Ct. of Penn., 764 F. Supp. 328, 348 (E.D. Pa. 1991) ("[District Courts'] Local [R]ules, no less than Federal Rules or Acts of Congress, are part of the supreme law of the land."); Cnty. of Suffolk v. Long Island Lighting Co., 710 F. Supp. 1407, 1414 (E.D.N.Y. 1989) ("State rules regulating attorney conduct are subject to operation of the Supremacy Clause.")  However, the Court need not resolve that issue because Cook Jones failed to properly invoke the Superior Court Rules before the Magistrate Judge, failed to explain why the Rules would apply in this Court, and failed to comply with the very Rule she cites.

April 11, 2023 (the date she provided).  The next day, March 29, 2023, at the pretrial conference in <u>Glover</u>, that case was set for trial on April 4, 2023.  At that conference, Cook Jones and defense projected that the trial could involve ten witnesses or more and subpoenas were effective through April 14, 2023, in anticipation that delays could cause the trial to last up to that time.[11]  (Doc. 88-1, p. 2.)  Thus, Cook Jones was aware of the potential conflict between <u>Glover</u> and this case thirteen days before her deposition, more than enough time to comply with Rule 17.1's expectation of at least seven days' notice of a conflict.  However, Cook Jones did not provide the notice required by Rule 17.1 until the morning of her deposition, April 11, 2023.[12]  (<u>See</u> doc. 85-1.)  Moreover, as each day of the <u>Glover</u> trial continued without resolution and the approaching conflict became more and more probable to the point of inevitability, Cook Jones continually ignored her obligations to provide notice.  She waited until there was nothing either court could do to resolve the conflict, the very situation Rule 17.1 seeks to prevent.  In sum, Cook Jones ignored Rule 17.1's requirement of "prompt" certification.  <u>See</u> <u>In re Holt</u>, 586 S.E.2d 414, 415 (Ga. Ct. App. 2003) ("Even if Holt did not have seven days notice of the conflict, we find that written notice of conflict given at 4:07 p.m. on the Friday before the Monday calendar call and at 5:00 p.m. on Monday afternoon for Tuesday morning is not 'prompt' as required for the Uniform Rules and is insufficient.").  Even Cook Jones acknowledges that she should have notified the courts of her conflict sooner.  (Doc. 96, p. 2.)  It is incongruous for her to, on one hand, concede that she failed

---

[11]  Cook Jones states that "as a matter of course" she includes date ranges in subpoenas "spanning from the time the trial calendar begins until it concludes."  (Doc. 90-2, p. 6.)  This does not help Cook Jones.  Rather, it only contradicts her argument that she could not have foreseen the conflict between her deposition and <u>Glover</u>.  Cook Jones admits "as a matter of course" that a trial, particularly a felony rape trial, could last longer than anticipated.  Indeed, at the April 6, 2023, pretrial conference in <u>Glover</u>, Cook Jones requested a continuance of the trial to April 10, 2023.

[12]  While Cook Jones' conflict letter is dated April 10, this Court did not receive it until minutes before she filed her Motion for Reconsideration.  The letter was emailed from Cook Jones' Assistant to the Clerk of Court at 9:07 a.m. on April 11, and the Motion for Reconsideration was filed at 9:10 a.m.

to comply with one of Rule 17.1's basic requirements but, on the other hand, contend that the Magistrate Judge clearly erred by not giving her the protection of that rule.  In her numerous filings, Cook Jones fails to acknowledge much less explain this fatal incongruity.

Additionally, as a prerequisite for a conflict to exist under Rule 17.1, the attorney must certify that the conflicting "matters cannot be adequately handled and the client's interest adequately protected by other counsel for the party in the action . . ."  Ga. Sup. Ct. R 17(A)(2). While Cook Jones' conflict letter includes such a certification, the record undercuts its veracity. Cook Jones emailed the Superior Court on April 10, 2023 (the same day as her conflict letter), that she "believe[s] that Chief Harris and ADA Annunziata are professionally capable of handling the [Glover] matter."  (Doc. 88-3, pp. 1–2.)  Moreover, Cook Jones assigned herself the role of lead trial counsel in Glover and remained in that role after she committed to this Court that she would appear to be deposed on April 11.  If she had due respect for her obligations in this Court, she could have assigned the lead counsel role to Assistant Chief District Attorney Harris or Assistant District Attorney Annunziata, who are "very seasoned prosecutors" and were "actively involved throughout the case and present throughout the trial."  (Doc. 88-1, p. 2.)  Put another way, at the time her deposition was scheduled by this Court and the Glover trial was scheduled by the Superior Court, the Glover trial could have been "adequately handled and the [State's] interest adequately protected by other counsel for the [State] in [Glover.]"  Ga. Sup. Ct. R 17(A)(2).

For all these reasons, the Court **OVERRULES** Cook Jones' Objection that the Magistrate Judge failed to consider or apply Uniform Superior Court Rule 17.1.  (Doc. 89, p. 7.)

### D.  The Magistrate Judge Correctly Denied Cook Jones' Fourth Request to Extend the Deadline for her Deposition.

Cook Jones' final Objection, that the Magistrate Judge "failed to . . . recognize that this unavoidable conflict provided sufficient good cause to reschedule Defendant Cook Jones's

deposition and amend the scheduling order," (doc. 89, p. 2), ignores the meanings of "avoidable" and "good cause." Moreover, Cook Jones does not acknowledge the deference afforded to the Court on scheduling matters and the efforts the Court expended to manage discovery in this case.

As explained throughout this Order, Cook Jones' conflict between her deposition and the trial in <u>Glover</u> arose because of her lack of diligence, and, therefore, she failed to present good cause to amend the scheduling order. Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." "[T]he party seeking to extend a deadline bears the burden of demonstrating good cause for modifying the . . . scheduling order; otherwise, a party's lack of diligence and failure to notify the court of delays 'would render scheduling orders meaningless.'" <u>McClaney v. Macon Cnty. Bd. of Educ.</u>, No. 3:10-cv-219-MHT, 2011 WL 9015, at *2 (M.D. Ala. Jan. 3, 2011) (citing <u>Sosa v. Airprint Sys., Inc.</u>, 133 F.3d 1417, 1419 (11th Cir. 1998)). The good cause standard "precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" <u>Sosa</u>, 133 F.3d at 1418 (quoting Fed. R. Civ. P. 16 advisory committee's note). "If [a] party was not diligent, the [good cause] inquiry should end." <u>Id.</u> (quoting <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 609 (9th Cir. 1992)). Cook Jones' lack of diligence, including her pattern of disregarding her obligations in this case and her failure to timely notify the Court of her self-created conflict, thwart her contention that the Magistrate Judge should have extended the deadline for her deposition.

The Magistrate Judge was particularly well within his discretion to deny Cook Jones' last-minute request given the measures he had already taken to accommodate her. Even where a party demonstrates good cause, the Court is not required to amend its scheduling orders. <u>See</u> <u>Pinkney v. Winn-Dixie Stores, Inc.</u>, No. 2:14-cv-75, 2015 WL 1000859, at *4 (S.D. Ga. Mar. 6, 2015).

Once a scheduling order is set, a district court "may" amend the order, but "it is under no obligation to do so, and holding parties to the clear terms of a scheduling order generally does not amount to an abuse of discretion." Rowell v. Metro. Life Ins. Co., 579 F. App'x 805, 807 (11th Cir. 2014); see also Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1307 (11th Cir. 2011) (Eleventh Circuit has "often held that a district court's decision to hold litigants to the clear terms of its scheduling orders is not an abuse of discretion"). The Court's original Scheduling Order, entered on July 6, 2022, provided over five months for the parties to complete non-expert depositions. (Doc. 24, p. 4.) The Magistrate Judge emphasized that the periods of discovery in the Scheduling Order were far more generous than those contemplated by the Local Rules and, therefore, the Court expected no extensions of those periods. (Id. at p. 3.) Nonetheless, when the parties sought two more extensions, due in large part to Cook Jones' incomplete discovery responses, the Magistrate Judge granted those extensions. (Docs. 55, 63.) In the last of those extensions, the Court provided Cook Jones forty-nine days to appear for her deposition. (Doc. 63, p. 2.) Cook Jones mocked the Court's generosity by refusing to provide a single date on which she could be deposed despite Plaintiff's counsel's repeated requests. (Docs. 75-4, 75-5, 75-7.) Even so, when Cook Jones objected to the date on which Plaintiff noticed Cook Jones' deposition, the Magistrate Judge accommodated her for the third time and ordered her to be deposed on a date of her own choosing after the non-expert deposition deadline. Considering these multiple accommodations, when Cook Jones yet again came to the Court literally hours and minutes before her April 11 deposition, it was clearly within the Magistrate Judge's discretion to determine "enough is enough" and uphold the terms of his Order. See Edelen v. Campbell Soup Co., No. 1:08-cv-00299-JOF-LTW, 2009 WL 4798117, at *2 (N.D. Ga. Dec. 8, 2009) (where "the Magistrate Judge has had the opportunity to best observe the parties' actions in the litigation thus

far and . . . has maintained firm and vigilant control over the docket of the case, the court is loathe to second guess matters of discretion").  Indeed, to grant Cook Jones a fourth extension under these circumstances would render this Court's Scheduling Orders "meaningless."  McClaney, 2011 WL 9015, at *2.

The Court has been more than accommodating to Cook Jones throughout discovery.  The circumstances leading to her Motion to Reschedule her deposition arose because of her lack of diligence, and she failed to show good cause for once again extending the deposition deadline.  Consequently, the Court **OVERRULES** Cook Jones' Objection that the Magistrate Judge "failed to . . . recognize that this unavoidable conflict provided sufficient good cause to reschedule Defendant Cook Jones's deposition and amend the scheduling order."  (Doc. 89, p. 2.)

## II.    Plaintiff's Motion for Sanctions

In her Motion for Sanctions Striking Defendant Shalena Cook Jones' Answer and Entering Default Judgment, Plaintiff contends that Cook Jones failed to appear for her deposition despite her ability to do so and made false representations to the Court.  (Doc. 88.)  As a remedy, Plaintiff requests that the Court "strike [Cook Jones'] Answers to Plaintiff's Complaint and Amended Complaint, enter a default judgment against [Cook Jones] on all claims, and award Plaintiff's counsel fees and costs associated with the deposition and this Motion."  (Id. at p. 1 (record citations omitted).)  Cook Jones filed a Response opposing Plaintiff's Motion contending that striking her Answers and entering default judgment were not warranted because she did not act in bad faith. (Doc. 90.)  However, "Cook Jones accepts that Plaintiff has incurred costs and expenses related to filing a motion for sanctions and offers to reimburse Plaintiff the reasonable costs for the same." (Id. at p. 2.)  Plaintiff filed a Reply in support of her Motion for Sanctions standing by her requests. (Doc. 94.)  Because Plaintiff cites to both Federal Rule of Civil Procedure 37 ("Rule 37") and this

Court's inherent power to impose sanctions for litigation misconduct, the Court first reviews those sources of authority before turning to the merits of Plaintiff's request.

### A. Federal Rule of Civil Procedure 37

Plaintiff's Motion implicates two provisions of Rule 37: Rule 37(b)—pertaining to a failure to obey a court order to provide or permit discovery; and Rule 37(d)—covering a party's failure to appear at a properly noticed deposition.

Rule 37(b) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). The Rule lists available remedies which include "striking pleadings in whole or in part," "rendering a default judgment against the disobedient party," and "treating as contempt of court the failure to obey any order . . . ." Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi), & (viii). "This rule gives district judges broad discretion to fashion appropriate sanctions for violation of discovery orders." Consumer Fin. Prot. Bureau v. Brown, 69 F.4th 1321, 1330 (11th Cir. 2023) (quoting Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1542 (11th Cir. 1993)). Additionally, the Court must order "the disobedient party, the attorney advising the party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). "Sanctions . . . for violation of an order are only appropriate if 'the order stated in specific and clear terms what acts were required or prohibited.'" In re Se. Banking Corp., 204 F.3d 1322, 1332 (11th Cir. 2000) (quoting E.E.O.C. v. Gen. Dynamics Corp., 999 F.2d 113, 116 (5th Cir. 1993)). Disregard of an oral order may provide the basis for a Rule 37(b)(2)(A) sanction. Malautea, 987 F.2d at 1542 n.7 (citing Avionic Co. v. Gen. Dynamics Corp., 957 F.2d 555, 558 (8th Cir. 1992)). "These sanctions 'are intended to 1) compensate the court and parties for the

added expenses caused by discovery abuses, 2) compel discovery, 3) deter others from engaging in similar conduct, and 4) penalize the offending party or attorney.'"  Thornton v. Hosp. Mgmt. Assocs., Inc., 787 F. App'x 634, 638 (11th Cir. 2019) (quoting Wouters v. Martin Cnty., 9 F.3d 924, 933 (11th Cir. 1993)).  "The sanctions of Rule 37 come into play upon a party's violation of the rule, notwithstanding any lack of willfulness or bad faith.  However, considerations of the offending party's reasons for the violation, the presence of willfulness or bad faith, the prejudice that may befall the opposing party, and the lack of available lesser sanctions are important in fashioning the appropriate sanction."  Whitesell Corp. v. Electrolux Home Prods., Inc., No. CV 103-050, 2019 WL 637776, at *3 (S.D. Ga. Feb. 14, 2019) (citing In re Seroquel Prods. Liab. Litig., 244 F.R.D. 650, 656 (M.D. Fla. 2007)).  Before a district court imposes the sanction of default judgment, the court must find a willful or bad faith failure to comply with its discovery orders.  Malautea, 987 F.2d at 1542.  "The decision to dismiss a claim or enter default judgment 'ought to be a last resort—ordered only if noncompliance with discovery orders is due to willful or bad faith disregard for those orders.'"  United States v. Certain Real Prop. Located at Route 1, Bryant, Ala., 126 F.3d 1314, 1317 (11th Cir. 1997) (quoting Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1556 (11th Cir. 1986)).  Nonetheless, a court does not need to first impose lesser sanctions if those sanctions would be ineffective.  Malautea, 987 F.2d at 1544.

Rule 37(d) authorizes the Court to sanction a party who "fails, after being served with proper notice, to appear for [their] deposition."  Fed. R. Civ. P. 37(d)(1)(A)(i).  The sanctions available under Rule 37(d) include any of those listed in Rule 37(b)(2)(A)(i)–(vi).  Fed. R. Civ. P. 37(d)(3).  Included within those measures are striking pleadings in whole or part and entering default judgment.  Fed. R. Civ. P. 37(b)(2)(A)(iii) & (vi).  Also, as with Rule 37(b), the court "must require the party failing to act, the attorney advising that party, or both to pay the reasonable

expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(d)(3). "The Eleventh Circuit Court of Appeals has indicated that the same findings required to impose a default judgment as a sanction under Rule 37(b)—namely, willful or bad faith noncompliance; prejudice to the opposing party; and no adequate, available lesser sanction—must also be present before a default judgment may be imposed as a sanction under Rule 37(d)."  Allstate Ins. Co. v. Palterovich, No. 04-21402-CIV, 2008 WL 2741119, at *1 (S.D. Fla. July 12, 2008) (citing Certain Real Prop. Located at Route 1, Bryant, Ala., 126 F.3d at 1317–18).[13]

### B.  The Court's Inherent Power to Impose Sanctions

"A court may impose sanctions for litigation misconduct under its inherent power . . . [which] derives from the court's need 'to manage its own affairs so as to achieve the orderly and expeditious disposition of cases."  Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1307 (11th Cir. 2009) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43–44 (1991)). "The key to unlocking a court's inherent power is a finding of bad faith."  Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998) (citing In re Mroz, 65 F.3d 1567, 1575 (11th Cir. 1995)).  "A party [] demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order."  Id. (quoting Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir. 1997)).  Once a court makes a finding of bad faith that enables it to exercise its inherent power to sanction an attorney or party, it then must turn to the question of what sanction to impose.  See Eagle Hosp. Physicians, 561 F.3d at 1306.  Striking a defendant's answer is a "heavy punishment"

---

[13]  In Allstate Ins., the court noted an open question as to the extent of sanctions available under Rule 37(d) in the absence of a court order.  Allstate Ins. Co., No. 04-21402-CIV, 2008 WL 2741119, at *1.  However, like the court in that case, the Court need not grapple with that issue in this case because Cook Jones flouted the Court's Orders that she appear to be deposed.

only to be imposed "when less drastic sanctions would not ensure compliance with the court's orders." Id. (quoting In re Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1305–06 (11th Cir. 2006)).

### C. Cook Jones Willfully Disregarded Her Discovery Obligations and this Court's Orders and Acted in Bad Faith Throughout this Litigation.

#### 1. Cook Jones' Conduct Leading up to the Court's March 28, 2023, Order Showed Willful Disregard for her Obligations and this Court's Orders.

Cook Jones began her pattern of disregard and bad faith well before her failure to attend her April 11, 2023, deposition.  The Court granted a lengthy original discovery period largely to accommodate the busy schedules of Cook Jones, the Plaintiff, and other material witnesses who are attorneys.  (See doc. 18, p. 7; doc. 24, pp. 3–4.)  The Court emphasized its expectation that the parties would not need extensions and explained that any party seeking to extend the Scheduling Order's deadlines must show good cause.  (Doc. 24, p. 3.)  This would signal to any litigant, and particularly one who is an attorney, that she must pay timely attention to her discovery obligations.  Nonetheless, despite being served with Plaintiff's discovery requests on October 21, 2022, Cook Jones did not respond until December 7, 2022.  (See doc. 62, pp. 1–3.)  Even then, she failed to produce basic information responsive to Plaintiff's Requests for Production.  (See doc. 75, p. 4; doc. 75-3.)  Therefore, the parties cancelled depositions which had been scheduled for January 17–26, 2023, and sought an extension of discovery.  (See doc. 62, p. 4.)  Cook Jones did not supplement her discovery responses until January 29, 2023, and even those responses were deficient, leading to the parties' Second Motion to Extend the Scheduling Order.  (Id. at pp. 3–4.)  The Court's third and final Scheduling Order provided for a non-expert deposition deadline of March 31, 2023, the date requested by the parties, including Cook Jones.  (Doc. 63, p. 2.)  From February 15 to March 31, 2023, Plaintiff requested a date to take Cook Jones' deposition five times.  (Docs. 75-4, 75-5, 75-7.)  Cook Jones' counsel relayed these requests to her.  (See, e.g.,

doc. 75-4, p. 1 (Cook Jones' counsel stating, "Waiting on confirmation from Shalena and I will let you know."); doc. 75-4, p. 2 (Cook Jones' counsel stating, "Still waiting on dates from Jones.").) Yet, even though she had joined in the request for an extension to March 31, Cook Jones refused to provide a single day before that date for her deposition. Cook Jones' indolence forced Plaintiff to unilaterally notice her deposition for March 29, 2023. (Doc. 75-6.)

Rather than comply with that Notice or provide an alternative date within the twice-extended discovery period, Cook Jones continued her pattern of obstruction. Two-hundred-and-seventy-five days after the Rule 26(f) Report, Defendants filed yet another Motion to Extend. (Doc. 69.) Incredibly, that Motion stated that "[t]he Defendants are **contemplating** taking the depositions of **several** other non-expert witnesses." (Id. at p. 2 (emphases supplied).) Defendants contended that "[t]he delay in completion of non-expert witness depositions is attributed to the fact that most non-expert witnesses are practicing attorneys who do not have availability to appear for depositions." (Id. at p. 3.) Belying that contention, the Motion listed other practicing attorneys, including Plaintiff, whose depositions had been scheduled within the deadline. (Id. at p. 2.) Only Cook Jones' deposition was listed as scheduled beyond that deadline, on April 11, 2023.[14] (Id.)

Following this history of Cook Jones' obstruction, the Court held its discovery conference with the parties on March 28, 2023. The Court ordered Cook Jones to appear for her deposition on April 11, 2023, **the date that she selected**. Any litigant, and particularly one who is an attorney and member of this Court's Bar, should have taken her commitment and the Court's Order

---

[14] The Motion stated that the parties had scheduled Cook Jones' deposition for April 11, 2023. (Doc. 69, p. 2.) However, this was not accurate, as Plaintiff opposed the Motion for Extension and stood by the Notice for March 29, 2023. (Doc. 75.) Nonetheless, it is noteworthy that, as early as March 17, 2023, Cook Jones committed to this Court that she would appear to be deposed on April 11, 2023.

seriously.  Instead, as laid out below, Cook Jones reneged on her commitment to appear on April 11, and she continued her pattern of willful disregard.

> **2. Cook Jones Willfully Disregarded this Court's Orders and her Discovery Obligations and Acted in Bad Faith by Designating Herself as Lead Trial Counsel in <u>Glover</u>, Remaining in that Role, and Skipping her Deposition.**

In her pleadings, Cook Jones repeatedly seeks to defend her decision to remain at the <u>Glover</u> trial on April 11, rather than attend her deposition, because she was the lead prosecutor during the trial.  However, she fails to acknowledge that she only occupied that role because she assigned herself to it with no regard for her obligations to this Court.  Moreover, she remained in that role and refused to attend her April 11 deposition despite numerous opportunities to have another attorney serve as lead trial counsel.

The timing of Cook Jones' lead counsel designation in <u>Glover</u> demonstrates that she intentionally dismissed her obligations in this case.  According to Cook Jones, she did not know that she would be the lead trial attorney in <u>Glover</u> "[a]t the time [her] deposition was scheduled." (Doc. 82-2, p. 2.)  She only "stepped in" as the lead trial attorney in <u>Glover</u> because a sexual assault prosecutor, who was scheduled to begin work in early April, would not start until April 17.  (<u>Id.</u>) Thus, by her own word, Cook Jones had not assumed the role as the lead trial attorney in <u>Glover</u> at the time the Court scheduled her deposition.  Cook Jones fails to explain why she later designated herself as the lead trial attorney in <u>Glover</u> even though she knew the scheduling of her deposition had been "a point of great contention," she knew that the Court had ordered her to be deposed on April 11, and she knew the trial in <u>Glover</u> could last until April 14.

Cook Jones' decision to assume and remain in the lead counsel role is even more egregious considering the other established facts.  She originally planned for a sexual assault prosecutor, who was scheduled to begin work in early April, to take the lead trial role.  (<u>Id.</u>)  Thus, Cook Jones

admits that she had the ability to designate someone else, i.e., the new sexual assault prosecutor, to that role.  (Id.)  Further, two "very seasoned prosecutors" Assistant Chief District Attorney Harris and Assistant District Attorney Annunziata were "actively involved throughout the case and present throughout the trial."  (Doc. 88-1, p. 2; see also doc. 90-2, p. 2.)  By Cook Jones' own admission, "Chief Harris and ADA Annunziata [were] professionally capable of handling the [Glover] matter," and Cook Jones only needed to be present at the trial on April 11 because she had assumed the role of lead prosecutor and, therefore, "fe[lt] the need to be present for [April 11's] proceedings."  (Doc. 88-3, pp. 1–2.)  Cook Jones never credibly explains why she did not have one of these attorneys serve as lead trial counsel.[15]

It is not at all clear why Cook Jones assigned herself the role of lead trial attorney in Glover and remained in that role.  She does not argue that she did so because of her position or her history with the case, nor could she.  After all, taking her at her word, she originally intended for a newly hired prosecutor to serve as lead counsel.  What is clear is that, when designating herself lead trial counsel in Glover, Cook Jones entirely disregarded her discovery obligations, her commitment to this Court that she would appear at her deposition on April 11, and this Court's Orders that she do so.

---

[15]  Cook Jones states in her Declaration that she "enlisted two other attorneys to try the case with [her], but neither attorney had worked on the case since its inception which required [her] to handle most of the trial, including jury selection, preliminary motions, developing the state's theory of the case, witness preparation and examination, and presenting opening and closing arguments."  (Doc. 90-2, p. 2.)  Even this vague contention does not withstand scrutiny.  For one, Cook Jones never states that she had been involved in Glover since the case's inception.  Indeed, she previously stated that she "step[ped] in" to the lead trial attorney role after her deposition in this case was scheduled.  (Doc. 82-2, p. 2.)  Additionally, nowhere in her Declaration or her numerous briefs does Cook Jones address, much less challenge, Turner's assertion that Harris and Annunziata were "actively involved throughout the case."  (Doc. 88-1, p. 2.)  Most tellingly, Cook Jones contends that she planned for a newly hired prosecutor to serve as the lead trial attorney in Glover.  (Id.)  This attorney had obviously not "worked on the case since its inception."

Moreover, even after this Court rejected Cook Jones' last-minute efforts to reschedule her deposition, she refused to heed the Court's Orders and did not appear to be deposed.  She decided not to appear even though her attorney warned her that she could be sanctioned.  (Doc. 88-3, p. 2.)  Cook Jones could have at least asked the Superior Court if Harris or Annunziata could represent the State while she sat for her deposition.  After all, Cook Jones concedes that she did not conduct the cross examination of the defendant.  (Doc. 90, p. 3.)  Instead, Cook Jones willfully violated this Court's Orders from March 28, April 5, April 10, and April 11, directing her to appear for her deposition on the date she selected.

For all these reasons, the Court finds that Cook Jones willfully disregarded the Court's Orders and her obligations when she assigned herself the lead trial role in <u>Glover</u>, remained in that role, and failed to appear for her deposition despite numerous directives to do so.

> **3.  Cook Jones Willfully Disregarded this Court's Orders and her Discovery Obligations when she Failed to Timely and Truthfully Apprise this Court and the Superior Court of her Self-Created Conflict**.

As explained above, Cook Jones was aware of the conflict between <u>Glover</u> and her deposition at least as early as the first pretrial conference in <u>Glover</u> on March 29, 2023.  Thus, at least thirteen days before her April 11 deposition, she should have notified this Court and the Superior Court of her conflict.  Instead, Cook Jones never even mentioned the issue to either court until the literal eve of her deposition.  Cook Jones now concedes that she should have apprised the courts of her conflict sooner.  However, she minimizes her failure as a mere negligent oversight.  Given this minimization, the Court lists some of the opportunities to raise the conflict that Cook Jones ignored:

- During the <u>Glover</u> pretrial conference on March 29, 2023, when the Superior Court set trial for April 4, Cook Jones should have at least mentioned her commitment to appear for her deposition on April 11, but she did not.

- During the four days between the pretrial conference and the start of trial in <u>Glover</u>, Cook Jones should have notified this Court and the Superior Court of her self-created conflict, but she did not.

- On April 4 and April 5, as the parties selected a jury in <u>Glover</u>, Cook Jones should have notified her counsel in this case that she was involved in a trial (particularly when voir dire supposedly took longer than she expected), but she did not.

- On April 6, during the second pretrial conference in <u>Glover</u> when Cook Jones asked for the <u>Glover</u> trial to be continued to April 10, 2023, she should have mentioned that this Court ordered her to appear for a deposition on April 11, but she did not.

- On Friday, April 7, 2023, as Cook Jones presented the beginning of the State's case in <u>Glover</u>, Cook Jones should have told the Superior Court that she was scheduled to appear for a deposition the following Tuesday, but she did not.

- On Saturday, April 8 and Sunday, April 9, when the Superior Court adjourned for the weekend with Cook Jones still having not closed the State's case, she should have notified this Court that she was involved in a jury trial that was not even at the halfway point, and she should have notified the Superior Court that she was scheduled to appear for a deposition early the next week, but she did not.

- On the morning of April 10, when the Superior Court opened with Cook Jones still not having closed the State's case and multiple portions of trial still to come, Cook Jones

should have notified the Superior Court that she was ordered to be deposed the following day, but she did not.

Cook Jones' failure to even mention her self-created conflict to this Court or the Superior Court, despite so many opportunities to do so, leaves the Court with the inescapable conclusion that she gave no regard whatsoever to her discovery responsibilities and this Court's Orders.

Even when Cook Jones raised the conflict at the last-minute, she continued to demonstrate willful disregard. The first communication in the record regarding the conflict is an email from Cook Jones' assistant to her counsel on April 10, 2023, at 1:05 p.m. (Doc. 88-2, p. 3.)[16] The entirety of that email states, "DA Jones [sic] jury trial is still going on; therefore, she is not available to meet today. Unfortunately, the case is not expected to conclude until Thursday, April 13th. If it shall conclude sooner DA Jones will notify you." (Id.) The cursory nature of this email (sent at Cook Jones' direction less than twenty-five minutes before Cook Jones' appointment with her lawyer regarding deposition preparation) speaks volumes as to Cook Jones' dismissiveness toward this Court. The email did not even mention the deposition which was set to take place less than twenty-one hours later. After receiving this email, Cook Jones' counsel notified all other attorneys of the conflict and filed the Emergency Motion to Reschedule Cook Jones' Deposition. (Doc. 82-3.) However, because of Cook Jones' failure to timely notify her counsel, this Court remained unaware of the conflict until the filing of the Motion to Reschedule at 5:07 p.m. on the evening before her deposition.

Additionally, Cook Jones' Emergency Motion to Reschedule and her Emergency Motion for Reconsideration only compounded her willful disregard by omitting some critical facts and

---

[16] In her Motion to Reschedule her deposition, Cook Jones admitted that she did not notify her counsel in this case of her duties in Glover until April 10, 2023. (Doc. 82, p. 2.)

misrepresenting others.  Even though Cook Jones now concedes that she should have apprised this Court and the Superior Court of her conflict sooner, her conflict letter attached to her Motion for Reconsideration falsely stated that she had notified both courts "at the earliest possible moment." (Doc. 85-1, p. 2.)  Moreover, as explained above, in her conflict letter attached to her Motion for Reconsideration, Cook Jones misrepresented to the Court that the State's interest in <u>Glover</u> could not be adequately protected without her presence.  (<u>Id.</u>)  Both Motions failed to apprise the Court that two other experienced prosecutors were representing the State in <u>Glover</u> and that Cook Jones had told the Superior Court that those prosecutors could handle the trial.  Additionally, Cook Jones' Emergency Motion for Reconsideration represented to the Court that the Superior Court Judge "will only agree to temporarily recess the criminal trial from 1:30 to 3:30 this afternoon." (Doc. 85, p. 2.)  The Motion did not mention that the Superior Court only granted a recess during that time because Cook Jones mispresented to the Superior Court that her deposition was scheduled for that time.

Cook Jones' last-minute notice to the Superior Court was also fraught with misinformation and omissions.  Cook Jones did not make the Superior Court and defense counsel in <u>Glover</u> aware of her obligations in this case until 3:55 p.m. on Monday, April 10, 2023.  (Doc. 88-2, p. 2.)  Cook Jones told the Superior Court that her "deposition has been noticed for several weeks and scheduling has been a point of great contention between the parties." (<u>Id.</u>)  However, Cook Jones critically failed to apprise the Superior Court that, prior to the first pretrial conference in <u>Glover</u>, this Court had *ordered* her deposition to take place on April 11.  She also kept from the Superior Court that this Court had scheduled the deposition on a date that Cook Jones proposed and after multiple discovery extensions caused by her own obstruction.  Moreover, Cook Jones falsely told the Superior Court that her deposition was scheduled for 1:30 p.m. to 3:30 p.m., as opposed to

beginning at 10:00 a.m. as had been noticed.  (Id.)  Cook Jones did not notify the Superior Court

of the proper time of her deposition until 9:31 p.m. on April 10.  (See doc. 90-2, p. 8.)

Cook Jones' excuses for her misrepresentations to the Superior Court are offensive and

only highlight her dismissiveness.  She blames her assistant for improperly calendaring the time

of her deposition.  (Id. at p. 5.)  Cook Jones is an experienced attorney and a member of this Court's

bar.  Any attorney would know that Cook Jones' deposition would last more than two hours,

particularly given the allegations against Cook Jones that she supervised Plaintiff daily and was

integrally involved in the allegedly discriminatory employment decisions underlying this lawsuit.

See Fed. R. Civ. P. 30(d)(1) ("Unless otherwise stipulated or ordered by the court, a deposition is

limited to one day of 7 hours.").  More importantly, Cook Jones, not her staff, bore the

responsibility of complying with the Court's Orders and her discovery obligations.  Particularly

when Cook Jones knew that the scheduling of her deposition had been "a point of great

contention," knew that her obstruction had caused the Court to extend discovery already, and knew

that the Court had allowed her to be deposed on a date of her choosing, she should have taken

personal responsibility for her own duties.  Cook Jones should have at least looked at her Notice

of Deposition to be certain what time she was supposed to show up.  Instead, she treated it as an

unimportant matter for others to handle.

For all these reasons, the Court finds that Cook Jones willfully disregarded this Court's

Orders and her discovery obligations when she failed to timely and truthfully notify this Court and

the Superior Court of her self-created conflict.

### 4.  Cook Jones' Untruthful Excuses Compound her Bad Faith.

To excuse her decision to serve as the lead trial attorney in Glover and her failure to timely

notify the Court of her conflict, Cook Jones argues that she "reasonably did not anticipate that the

trial beginning on April 4, 2023, would not have concluded by April 11, 2023." (Doc. 89, pp. 7–8.) This argument does not withstand the slightest scrutiny. The attorneys in <u>Glover</u> anticipated that the trial could involve at least ten witnesses, and subpoenas were effective through April 14, in anticipation that delays could cause the trial to last up to that time. (Doc. 88-1, p. 2.) At the April 6 pretrial conference, Cook Jones requested, albeit unsuccessfully, that the trial be delayed until April 10. (<u>Id.</u>) Consequently, it was not merely foreseeable but foreseen to Cook Jones that the felony rape trial could last through April 11. As such, if Cook Jones gave any thought to her obligations in this case, she would have "reasonably anticipate[d]" that the <u>Glover</u> trial would conflict with her deposition.

Most concerning, in her attempt to explain away her willful disregard of her discovery obligations, Cook Jones misrepresents the <u>Glover</u> proceedings. Cook Jones states in her Declaration,

> Based upon knowledge and information, **I finished presenting my evidence on Friday, April 7, 2023, and officially rested the State's case at 9:00am on Monday, April 10, 2023** . . . . I believe **the defense opened Defendant Glover's case in chief on Monday, April 10, 2023**, which only consisted of three brief fact witnesses. Based on that, I had projected that the jury could have the case and begin deliberations on Tuesday, April 11, 2023. However, on Monday, April 10th, after the presentation of their fact witnesses, Ms. Turner announced that Defendant Glover would take the stand to testify on his own behalf.

(Doc. 90-2, p. 3 (emphasis supplied).) Cook Jones' Response to Plaintiff's Motion for Sanctions, relies upon this account and states,

> **Cook Jones finished presenting the state's evidence on April 7 and officially rested the state's case at 9:00am on Monday, April 10**. [Cook Jones Declaration, ¶ 5.] Cook Jones expected the public defendant [sic] to present four fact witnesses and did not expect those witnesses to provide lengthy testimony. [<u>Id.</u> at ¶ 6.] Surprisingly, Glover elected to take the stand on his own behalf, which Cook Jones did not anticipate. [<u>Id.</u>] If Glover had not testified on his own behalf, Cook Jones anticipated that she would have been available to appear for her scheduled deposition.

(Doc. 90, p. 3 (emphasis supplied).)  In essence, Cook Jones contends that she did not anticipate the <u>Glover</u> trial would last past April 10 because she completed the State's case on April 7 and rested on the morning of April 10.

Cook Jones' prior representations to the Court, however, blatantly contradict her self-serving account.  Cook Jones attached to her Motion to Reschedule her Deposition an email she sent to her counsel at **3:38 p.m. on April 10, 2023**.  (Doc. 82-2, p. 2.)  In that email, Cook Jones stated, "[t]hough I'd hoped we would be done by Friday, **we are still in the State's main case.  I am on my final witness and hoped to rest this afternoon**, but at present we are on recess until 4:30 due to an unexpected evidentiary matter." (<u>Id.</u> (emphasis supplied).)  Therefore, while Cook Jones now tells the Court in her Declaration that she rested the State's case at 9:00 a.m. on April 10, (doc. 90-2, p. 3), she made clear at 3:38 p.m. on April 10 that she had not yet rested the State's case and that the earliest she could do so would be the end of the day on April 10, (doc. 82-2, p. 2).  Cook Jones' briefs contain the same blatant contradiction.  Cook Jones' Response to Plaintiff's Motion for Sanctions represents that Cook Jones "finished presenting the state's evidence on April 7." (Doc. 90, p. 3.)  However, Cook Jones' Emergency Motion to Reschedule filed at 5:07 p.m. on April 10, 2023, stated, "[a]s of the filing of this motion, the defendant in Glover trial had not yet started his case in chief." (Doc. 82, p. 2.) [17]

Cook Jones' factual misrepresentations cannot be explained away as an inadvertent mix up regarding an unimportant detail.  Cook Jones' excuse for not anticipating the conflict between the <u>Glover</u> trial and her deposition hinges on her falsehoods regarding the timing of the <u>Glover</u>

---

[17]  The Court does not sanction Cook Jones' counsel in this Order as it finds the willful failures were committed by Cook Jones directly.  However, these conflicting representations by counsel are entirely unacceptable and disappointing.  Counsel should have ferreted out the falsehood in Cook Jones' Declaration simply by reading his prior submissions to the Court.  The Court will not tolerate similar failures by counsel in the future.

proceedings.  To that end, in her Declaration, Cook Jones tells the Court that she anticipated the

Glover trial concluding on April 10 until the moment "on Monday, April 10th, [when,] after the

presentation of their fact witnesses, Ms. Turner announced that Defendant Glover would take the

stand to testify on his own behalf." (Doc. 90-2, p. 3.)  Cook Jones doubles down on this contention

in her Response and states, "[i]f Glover had not testified on his own behalf, Cook Jones anticipated

that she would have been available to appear for her scheduled deposition." (Doc. 90, p. 3.)  Cook

Jones' April 10 email, her Motion to Reschedule, and her assistant's email, however, reveal this

theory to be pure fiction.  In her email, sent at 3:38 p.m. on April 10, Cook Jones stated, "[w]e

may go late this evening, but even so **the defense won't open its case until 10am tomorrow** after

the charging conference.  With their four witnesses, cross examination, jury charging and closing

arguments, I doubt we will be done by 1pm." (Doc. 82-2, p. 2 (emphasis supplied).)  Thus, Cook

Jones now tells the Court that she thought the trial would conclude on April 10, but her own email

shows that she had no such belief.  In fact, she knew the defendant would not even begin his case

until April 11 at the earliest.  Additionally, Cook Jones' Emergency Motion to Reschedule, filed

at 5:07 p.m. on April 10, stated that the defendant in Glover had not yet begun his case in chief.

(Doc. 82, p. 2.)  Thus, it baffles the Court that Cook Jones would now argue that the defendant

announced his decision to testify on April 10.  Also, Cook Jones' assistant emailed at 1:05 p.m. on

April 10 that the Glover trial "is not expected to conclude until Thursday, April 13th." (Doc. 88-

2, p. 3.)  Thus, Cook Jones' argument that she thought the Glover trial would conclude on April 10,

and that it actually would have but for an unexpected decision by the defendant, is utter nonsense

built on fabrications.[18]  Put another way, her Declaration is not only false, it is materially false.

---

[18]  Having reviewed the entirety of the record, the Court finds that the descriptions of the status of the
Glover trial contained in Cook Jones' April 10 contemporaneous email, her assistant's email, and her
Motion to Reconsider are true and that the contradictory statements contained in Cook Jones' Declaration
and her Response to Motion for Sanctions are untrue.  However, even if the case is *vice versa*, this is of no

Regardless of the materiality of Cook Jones' false statements, the Court is deeply troubled that she would misrepresent facts of any level.  The duty of candor "reflects the truism that it is essential that members of the bar be trustworthy and that their statements be completely reliable.  Public confidence in the integrity of both the bench and the bar requires no less."  In re Mattox, 35 Fed. Cl. 425, 429 (1996).  As Justice Frankfurter stated, "[i]t is a fair characterization of the lawyer's responsibility in our society that [she] stands as a shield, . . .  in defense of right and to ward off wrong.  From a profession charged with such responsibilities there must be exacted those qualities of truth-speaking, of a high sense of honor, of granite discretion, of the strictest observance of fiduciary responsibility, that have, throughout the centuries, been compendiously described as moral character."  Schware v. Bd. of Bar Exam. of State of N.M., 353 U.S. 232, 247 (1957) (Frankfurter, J., concurring) (quotations and citations omitted).  For sure, Cook Jones is a litigant, not an attorney, in this case.  Nonetheless, an attorney must be mindful of her duty of candor to the Court in all affairs.  Unfortunately, Cook Jones failed that obligation.

Putting aside the falsity of Cook Jones' excuses, they fall flat because of their absurdity.  For instance, Cook Jones declares that "[j]ury selection in the Glover trial proceeded at an unexpectedly slow pace because Glover's defense counsel, Kelly Turner, insisted on limiting voir dire to questioning only 14 jurors at a time."  (Doc. 90-2, p. 2.)  Georgia law provided Glover a statutory right to conduct voir dire in panels of twelve jurors.  O.C.G.A. § 15-12-131; see also Hammond v. State, 542 S.E.2d 498, 501 (Ga. 2001) ("[U]pon a party's request, the trial court is required to put the jurors in the jury box in groups of 12 for the examination of individual jurors because the statute does not provide for the exercise of judicial discretion in this matter.").

---

help to Cook Jones.  In that case, she would have still presented falsities to the Court, just in her Motion to Reconsider and email attached thereto.

Moreover, any attorney would expect voir dire in a trial on charges of rape to be extended.  See 1

Blue's Guide to Jury Selection § 4:3 (West & ATLA 2004) (trial counsel should afford more time

for voir dire that involves "sensitive issues" including questions about rape).  In sexual assault

cases, courts often conduct voir dire in smaller panels or even with jurors individually.  See, e.g.,

Baker v. State, 671 S.E.2d 206, 214 (Ga. Ct. App. 2008) (recounting statements made by jurors

during individual voir dire in rape trial).  Thus, it is irrational for Cook Jones to state that voir dire

in Glover "proceeded at an unexpectedly slow pace."

Even more absurd is Cook Jones' contention that the Glover trial was unexpectedly delayed

because "[s]urprisingly, Glover elected to take the stand on his own behalf, which Cook Jones did

not anticipate."  (Doc. 90, p. 3.)  As an initial matter, Cook Jones' own statements contradict the

factual underpinnings of her excuse.  As discussed above, while Cook Jones now states that Glover

"surprisingly" testified on April 10, he did not testify until April 11.  Furthermore, it appears that

this may not have been a "surprise" to Cook Jones.  In contradiction to her Declaration in which

she now states she only expected the defense in Glover to present "three brief fact witnesses,"

(doc. 90-2, p. 3), she stated on April 10 that the defense would have "four witnesses," (doc. 82-2,

p. 2).  Thus, Cook Jones' own email, sent before the defense in Glover called their first witness,

suggests that she anticipated that the defendant could testify.[19]  Putting these issues aside, "[i]t is

axiomatic that 'a criminal defendant has a constitutional right to testify in his own defense.'"

Jacobs v. State, 683 S.E.2d 64, 69 (Ga. Ct. App. 2009) (quoting Thomas v. State, 655 S.E.2d 599,

601 (Ga. 2008)).  Thus, there was nothing "surprising" about the defendant testifying.  Cook Jones'

---

[19]  Further confusing Cook Jones' tale, her Response states that she "expected the public defendant [sic] to present four fact witnesses."  (Doc. 90, p. 3.)  However, the Response cites her Declaration in which she states she expected the State to present *three* witnesses.  (Doc. 90-2, p. 3.)  Once again, Cook Jones and her counsel simply cannot get their story straight in seeking to excuse her contemptuous conduct.

excuse also implies that it was "surprising" for defense counsel to wait until after the defense called other witnesses to announce Glover's intention to testify.  (See doc. 90, p. 3.)  This implication is flatly wrong and constitutionally infirm.  Whether to testify is a strategy decision of the utmost importance to be made by a criminal defendant only after full consultation with his attorney.  See Burton v. State, 438 S.E.2d 83, 86 (Ga. 1994).  The United States Supreme Court long ago held that "the accused and his counsel may not be restricted in deciding whether, and when in the course of presenting his defense, the accused should take the stand."  Brooks v. Tennessee, 406 U.S. 605, 613 (1972) (striking down Tennessee statute that required criminal defendant choosing to testify to testify before any other defense witnesses).  The Supreme Court recognized that a criminal defendant often can only decide whether to testify after hearing the testimony of his other witnesses.  Id. at pp. 609–10 ("Because of these uncertainties, a defendant may not know at the close of the State's case whether his own testimony will be necessary or even helpful to his cause.  Rather than risk the dangers of taking the stand, he might prefer to remain silent at that point, putting off his testimony until its value can be realistically assessed.")  Thus, criminal defendants regularly decide whether to testify only after the presentation of all other evidence.  See Jacobs, 683 S.E2d at 69 (noting, in rejecting defendant's argument that counsel failed to allow him to decide whether to testify, that defense counsel spoke with defendant after presentation of four defense witnesses and then announced that the defense rested).  Given these well-established principles, it is absurd for a prosecutor to argue that a criminal trial was "surprisingly" delayed because the defendant did not announce whether he was going to testify until after calling other witnesses.

For all these reasons, the Court rejects Cook Jones' attempts to explain away her disregard for this Court's Orders and her discovery obligations.  Rather than helping her cause, Cook Jones

makes material misrepresentations to this Court and exacerbates the bad faith she demonstrated throughout this case.

### D. Cook Jones' Misconduct Prejudiced Plaintiff and the Court and Threatens to Derail this Litigation.

Cook Jones' disregard for her discovery obligations, failure to honor her commitments, violations of this Court's Orders, and bad faith misrepresentations to the Court have prejudiced Plaintiff and the Court.  Moreover, despite multiple prior Court interventions, Cook Jones' misconduct places this litigation in a precarious position.

Cook Jones forced Plaintiff to waste significant time, resources, and effort to obtain the most elementary measures of discovery.  From the outset, the Court and counsel attempted to instill an orderly administration of discovery.  The Court held an initial scheduling conference and issued a Scheduling Order with generous deadlines for phased discovery.  (Docs. 22, 24.)  Despite these efforts, Cook Jones required Plaintiff to pester her for responses to basic discovery requests.  (See doc. 62, pp. 3–4; doc. 75-3.)  Cook Jones' disregard of those efforts forced the parties to request multiple continuances.  (Docs. 54, 62.)  Even then, Plaintiff's counsel had to pester Cook Jones to simply obtain a date when Cook Jones could be deposed.  (Docs. 75-4, 75-5, 75-7.)  After Cook Jones rebuffed those efforts, Plaintiff and the Court wasted time and effort litigating Defendants' non-meritorious Motion to Amend the Scheduling Order and setting a date for Cook Jones' deposition.  (See docs. 69, 75, 76, 81.)  Despite these efforts by Plaintiff and the Court, Cook Jones caused even greater prejudice by creating a conflict, giving last-minute notice of that conflict, failing to attend her deposition, and misrepresenting material facts to the Court.  Plaintiff spent time, money, and energy responding to a myriad of pleadings including Cook Jones' Emergency Motions and her baseless Objections.  Additionally, Cook Jones' actions required Plaintiff to

pursue her own Motion for Sanctions. The Court also spent additional time and effort wading through the mess that Cook Jones created, including her above-detailed misrepresentations.

Beyond the waste of time, resources, and effort, Cook Jones' obstruction endangers Plaintiff's lawsuit and the administration of justice. Plaintiff began pursuing her claims with her Charge of Discrimination on June 23, 2021, and she filed this lawsuit on April 7, 2022. The Court diligently managed discovery with multiple discovery conferences and orders. Yet, even now, well over two years from the filing of Plaintiff's charge, nearly a year and a half after the commencement of this lawsuit, and ten months after the original deadline for non-expert depositions, Plaintiff has still not been able to depose Cook Jones. This delay has inherently harmed the Court and Plaintiff. See, e.g., Chuang Invs. v. Eagle Inns, Inc., 81 F.3d 13, 14 (1st Cir. 1996) (noting that "[p]rejudice to the court is inherent in needless delays and postponements" when dismissing plaintiff's case and entering default on counterclaims for failure to comply with discovery orders). Moreover, given Plaintiff's substantive claims, Cook Jones' obstruction of her own deposition is particularly prejudicial. Plaintiff alleges that Cook Jones manages the District Attorney's Office, oversaw Plaintiff's daily activities, and was the primary impetus behind the unlawful employment actions against Plaintiff. (Doc. 29.) Thus, Cook Jones' deposition is a critical piece of discovery. Yet, Plaintiff has been unable to obtain it through no fault of her own.[20]

---

[20] Cook Jones complained in her Emergency Motion to Reschedule that "Plaintiff's counsel declined to consent to rescheduling Defendant Cook-Jones's [sic] deposition." (Doc. 82, p. 3.) Similarly, Cook Jones' Response to Plaintiff's Motion for Sanctions states that, upon being notified that Cook Jones would not appear at the time noticed for her deposition, "Plaintiff's counsel refused to reschedule the deposition and immediately threatened to seek sanctions." (Doc. 90, p. 4.) This attempt to shift blame to Plaintiff's counsel is ridiculous. Plaintiff's counsel correctly stated in the email cited by Cook Jones that counsel could not agree to reschedule the deposition because the Court ordered that it take place on April 11. (Doc. 90-3, p. 1.) Moreover, the dates proposed by Cook Jones were even further beyond the non-expert deposition deadline, and the Court had recently denied Cook Jones' Motion to extend that deadline. (Doc. 81.) Also, the Court repeatedly made clear in its Scheduling Orders that the parties could not alter the discovery deadlines without Court approval. (Doc. 24, p. 3; doc. 55, p. 1; doc. 63, p. 1 ("[These] deadlines shall not be extended except upon a specific showing of good cause and order of the Court.").) Thus, unlike Cook Jones, Plaintiff's counsel merely respected the Court's orders. Moreover, given Cook Jones' contemptuous

For all these reasons, the Court finds that Cook Jones' bad faith and willful disregard of her discovery obligations, her failure to abide by her commitment to appear at her deposition, her violations of this Court's Orders, and her misrepresentations to the Court caused significant prejudice to Plaintiff and the Court and imperils the efficient administration of justice.

### E.  Striking Cook Jones' Answers is an Unfortunate but Necessary Remedy.

The Court must strike Cook Jones' Answer to adequately address the prejudice caused by Cook Jones' willful disregard and her bad faith.  Requiring Plaintiff to litigate the substance of her claims against Cook Jones without having deposed Cook Jones would be patently unfair.  On the other hand, it would also be unfair to Plaintiff, the Court, and the other Defendants to extend discovery yet again due to Cook Jones' obstructive conduct.  See Crum v. Resolute Forest Prods., No. 1:20-CV-00550-ACA, 2021 WL 1597908, at *3 (N.D. Ala. Apr. 23, 2021) (dismissing plaintiff's claim for failure to appear at a deposition and noting that "the court declines to reward [plaintiff] for his willful failure to appear at the deposition by reopening discovery and extending the dispositive motion deadline").  Particularly given the Court's phased approach to discovery, extending the deadline for Cook Jones' deposition would also necessitate extending deadlines for expert witness designations, expert witness depositions, and dispositive motions.

Moreover, Cook Jones' pattern of compounding and willful failures demand significant sanctions.  She shirked her discovery obligations, failed to honor her word that she would appear for her deposition, mocked this Court's Orders, and made material misrepresentations to the Court.

---

conduct to that point, it would have been a dereliction of Plaintiff's counsel's duties to his client to agree to yet another continuance of Cook Jones' deposition and to avoid seeking sanctions for Cook Jones' failure to appear.  Even Cook Jones' counsel acknowledged the prospect of sanctions as he told Cook Jones, "my concern if you don't appear are sanctions and him striking your answer."  (Doc. 88-3, p. 2.)  Even now, Cook Jones impliedly agrees that sanctions are warranted as she offers to pay Plaintiff's costs resulting from her non-appearance.  Thus, Cook Jones' attempt to blame Plaintiff's counsel for a predicament of Cook Jones' own making defies reason.

When faced with similar records of delay and bad faith, courts have issued severe sanctions including striking parties' claims and defenses.  See, e.g., S.E.C. v. Utsick, 373 F. App'x 924, 926–27 (11th Cir. 2010) (affirming trial court's striking of defendant's answer for failure to appear for deposition where trial court had already gone "to great lengths to accommodate [defendant's] concerns" including granting extensions of discovery periods); Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987) (affirming striking of answer and entry of default judgment against defendant who failed to appear at court-ordered depositions and failed to respond to interrogatories and requests for production); Jaffe v. Grant, 793 F.2d 1182, 1189–90 (11th Cir. 1986) (district court did not abuse discretion when striking answer and defenses to counterclaim for plaintiff's refusal to comply with discovery orders); Shawmut Boston Int'l Banking Corp. v. Duque–Pena, 767 F.2d 1504 (11th Cir. 1985) (affirming default judgment against defendant for, *inter alia*, failure to attend deposition); U.S. v. $239,500 in U.S. Currency, 764 F.2d 771 (11th Cir. 1985) (affirming dismissal of claims for failure to attend deposition); Hashemi v. Campaigner Publ'ns, Inc., 737 F.2d 1538 (11th Cir.1984) (affirming dismissal for plaintiff's failure to appear at scheduled depositions); Props. Int'l. Ltd. v. Turner, 706 F.2d 308, 310–11 (11th Cir. 1983) (affirming dismissal of assignee's complaint for failing to provide witnesses at depositions/hearings and incompletely replying to interrogatories); Bonaventure v. Butler, 593 F.2d 625 (5th Cir. 1979) (upholding dismissal after plaintiff failed to appear for court-ordered deposition); Brauchle v. S. Sports Grill, Inc., No. 07-80279, 2008 WL 4753707, at *2-3 (S.D. Fla. Oct. 27, 2008) (striking answer and entering default judgment against defendant who failed to appear for deposition and noting that, "[g]iven that Plaintiffs have a right to depose Defendants, and [Defendants] have provided no reason for their failure to appear at depositions, Defendants have failed to meet their evidentiary burden and sanctions under Rule 37 are justified").

Striking Cook Jones' answer and entering default against her are necessary to "compensate the court [and Plaintiff] for the added expenses caused by [Cook Jones'] discovery abuses, . . . deter others from engaging in similar conduct, and [] penalize [Cook Jones].'" <u>Thornton</u>, 787 F. App'x at 638 (quoting <u>Wouters</u>, 9 F.3d at 933). Moreover, "less drastic sanctions would not ensure compliance with the [C]ourt's orders." <u>Eagle Hosp. Physicians</u>, 561 F.3d at 1306. The Court is mindful of the general preference to resolve claims on the merits and recognizes that striking a defendant's answer is an extreme sanction. Thus, the Court only strikes a party's pleading in the rarest of cases when no other remedy would be sufficient. Unfortunately, this is one of those cases. Merely requiring Cook Jones to pay Plaintiff's costs or the other sanctions available to the Court would not remedy the disruption that Cook Jones has caused to the Court's administration, would not adequately cure the prejudice she caused, and would not sufficiently deter her and other litigants from engaging in similar egregious conduct. Moreover, Cook Jones' history of sanctions before this Court supports a stiff sanction.[21]

---

[21]

## CONCLUSION

The Court **OVERRULES** Cook Jones' Motion to Set Aside and Objections to Orders Denying Defendant Shalena Cook Jones' Emergency Motions to Reschedule her Deposition and for Reconsideration.  (Doc. 89.)  Additionally, the Court **GRANTS IN PART** Plaintiff Skye Musson's Motion for Sanctions Striking Defendant Shalena Cook Jones' Answer and Entering Default Judgment.  (Doc. 88.)  Pursuant to Rule 37(b), Rule 37(d), and the Court's inherent authority, the Court **GRANTS** Plaintiff's Motion for Sanctions to the extent that it requests the Court strike Cook Jones' Answers and enter default against her.  The Court **STRIKES** Cook Jones' Answer to the Complaint, (doc. 11), and her Answer to the Amended Complaint, (doc. 34). The Court **DIRECTS** the Clerk of Court to enter default against Cook Jones on the docket. Additionally, the Court **GRANTS** Plaintiff's request to the extent that it requests that Cook Jones reimburse Plaintiff for all reasonable costs, fees, and expenses incurred as a result of Cook Jones' disregard of her obligations and failure to comply with this Court's Orders.  Specifically, Cook Jones shall reimburse Plaintiff for all reasonable costs, fees, and expenses associated with: (1) scheduling and attending Cook Jones' deposition at which she failed to appear; (2) responding to Defendants' Motion to Amend Scheduling Order, (doc. 69); (3) drafting and filing Plaintiff's Motion for Sanctions, (doc. 88), and supporting briefs; and (4) responding to Cook Jones'



Objections, (doc. 89).  Plaintiff shall file a notice detailing all costs, fees, and expenses as well as supporting documentation within **fourteen (14) days** of the date of this Order.  Cook Jones may respond regarding the reasonableness of Plaintiff's claimed costs, fees, and expenses within **fourteen (14) days** of the filing of the Notice.

The Court **RESERVES RULING** on Plaintiff's request for default judgment.  "[W]here defendants are similarly situated, default judgment should not be rendered against one of them where a non-defaulting defendant may yet prevail on the merits."  Essex Ins. Co. v. SEGA Ventures, LLC, No. CV413-253, 2014 WL 12658952, at *1 (S.D. Ga. Sept. 19, 2014).  The parties have not briefed whether it would be prudent to withhold default judgment given the presence of other defendants.  Should Plaintiff seek default judgment, she shall file a motion for default judgment addressing the issue raised above as well as the other prerequisites on or before the dispositive motion deadline, January 15, 2024.  Any defendant opposing Plaintiff's Motion shall file a response within **fourteen (14) days** of Plaintiff's Motion.  In those pleadings, the parties shall not relitigate the issues already decided in this order including whether Cook Jones' Answers should be stricken and whether she should be in default.

**SO ORDERED**, this 26th day of October, 2023.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA