IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| SKYE MUSSON,<br><br>    Plaintiff,<br><br>    v.<br><br>SHALENA COOK JONES, in her official and individual capacities,<br><br>    Defendant. | CIVIL ACTION NO.: 4:22-cv-124 |

## O R D E R

For the reasons explained below and in the Court's November 14, 2024, Order, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Supplemental Motion for Default Judgment. (Doc. 147.) The Court **DIMISSES** Plaintiff Skye Musson's ADA claims and her Section 1983 claims to the extent that those claims seek monetary damages against Defendant Shalena Cook Jones in her official capacity. Cook Jones is liable to Plaintiff on the rest of Plaintiff's claims. The Court will hold a jury trial on the question of Plaintiff's damages.

## BACKGROUND

On June 23, 2021, Plaintiff, a former Assistant District Attorney in the Chatham County District Attorney's Office, filed a Charge of Discrimination with the Equal Employment Opportunity Commission against Chatham County District Attorney Cook Jones, Chatham County, the District Attorney's Office, and the Prosecuting Attorney's Council of Georgia ("PAC"), regarding the denial of a promotion and the termination of her employment with the District Attorney's Office. (Doc. 29, p. 12.) Plaintiff then filed this lawsuit in Chatham County Superior Court on April 7, 2022, against PAC, Chatham County, and Cook Jones in her individual

and official capacities. (Doc. 1-1.) Defendants then removed the case to this Court, (doc. 1), and Plaintiff filed her Amended Complaint on August 3, 2022, (doc. 29).

Plaintiff asserted various federal- and state-law claims based on Defendants' discrimination against her because of her sex and disability during her employment. She alleged all Defendants discriminated and retaliated against her as joint employers in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, ("Title VII") and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"). (Id. at pp. 13–18.) She also contended, through 42 U.S.C. § 1983, that all Defendants violated her rights under the First and Fourteenth Amendments to the United States Constitution, (id. at pp. 19–24), and violated the Georgia Whistleblower Protection Act, O.C.G.A. § 45-1-4, ("GWPA") (id. at pp. 24–25). Plaintiff sued Cook Jones in her individual and official capacities and claimed Cook Jones managed the Chatham District Attorney's Office, including Plaintiff's "day-to-day case load and activities." (Id. at pp. 1, 4.) Plaintiff detailed Cook Jones' integral involvement in the discrimination and retaliation against her. (Id. at pp. 4–13.)

After an extended discovery period, the Court struck Cook Jones' Answers as a sanction for her repeated and willful disregard of her discovery obligations and the Court's Orders and her provision of false information to the Court. (Doc. 97.) Under that Order, the Clerk entered Cook Jones' default. (Doc. 98.) Cook Jones appealed the Court's Order, and the United States Court of Appeals for the Eleventh Circuit dismissed that appeal, *sua sponte*, for lack of jurisdiction. (Doc. 115.) Following that appeal, the Court granted Plaintiff's motion to dismiss all claims against Chatham County and PAC with prejudice. (Doc. 129.) After resolution of other discovery disputes and other conferences with the Court, Plaintiff filed her Supplemental Motion for Default

2

Judgment against Cook Jones, the sole remaining Defendant. (Doc. 147.) Cook Jones responded in opposition to that motion, (doc. 148), and Plaintiff replied, (doc. 150).

The Court granted Plaintiff Skye Musson default judgment as to liability on Plaintiff's remaining claims against Cook Jones in her individual capacity. (Doc. 151.) The Court found that Cook Jones violated Plaintiff's Fourteenth Amendment Rights to equal protection by failing to promote her because of her gender and that Plaintiff is entitled to punitive damages for that violation. (Id.) But the Court reserved ruling on claims asserted against Cook Jones in her official capacity and directed the parties to file supplemental briefing on those claims. (Id.) The parties have submitted that briefing. (Docs. 154, 155.)

## STANDARD OF REVIEW[1]

A clerk's entry of default does not automatically warrant entry of default judgment. "[T]hree distinct matters emerge as essential in considering any default judgment: (1) jurisdiction; (2) liability; and (3) damages. Before the Court can grant plaintiff's motion for default judgment, all three must be established." Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004). Thus, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007); see also Eagle Hosp. Physicians v. SRG Consulting, 561 F.3d 1298, 1307

---

[1] The Court already laid out the standard of review for entering default under Federal Rule of Civil Procedure 37 and the Court's inherent authority in its prior Order. (Doc. 97, pp. 26–29.) Given the Court's entry of default against Cook Jones and lengthy discussion in that Order, the Court need not rehash that analysis in this Order. Moreover, while Cook Jones quibbles with the Court's entry of default against her, she agrees that the criteria for assessing default judgment are those addressed in this Order. (Doc. 148, p. 5 (citing Pitts ex rel. Pitts v, 321 F. Supp. 2d at 1356).)

(11th Cir. 2009). In assessing liability, the Court must employ the same standard as when addressing a Rule 12(b)(6) motion to dismiss for failure to state a claim. Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015) ("Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim.").

## DISCUSSION

Plaintiff makes several allegations against Cook Jones in her official capacity. Plaintiff alleges Cook Jones discriminated and retaliated against her in violation of Title VII, the ADA, the Fourteenth Amendment to the United States Constitution (via Section 1983),[2] and the GWPA. (Doc. 29, pp. 14–25.) In its prior Order, the Court explained that whether Plaintiff could establish liability on these official capacity claims involved a threshold question of which governmental entity Plaintiff has sued in these counts. (Doc. 151, p. 13.) Having now heard from the parties on that issue, the Court answers that question first and then proceeds to assess whether Plaintiff has established liability for each of her official capacity claims.

**I.  Plaintiff's Official Capacity Claims are Against the State of Georgia.**

In its prior Order, the Court explained,

> "[W]here a plaintiff brings an action against a public official in his official capacity, the suit is against the office that official represents, and not the official himself." Welch v. Laney, 57 F.3d 1004, 1009 (11th Cir. 1995); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 699 n.55 (1978) (official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent"). "As a general rule, an Office of the District Attorney is not an entity subject to suit." Tyner v. Howard, No. 1:16-CV-4341-TWT-JFK, 2017 WL 579954, at *2 (N.D. Ga. Jan. 6, 2017), *report and recommendation adopted*, No. 1:16-CV-4341-TWT, 2017 WL 552819 (N.D. Ga. Feb. 10, 2017). Generally, a Georgia district attorney is "a state official acting on behalf of the state when exercising his discretion in prosecutorial decisions." Owens v. Fulton County, 877 F.2d 947, 951 (11th Cir. 1989); see also McClendon v. May, 37 F. Supp. 2d 1371,

---

[2] Plaintiff originally claimed Cook Jones violated her First Amendment rights, but she has not pursued that claim in her default judgment briefing.

4

> 1375–78 (S.D. Ga. 1999). It appears the Court would reach the same result as to a district attorney's employment decisions. See Williams v. DeKalb Cnty. Gov't, No. 112CV00705RLVAJB, 2013 WL 12502582, at *8 (N.D. Ga. Feb. 6, 2013), *report and recommendation adopted*, No. 1:12-CV-00705-RLV, 2013 WL 12502580 (N.D. Ga. Mar. 6, 2013); Lewis v. McDade, 54 F. Supp. 2d 1332, 1341 (N.D. Ga. 1999), *reversed and vacated on other grounds*, Lewis v. Douglas Cnty., Georgia, 232 F.3d 214 (11th Cir. 2000). But the Court is reluctant to answer that question without any briefing from the parties on the designation, much less on the effect of the designation.

(Doc. 151, p. 14.) Following that preamble, the Court directed the parties to provide supplemental briefing on the issue, and they complied. (Docs. 154, 155.)

Defendant contends that claims against her in her official capacity are claims against the State of Georgia, not Chatham County, because a district attorney acts as a state official. (Doc. 154, pp. 1–2 (citing McClendon, 37 F. Supp. 2d at 1375).) Plaintiff agrees that her official capacity claims are not against Chatham County. (Doc. 155, pp. 2–5.) She contends that these claims are against either the District Attorney's Office for the Eastern Judicial Circuit or the State of Georgia. (Id.) Plaintiff recognizes that courts have held that a Georgia district attorney's office is not a separate entity that can be sued. (Id. at pp. 3 (citing Myers v. Clayton Cnty. Dist. Att'y's Office, 849 S.E.2d 252, 256–57 (Ga. Ct. App. 2020).) But she contends "courts in this circuit, however, appear to have recognized as valid employment claims against district attorney's offices." (Id. at pp. 3–4 (citing Peppers v. Cobb Cnty., Ga., 835 F.3d 1289, 1297 (11th Cir. 2016); Younge v. Fulton Jud. Cir. Dist. Att'y's Off., Ga., No. 1:20-CV-00684-WMR, 2023 WL 3213871, at *17 (N.D. Ga. Mar. 29, 2023); Ash v. Douglas Cnty., No. 1:14-cv-1440-ELR-LJW, 2015 WL 12591772, at *3 n.5 (N.D. Ga. July 31, 2015); Lewis, 54 F. Supp. 2d at 1335–36 & 1342).) Yet the one decision Plaintiff cites from the United States Court of Appeals for the Eleventh Circuit, Peppers, supports a finding that an official capacity claim against a Georgia district attorney is ultimately a claim against the State. There, the court found that a former district attorney employee

5

could not maintain a claim against the county because the district attorney's office "is a wholly distinct *state* office." Peppers, 835 F.3d at 1297 (emphasis supplied). Moreover, Lewis, the one district court opinion cited by Plaintiff that addressed the issue before the Court, found claims against a Georgia district attorney in his official capacity to be against the State of Georgia. See Lewis, 54 F. Supp. 2d at 1341 (because plaintiff sued the district attorney in his official capacity, "the State of Georgia is a party to this action"), *rev'd and vacated sub nom.* Lewis, 232 F.3d 214.

Considering the authorities cited by the parties and those in the Court's prior Order, Plaintiff's claims against Cook Jones in her official capacity are claims against the State of Georgia.

## II. Sovereign Immunity Bars Plaintiff's ADA and Section 1983 Claims for Monetary Damages Against Cook Jones in her Official Capacity.

The concept of sovereign immunity implicates two related but distinct concepts: forum immunity and immunity from liability (which courts and practitioners often confusingly combine under the label "Eleventh Amendment immunity"). In many cases, the distinctions between these concepts are of no difference. But in this case, it helps to begin with a lengthy but informative explanation from the Eleventh Circuit.

> Put in its broadest form, the concept of sovereign immunity bars private citizens from suing states for damages. See Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 751–52 (2002). This immunity also shields "arms of the State" from suit. N. Ins. Co. of N.Y. v. Chatham Cnty., Ga., 547 U.S. 189, 193 (2006). . . . States enjoyed this immunity as a perquisite of their sovereignty before entering the United States. See Hans v. Louisiana, 134 U.S. 1, 16, (1890). But soon after the Constitution was adopted, the Supreme Court took the position that Article III's extension of federal jurisdiction to controversies "between a State and Citizens of another State," U.S. Const. art. III, § 2, allowed states to be sued by citizens of other states in federal court. Chisholm v. Georgia, 2 U.S. (2 Dall.) 419, 466, (opinion of Wilson, J.), superseded by constitutional amendment, U.S. Const. amend. XI. The reaction to this "unexpected blow to state sovereignty" was overwhelmingly negative. Alden v. Maine, 527 U.S. 706, 720, (1999) (quoting David P. Currie, The Constitution in Congress: The Federalist Period 1789–1801, at 196 (1997)). This

> negative response to Chisholm crystallized two years later with the ratification of the Eleventh Amendment.
>
> By its terms, the Eleventh Amendment prohibits the "Judicial power of the United States" from reaching "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. But the language is deceiving; the Supreme Court interprets the Eleventh Amendment to mean far more than what it says. See Blatchford v. Native Vill. of Noatak, 501 U.S. 775, 779 (1991) ("[W]e have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition . . . which it confirms . . . ."). Though the Amendment's text appears to only withdraw federal jurisdiction from any private suit against a state by a noncitizen, the Supreme Court reads the Amendment to remove any doubt that the Constitution preserves states' sovereign immunity in the federal courts. Va. Office for Prot. & Advocacy v. Stewart, –– U.S. ––, 131 S. Ct. 1632, 1637 (2011) ("[W]e have understood the Eleventh Amendment to confirm the structural understanding that States entered the Union with their sovereign immunity intact, unlimited by Article III's jurisdictional grant."); Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 73 (2000) ("[F]or over a century now, we have made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States."); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (recognizing that the Eleventh Amendment's "significance lies in its affirmation that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III" of the Constitution).
>
> Importantly, the Eleventh Amendment is neither a source of nor a limitation on states' sovereign immunity from suit. Alden, 527 U.S. at 713. Rather, it is a recognition of states' sovereign immunity in federal court. See Erwin Chemerinsky, Federal Jurisdiction 422 (6th ed. 2012) ("The Court has thus ruled that there is a broad principle of sovereign immunity that applies in both federal and state courts; the Eleventh Amendment is a reflection and embodiment of part of that principle.").
>
> Like most general rules, sovereign immunity has exceptions. The Supreme Court has recognized two ways that a private person can sue a state for damages: either (1) Congress can abrogate sovereign immunity by enacting legislation to enforce the substantive provisions of the Fourteenth Amendment, or (2) a state can waive its sovereign immunity. See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999).

Stroud v. McIntosh, 722 F.3d 1294, 1297–98 (11th Cir. 2013). The Eleventh Circuit held in Stroud that a defendant who removes a case to federal court waives a state's immunity-based objection to the federal forum but does not also waive the state's "underlying immunity from liability." Id. at

1301. In other words, "a state, if it chooses, can retain immunity from liability for a particular claim even if it waives its immunity from suit in federal courts." Id.

Cook Jones recognizes that she cannot assert forum immunity because she removed this case to this Court. Additionally, she recognizes that sovereign immunity does not shield her from claims brought under Title VII or the GWPA. But she contends sovereign immunity still shields her from liability as to Plaintiff's Section 1983 and ADA official capacity claims. (Doc. 154, pp. 3–4.) Plaintiff concedes that a state officer such as Cook Jones would ordinarily be immune from these claims to the extent that the claims seek monetary damages. (Doc. 155, pp. 7–9.) But Plaintiff counters that sovereign immunity is an affirmative defense that Cook Jones waived when the Court struck her Answers. (Id. at pp. 9–11.)

As the Court explained in its prior Order, given that the Court has struck Cook Jones' Answers, she cannot assert waivable affirmative defenses such as qualified immunity. (Doc. 151, pp. 4–5.) Sovereign immunity is a different matter. Under Georgia's Constitution, sovereign immunity can be waived only by an Act of the General Assembly that specifically asserts that the State waives such immunity. Ga. Const. Art. I, Sec. II, Par. IX (e). Federal courts will only imply a waiver of sovereign immunity where a state unequivocally and clearly expresses its consent to suit. Sossamon v. Texas, 563 U.S. 277, 284–85 (2011). While sovereign immunity can be waived, the test for establishing such a waiver "is a stringent one." Coll. Sav., 527 U.S. at 675 (internal quotation marks omitted). Thus, courts have frequently found that defendants did not waive sovereign immunity through litigation conduct. See, e.g., Gargett v. Fla. Dep't of Juv. Just., No. 8:19-CV-2051-VMC-TGW, 2024 WL 3470355, at *3 (M.D. Fla. July 19, 2024) (state did not waive sovereign immunity even though it failed to assert defense in answer or motion for summary judgment); Haven v. Bd. of Trustees of Three Rivers Reg'l Libr. Sys., 69 F. Supp. 3d 1359, 1364

(S.D. Ga. 2014), *vacated on other grounds*, 625 F. App'x 929 (11th Cir. 2015) ("[A]n effective waiver [of sovereign immunity] requires some affirmative assent on the part of the State, and this Court will not interpret the [state defendant's] questionable assertion of immunity as a waiver by default."); Moultrie v. Smith, No. 3:14-CV-00020-TCB, 2015 WL 12552095, at *3 (N.D. Ga. Sept. 22, 2015) (sovereign immunity "is not necessarily waived simply because it is not pled in the answer as an affirmative defense"); Shedrick v. Dist. Bd. of Trustees of Miami-Dade Coll., 941 F. Supp. 2d 1348, 1359 (S.D. Fla. 2013) ("the failure to plead Eleventh Amendment immunity cannot plausibly be held to be a clear declaration of, or to even raise an overwhelming implication of, waiver, particularly in light of [the state's] express retention of Eleventh Amendment immunity").

Plaintiff cites only one case in which she contends a defendant waived the issue of sovereign immunity to liability through litigation conduct: Williams v. Hill, No. 1:20-CV-0186-JPB-JSA, 2022 WL 1715212, at *3 (N.D. Ga. Mar. 31, 2022). In Williams, the court denied the defendant sovereign immunity at the summary judgment stage because the defendant's summary judgment briefing only raised immunity from the forum, not immunity from liability. Id. at *3. But the subsequent history of Williams reveals the limitations of that holding. Defendant later moved for judgment on the pleadings based on sovereign immunity from liability. See Ord., ECF No. 141, Williams v. Hill, No. 1:20-CV-0186-JPB-JSA (N.D. Ga. April 17, 2023). In ruling on that motion, the court did not find that the defendant had waived the sovereign immunity defense by failing to raise it sooner. Id. Instead, the court addressed the substance of the parties' immunity arguments. Id. at pp. 9–16. The Williams court explained that it only declined to address sovereign immunity at the summary judgment stage because the defendant "had failed to properly address the issue of sovereign immunity for liability in the summary judgment briefing." Id. at p. 9, n.6.

In other words, even in the one case Plaintiff cites, the defendant did not *waive* his sovereign immunity defense through his litigation conduct.

As the Court explained at length in its prior orders, Cook Jones' litigation conduct has not been laudable. That said, her conduct does not rise to the level of waiving Georgia's sovereign immunity. Further, even if she had waived sovereign immunity, the Court would raise the issue on its own. Haven, 69 F. Supp. 3d at 1364–65 ("[E]ven if the Eleventh Circuit's and Supreme Court's Eleventh Amendment precedents allowed for waiver by default, this Court would not be bound by such a waiver. . . . [C]ourts in the Eleventh Circuit always retain the right to consider Eleventh Amendment immunity *sua sponte*.") (citing McClendon, 261 F.3d at 1259).

For all these reasons, the Court finds that Cook Jones is immune, in her official capacity, from liability for Plaintiff's ADA and Section 1983 monetary damages claims.[3] Consequently, the Court **DISMISSES** those claims.

### III. Plaintiff has Established Jurisdiction and Liability on her Title VII Claims.

#### A. Jurisdiction

Plaintiff's claim that Cook Jones violated Title VII by failing to promote her and by retaliating against her for protected speech falls within this Court's federal question subject matter jurisdiction. See 28 U.S.C. §§1331, 1343(a). Cook Jones does not contest this Court's personal jurisdiction over her in her official capacity. Indeed, Defendant invoked this Court's jurisdiction

---

[3] As stated above, the parties agree that sovereign immunity does not bar Title VII and GWPA claims. Sovereign immunity also does not bar Plaintiff's official capacity claims to the extent that she seeks prospective equitable relief such as reinstatement. See Lane v. Cent. Alabama Cmty. Coll., 772 F.3d 1349, 1351 (11th Cir. 2014). Plaintiff's only demand for such relief is her request for the Court to "permanently enjoin Defendants from violating, in the future, Plaintiff's rights under any of the statutes listed above." (Doc. 29, p. 26.) The justiciability of this request is questionable given that Plaintiff no longer works with Cook Jones. Plaintiff only mentions such a claim in her default judgment briefing. (Doc. 159, p. 9.) Given this scant record, the Court issues no ruling in this Order on any putative official capacity claims for prospective equitable relief.

by removing the case to this Court. (Doc. 1.) Plaintiff therefore has established jurisdiction in this Court for her Title VII claims.

### B. Liability

#### 1. Cook Jones Violated Title VII by Failing to Promote Plaintiff because of Plaintiff's Gender.

In assessing Cook Jones' individual liability, the Court already found that Plaintiff sufficiently alleged that Cook Jones took an adverse employment action against her by failing to promote her to the "Guns and Gangs Prosecutor" role and that Cook Jones denied Plaintiff the promotion because of Plaintiff's gender. (Doc. 151, pp. 6–11.) That analysis applies with equal force in the Title VII context. See Bryant v. Jones, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009). For the reasons stated in that analysis, the Court finds that Cook Jones discriminated against Plaintiff in violation of Title VII by not promoting her to the Guns and Gangs Prosecutor role because of her gender.

#### 2. Cook Jones Violated Title VII by Retaliating Against Plaintiff for Plaintiff's Complaints of Gender Discrimination.

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) [s]he engaged in statutorily protected expression; (2) [s]he suffered an adverse employment action; and (3) there is a causal relation between the two events." Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998).

Plaintiff engaged in protected activity when she repeatedly complained to Cook Jones and her other supervisors that Cook Jones and the District Attorney's Office maintained a sexist culture where men obtained preferential treatment, including in training and promotions, and when she complained that she was a victim of those discriminatory practices. (Doc. 29, pp. 6–11.) Given that Plaintiff complained directly to Cook Jones about the sexism, Cook Jones was aware of

Plaintiff's protected conduct. (Id.) Immediately after Plaintiff made her last complaint to Cook Jones about being a victim of sexism, on April 8, 2021, Cook Jones told Plaintiff that she was facing disciplinary action, including termination. (Id. at p. 9.) The next day, Plaintiff's supervisor admonished Plaintiff and told her that Plaintiff needed to diffuse the situation with Cook Jones. (Id. at p. 10.) The pressure exerted by Cook Jones and Plaintiff's other supervisors directly after Plaintiff complained of gender discrimination forced Plaintiff to submit a letter of resignation on the following Monday, April 12, 2021, effective eighteen days later, April 30, 2021. (Id.) On April 12, 2021, Cook Jones and Plaintiff's supervisor called Plaintiff into Cook Jones' office, questioned her about her resignation, and then terminated Plaintiff's employment effective immediately. (Id. at pp. 10–11.) In the days following that meeting, Cook Jones falsely told employees of the District Attorney's Office that Plaintiff was incompetent and insubordinate. (Id. at p. 11.)

Cook Jones contends that Plaintiff did not suffer an adverse employment action as the result of her protected speech because "[Plaintiff's] own complaint shows that she was not terminated, but rather quit." (Doc. 148, p. 11.) Cook Jones also claims that Plaintiff's allegations show that Cook Jones' threat of disciplinary action was caused by Plaintiff's insubordination. (Id. at p. 15.) As the Court pointed out in its prior Order when assessing Plaintiff's failure to promote claim, (doc. 151, p. 5 n.2, p. 10), Cook Jones misstates the allegations of Plaintiff's Amended Complaint and misconstrues the applicable standard of review.

Plaintiff asserts that Cook Jones fired her effective immediately eighteen days before the effective date of her resignation and that the "termination of [Plaintiff's] employment on April 12, 2021[,] was involuntary." (Doc. 29, p. 11.) Plaintiff explained that her separation notice listed the

date her employment ended as April 12, 2021. (Id. at p. 12.) Thus, it is disingenuous for Cook Jones to contend that Plaintiff alleged that her employment ended voluntarily by her resignation.

Even if Plaintiff's employment had ended by her resignation, "when an employer deliberately makes an employee's working conditions intolerable and thereby forces [her] to quit [her] job," the employee suffers a constructive discharge. Bryant, 575 F.3d at 1298. An employer constructively discharges an employee when "the work environment and conditions of employment [are] so unbearable that a reasonable person in that person's position would be compelled to resign." Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1363 (11th Cir. 1994). Among other things, Cook Jones denied Plaintiff a promotion for which she was the most qualified candidate, chastised Plaintiff based on false allegations concerning the way she handled her work, accused Plaintiff of incompetence and insubordination, and told Plaintiff that she was facing termination. (Doc. 29.) "The pressure exerted on Ms. Musson by Cook Jones and Mr. Edwards during the April 8 and 9, 2021[,] meetings was so intolerable that Ms. Musson felt forced to resign." (Id. at p. 10.) Accepting Plaintiff's allegations as true and construing them in her favor, Plaintiff plausibly alleged that Cook Jones forced her to resign. See Sherman v. Franklin, No. 5:18-CV-00589-MHH, 2019 WL 339176, at *3 n.2 (N.D. Ala. Jan. 28, 2019) (employee sufficiently plead constructive discharge case in analogous Rule 12(b)(6) context because case law cited by employer involved motions on an evidentiary record and were thus not applicable to motion to dismiss).

Cook Jones contends that even if she forced Plaintiff to resign, Plaintiff's Amended Complaint "confirms that the threat of disciplinary action arose from her insubordination." (Doc. 148, p. 15.) Yet again, Cook Jones misstates Plaintiff's allegations and misconstrues the standard of review. Construing Plaintiff's Amended Complaint in her favor, as the Court must, she

plausibly alleged that while Cook Jones accused Plaintiff of insubordination, those accusations were merely a false pretext for Cook Jones' discriminatory and retaliatory motives. (Doc. 29, pp. 8–12, 15–16.) When Cook Jones chastised Plaintiff, Plaintiff disagreed with Cook Jones' version of events and told Cook Jones that Cook Jones was treating Plaintiff differently than her male counterparts. (Id. at pp. 9–10.) In this same conversation and immediately after Plaintiff complained about Cook Jones' discriminatory treatment, Cook Jones told Plaintiff that Plaintiff was facing termination. (Id.) Two business days later, after Plaintiff stood by her claims of discrimination, Cook Jones fired Plaintiff. (Id. at p. 11.) These facts easily demonstrate the "close temporal proximity" necessary to infer a causal link between Plaintiff's protected speech and her forced resignation and termination. See Miata v. Bottoms Up Rest. Grp., LLC, No. 1:19-CV-4918-MHC, 2020 WL 13588168, at *3 (N.D. Ga. Nov. 23, 2020) (plaintiff entitled to default judgment on retaliation claim on allegations that employer suspended him on same day he engaged in protected speech); Clark v. Bd. of Regents of Univ. Sys. of Georgia, 243 F. Supp. 3d 1367 (S.D. Ga. 2017) (close temporal proximity between employee's internal complaints of discrimination and employer's decision not to renew employee's contract rebutted employer's proffered reason for nonrenewal, which was employee's insubordination); Ramirez v. Bausch & Lomb, Inc., No. 8:10-CV-2003-T-35TGW, 2015 WL 12805166, at *4 (M.D. Fla. Apr. 2, 2015) (employee established prima facie case of discrimination where he was terminated eight days after engaging in protected speech).

For all these reasons, Cook Jones retaliated against Plaintiff and violated Title VII by forcing Plaintiff to resign and then firing Plaintiff because Plaintiff complained of gender discrimination in the District Attorney's Office.

## IV. Plaintiff has Established Jurisdiction and Liability for her State Whistleblower Act Claims.

### A. This Court has Jurisdiction Over Plaintiff's GWPA Claims.

Plaintiff's claim that Cook Jones violated the GWPA by retaliating against her for protected speech falls within this Court's supplemental subject matter jurisdiction. See 28 U.S.C. § 1367(a). Personal jurisdiction exists over Cook Jones in her official capacity given her residence in the state and invocation of this forum through removal. Thus, Plaintiff has established jurisdiction in this Court for her state-law whistleblower claims.

### B. Cook Jones Violated the GWPA by Forcing Plaintiff to Resign and then Firing Plaintiff for her Protected Speech.

Cook Jones' retaliatory termination of Plaintiff's employment also violated the GWPA. The GWPA prohibits a public employer from retaliating "against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity." O.C.G.A. § 45-1-4(d)(2). "[T]o establish a claim under the statute, a public employee must demonstrate that (1) she was employed by a public employer; (2) she made a protected disclosure or objection; (3) she suffered an adverse employment action; and (4) there is some causal relationship between the protected activity and the adverse employment action." Murray-Obertein v. Ga. Gov't Transparency and Campaign Fin. Comm'n, 812 S.E.2d 28, 31 (Ga. Ct. App. 2018).

Cook Jones was a public employer, and Plaintiff made protected disclosures and objections to Cook Jones when she repeatedly complained about gender discrimination in the office and when she voiced her concerns about an unethical prosecution. (Doc. 29, pp. 8–11.) Cook Jones only contests the last two elements of Plaintiff's GWPA claim: whether Plaintiff suffered an adverse

15

employment action and whether that action was caused by her protected activity. For the same reasons discussed above in the Court's analysis of Plaintiff's Title VII claims, Cook Jones' arguments fail. Cook Jones forced Plaintiff to resign and then fired Plaintiff directly after Plaintiff made protected disclosures and objections. This temporal proximity is sufficient to establish that Cook Jones terminated Plaintiff because of Plaintiff's protected complaints.

For these reasons, Cook Jones violated the GWPA in her official capacity by forcing Plaintiff to resign and terminating Plaintiff's employment in retaliation for her protected disclosures and objections.

## V. Damages

On a motion for default judgment, "[d]amages may only be awarded if the record adequately reflects the basis for the award through a hearing or detailed affidavits establishing the necessary facts." Carrier v. Jordaan, 746 F. Supp. 2d 1341, 1352 (S.D. Ga. 2010) (citing Bardfield v. Chisholm Prop. Circuit Events, LLC, No. 3:09cv232, 2010 WL 2278461, at *7 (N.D. Fla. May 4, 2010)). Awarding money damages is not appropriate without a hearing "unless the amount claimed is a liquidated sum or one capable of mathematical calculation." Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1543 (11th Cir. 1985). "While '[a]n evidentiary hearing is not a *per se* requirement,' the Eleventh Circuit [Court of Appeals] has made clear that 'such hearings are required in all but limited circumstances, as when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages.'" Jordaan, 746 F. Supp. 2d at 1352 (quoting SEC v. Smyth, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) (internal quotations omitted)).

"Even in the default judgment context, '[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters.'" Vision Bank v. Hill, No. 10-0333, 2011 WL 250430, at *2 (S.D. Ala. Jan. 25, 2011) (quoting Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003)).  A court must ensure an award is not a "completely unreasonable or speculative amount [ ] with no factual basis." Anheuser Busch, 317 F.3d at 1266.  "[I]t remains incumbent on plaintiff to prove the amount of damages to which it is entitled." Vision Bank, 2011 WL 250430, at *2.  "Rather than merely telling the Court in summary fashion what its damages are, a plaintiff seeking default judgment must show the Court what those damages are, how they are calculated, and where they come from." PNCEF, LLC v. Hendricks Bldg. Supply LLC, 740 F. Supp. 2d 1287, 1294 (S.D. Ala. 2010).  This case is simply not one of those "limited circumstances" where the Court can determine Plaintiff's damages without a hearing.

Plaintiff and Cook Jones disagree on whether the Court must hold a jury trial or bench trial on damages.  (See doc. 147, pp. 21–22; doc. 148, pp. 15–16; doc. 150, pp. 6.)  The parties explain that courts have split on this issue, and Cook Jones sides with courts that have found that a jury must determine damages, while Plaintiff sides with those that have found that the courts need only hold a bench trial.  (Id.)  Some courts that have held that it is not necessary to have a jury determine damages in this posture have still found that a court may submit the question to the jury. See Marshall v. Tidal Wave Response, LLC, 649 F. Supp. 3d 1299, 1311–12 (N.D. Ga. 2022).  Regardless of whether the Court *must* submit the question of Plaintiff's damages to a jury, the issue *should* be determined by a jury.  The Court will issue a separate order setting this matter for a trial preparation scheduling conference.

**CONCLUSION**

Plaintiff's official capacity claims are against the State of Georgia. Georgia has not waived its sovereign immunity from liability for claims brought under the ADA or Section 1983. Therefore, the Court **DIMISSES** Plaintiff's ADA and Section 1983 claims that seek monetary damages against Cook Jones in her official capacity and **DENIES** Plaintiff's Motion for Default Judgment, (doc. 147), as to these claims.

The Court **GRANTS** Plaintiff's Motion for Default Judgment, (doc. 147), on liability as to Plaintiff's remaining claims. Defendant Shalena Cook Jones is liable, in her individual capacity, for violating the Fourteenth Amendment to the United States Constitution by failing to promote Plaintiff Skye Musson because of her gender. Cook Jones is also liable in her individual capacity for punitive damages on that claim. Cook Jones is liable, in her official capacity, for violating Title VII of the Civil Rights Act of 1964 by failing to promote Plaintiff because of Plaintiff's gender and for forcing Plaintiff to resign and terminating Plaintiff's employment in retaliation for Plaintiff's complaints of gender discrimination. Cook Jones' termination of Plaintiff in retaliation for Plaintiff's complaints about gender discrimination in the office and complaints about an unethical prosecution also makes Cook Jones liable, in her official capacity, for violating the Georgia Whistleblower Protection Act. The Court will submit the question of Plaintiff's damages on these claims to a jury.

**SO ORDERED**, this 21st day of January, 2025.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA